**08 CV 1536**

**JUDGE JONES**                                          TERMED, TRANSFER, VALDEZ

## United States District Court
### Northern District of Illinois - CM/ECF LIVE, Ver 3.0 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:07-cv-04071
### Internal Use Only

Nach v. Huber
Assigned to: Honorable Ruben Castillo
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 07/19/2007
Date Terminated: 01/24/2008
Jury Demand: Plaintiff
Nature of Suit: 850
Securities/Commodities
Jurisdiction: Federal Question

### Plaintiff

**Raphael Nach**
*Individually and on behalf of all others
similarly situated,*

represented by **Joel Lee Lipman**
O'Rourke, Katten & Moody
161 North Clark Street
Suite 2230
Chicago, IL 60601
(312) 849-2020
Fax: (312) 849-2021
Email: jlipman@okmlaw.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Dale J. MacDiamid**
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars
Los Angeles, IL 90067



### Plaintiff

**Lewis Wetstein, M.D.**

represented by **Lori Ann Fanning**
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Fax: (312) 676-2676
Email: LFanning@MillerLawLLC.com
*ATTORNEY TO BE NOTICED*

**Marvin Alan Miller**
Miller Law LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400

Fax: (312) 676-2676
Email: Mmiller@millerlawllc.com
*ATTORNEY TO BE NOTICED*

**Sean M. Handler**
Schiffrin Barroway Topaz & Kessler,
LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Email: ecf_filings@sbtklaw.com
*ATTORNEY TO BE NOTICED*

**Stuart L. Berman**
Schiffrin Barroway Topaz & Kessler,
LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Email: ecf_filings@sbtklaw.com
*ATTORNEY TO BE NOTICED*

**Tammy D. Cummings**
Schiffrin Barroway Topaz & Kessler,
LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Teamsters Local 282 Group**    represented by **Daniel Hume**
Kirby McInerneyLLP
830 Third Avenue
10th Floor
New York, NY 10022
(212)317-2300
Email: dhume@kmslaw.com
*ATTORNEY TO BE NOTICED*

**Ira M Press**
Kirby McInerney & Squire LLP
830 Third Avenue
10th Floor
New York, NY 10022
(212) 317-2300
*ATTORNEY TO BE NOTICED*

**Joshua B. Silverman**
Pomerantz Haudek Block Grossman &

Gross LLP
One North LaSalle Street
#2225
Chicago, IL 60602
(312) 377-1181
Email: jbsilverman@pomlaw.com
*ATTORNEY TO BE NOTICED*

**Leigh Robbin Handelman**
Pomerantz Haudek Block Grossman &
Gross LLP
One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
Email: lsmollar@pomlaw.com
*ATTORNEY TO BE NOTICED*

**Michael M. Goldberg**
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
(310) 201-9150
*ATTORNEY TO BE NOTICED*

**Patrick Vincent Dahlstrom**
Pomerantz Haudek Block Grossman &
Gross LLP
One North LaSalle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181
Email: pdahlstrom@pomlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Linda Huber**                                represented by **David H. Kistenbroker**
Katten Muchin Rosenman LLP
525 West Monroe Street
Suite 1600
Chicago, IL 60661
(312) 902-5200
Email:
david.kistenbroker@kattenlaw.com
*ATTORNEY TO BE NOTICED*

**Paula S Kim**

Katten Muchin Rosenman, LLP
525 West Monroe
Chicago, IL 60661
312 902 5563
Email: paula.kim@kattenlaw.com
*ATTORNEY TO BE NOTICED*

**Richard H. Klapper**
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
212 558 4000

**Sharon L. Nelles**
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
(212)558-4976
Email: nelless@sullcrom.com
*ATTORNEY TO BE NOTICED*

**Stephen Ehrenberg**
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
212 558 4000
*ATTORNEY TO BE NOTICED*

**Theresa Lynn Davis**
Katten Muchin Rosenman LLP
525 West Monroe Street
Suite 1600
Chicago, IL 60661
(312) 902-5200
Email: theresa.davis@kattenlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/19/2007 | 1 | COMPLAINT filed by Plaintiff Raphael Nach (Exhibit); Jury Demand. (ar, ) (Entered: 07/20/2007) |
| 07/19/2007 | 2 | CIVIL Cover Sheet. (ar, ) (Entered: 07/20/2007) |
| 07/19/2007 | 3 | (Court only) RECEIPT regarding payment of filing fee paid on 7/19/2007 in the amount of $350.00, receipt number 10648939. (ar, ) (Entered: 07/20/2007) |
| 07/19/2007 | 4 | ATTORNEY Appearance for Plaintiff Raphael Nach by Joel Lee Lipman. (ar, ) (Entered: 07/20/2007) |

| 08/08/2007 | ◑5 | MINUTE entry before Judge Ruben Castillo :Parties to file a joint status report on or before 9/24/2007. The Court will hold a status hearing in open court on 9/27/2007 at 9:45 AM.Mailed notice (rao, ) (Entered: 08/08/2007) |
| 09/10/2007 | ◑6 | MINUTE entry before Judge Ruben Castillo :Parties to file the joint status report on or before 10/5/2007. Status hearing reset to 10/11/2007 at 9:45 AM. Status hearing set for 9/27/2007 is vacated.Mailed notice (rao, ) (Entered: 09/10/2007) |
| 09/26/2007 | ◑7 | ATTORNEY Appearance *for Lewis Wetstein, M.D.* (Miller, Marvin) (Entered: 09/26/2007) |
| 09/26/2007 | ◑8 | MOTION by Plaintiff Lewis Wetstein, M.D.Motion of the Lewis Wetstein, M.D. to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel (Miller, Marvin) (Entered: 09/26/2007) |
| 09/26/2007 | ◑9 | MEMORANDUM by Lewis Wetstein, M.D. in support of motion for miscellaneous relief8 *Memorandum of Law in Support of the Motion of Lewis Wetstein, M.D. to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel* (Miller, Marvin) (Entered: 09/26/2007) |
| 09/26/2007 | ◑10 | ATTORNEY Appearance *Patrick V. Dahlstrom on Behalf of the Teamsters Local 282 Group* (Dahlstrom, Patrick) (Entered: 09/26/2007) |
| 09/26/2007 | ◑11 | MOTION by Plaintiff Teamsters Local 282 GroupTo Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Lead Counsel (Dahlstrom, Patrick) (Entered: 09/26/2007) |
| 09/26/2007 | ◑12 | *Teamsters Local 282 Group's* NOTICE of Motion by Patrick Vincent Dahlstrom for presentment of motion for miscellaneous relief11 before Honorable Ruben Castillo on 10/2/2007 at 09:45 AM. (Attachments: # 1 Certificate of Service)(Dahlstrom, Patrick) (Entered: 09/26/2007) |
| 09/26/2007 | ◑13 | MEMORANDUM by Teamsters Local 282 Group in support of motion for miscellaneous relief11 *to appoint lead plaintiff and for approval of movant's selection of co-lead counsel* (Dahlstrom, Patrick) (Entered: 09/26/2007) |
| 09/26/2007 | ◑14 | AFFIDAVIT by Plaintiff Teamsters Local 282 Group in Support of MOTION by Plaintiff Teamsters Local 282 GroupTo Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Lead Counsel11 *Declaratioin of Ira M. Press in Support of Motion to Appoint Lead Plaintiff and for Approval of Counsel* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E)(Dahlstrom, Patrick) (Entered: 09/26/2007) |
| 09/26/2007 | ◑15 | AMENDED attorney appearance10 by Teamsters Local 282 Group *Notice of Appearance of Patrick V. Dahlstrom, Leigh H. Smollar, and Joshua B. Silverman on Behalf of the Teamsters Local 282 Group* (Attachments: # 1 Supplement Notice of Appearance for Leigh H. |

| | | Smollar on Behalf of the Teamsters Local 282 Group# 2 Supplement Notice of Appearance of Joshua B. Silverman on Behalf of the Teamsters Local 282 Group)(Dahlstrom, Patrick) (Entered: 09/26/2007) |
|---|---|---|
| 09/26/2007 | ❑22 | ATTORNEY Appearance for Plaintiff Teamsters Local 282 Group by Leigh Robbin Handelamn. (ar, ) Modified on 10/3/2007 (ar, ). (Entered: 10/03/2007) |
| 09/26/2007 | ❑23 | ATTORNEY Appearance for Plaintiff Teamsters Local 282 Group by Joshua B. Silverman. (ar, ) (Entered: 10/03/2007) |
| 09/27/2007 | ❑16 | ATTORNEY Appearance for Plaintiff Lewis Wetstein, M.D. by Lori Ann Fanning (Fanning, Lori) (Entered: 09/27/2007) |
| 09/27/2007 | ❑18 | ATTORNEY Appearance for Plaintiff Lewis Wetstein, M.D. by Tammy D. Cummings (mb, ) (Entered: 10/02/2007) |
| 09/27/2007 | ❑19 | ATTORNEY Appearance for Plaintiff Lewis Wetstein, M.D. by Sean M. Handler (mb, ) (Entered: 10/02/2007) |
| 09/27/2007 | ❑20 | ATTORNEY Appearance for Plaintiff Lewis Wetstein, M.D. by Stuart L. Berman (mb, ) (Entered: 10/02/2007) |
| 10/01/2007 | ❑17 | (PROPOSED) Stipulation and (Proposed) Order by Plaintiff Teamsters Local 282 Group regarding appointment of lead plaintiff 11. Attachments: #(1) Text of Proposed Order (Handelman, Leigh). (Text edited by Clerk's Office). Modified on 10/9/2007 (ar, ). (Entered: 10/01/2007) |
| 10/02/2007 | ❑21 | MINUTE entry before Judge Ruben Castillo :Motion hearing held on 10/2/2007. Motion of Teamsters Local 282 Group to appoint lead Plaintiff and approve lead Plaintiff's selection of lead counsel 11 and motion of Lewis Wetstein, M.D. to be appointed lead Plaintiff and for approval of lead Plaintiff's selection of lead counsel and liaison counsel 8 are entered and continued to 10/11/2007 at 9:45 AM.Mailed notice (rao, ) (Entered: 10/02/2007) |
| 10/04/2007 | ❑24 | STATUS Report by Lewis Wetstein, M.D., Teamsters Local 282 Group (Handelman, Leigh) (Entered: 10/04/2007) |
| 10/10/2007 | ❑26 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Teamsters Local 282 Group by Ira M Press; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 1114986 (mb, ) (Entered: 10/12/2007) |
| 10/11/2007 | ❑25 | MINUTE entry before Judge Ruben Castillo :Status hearing held on 10/11/2007 and continued to 12/6/2007 at 9:45 am. Motion of Lewis Wetstein, M.D. to be appointed lead Plaintiff and for approval of lead Plaintiff's selection of lead counsel and liaison counsel 8 and motion of Teamsters Local 282 Group to appoint lead Plaintiff and approve lead Plaintiff's selection of lead counsel 11 are entered and continued to 12/6/2007 at 9:45 a.m.Mailed notice (rao, ) (Entered: 10/11/2007) |
| 10/11/2007 | ❑27 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Lewis |

| | | |
|---|---|---|
| | | Wetstein, M.D. by Stuart L. Berman; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 10650221 (mb, ) (Entered: 10/15/2007) |
| 10/11/2007 | ●45 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Lewis Wetstein, M.D. by Sean M. Handler; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 10650222 (Previously misplaced document) (mb, ) (Entered: 01/15/2008) |
| 10/15/2007 | ●28 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Teamsters Local 282 Group by Michael M. Goldberg; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 1115043 (mb, ) (Entered: 10/17/2007) |
| 11/21/2007 | ●29 | *Notice of Presentment of Stipulation and [Proposed] Order of a Schedule for Filing an Amended Complaint and Response Thereto* NOTICE of Motion by Patrick Vincent Dahlstrom for presentment of Honorable Ruben Castillo on 12/6/2007 at 09:45 AM. (Attachments: # 1 Certificate of Service)(Dahlstrom, Patrick) (Entered: 11/21/2007) |
| 11/21/2007 | ●30 | STIPULATION regarding notice of motion, 29 *Stipulation and [Proposed] Order of a Schedule for Filing an Amended Complaint and a Response Thereto* (Dahlstrom, Patrick) (Entered: 11/21/2007) |
| 12/03/2007 | ●31 | MINUTE entry before Judge Ruben Castillo :Status hearing reset to 12/12/2007 at 9:30 AM. Status hearing set for 12/6/2007 is vacated. Mailed notice (rao, ) (Entered: 12/03/2007) |
| 12/04/2007 | ●32 | ATTORNEY Appearance for Defendant Linda Huber by David H. Kistenbroker (Kistenbroker, David) (Entered: 12/04/2007) |
| 12/04/2007 | ●33 | ATTORNEY Appearance for Defendant Linda Huber by Paula S Kim (Kim, Paula) (Entered: 12/04/2007) |
| 12/04/2007 | ●34 | ATTORNEY Appearance for Defendant Linda Huber by Theresa Lynn Davis. (gmr, ) (Entered: 12/07/2007) |
| 12/07/2007 | ●35 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Linda Huber by Sharon L. Nelles; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 10912904 (mb, ) (Entered: 12/11/2007) |
| 12/07/2007 | ●36 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Linda Huber by Stephen Ehrenberg; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 10912904 (mb, ) (Entered: 12/11/2007) |
| 12/07/2007 | ●37 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Linda Huber by Richard H. Klapper; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 10912904 (mb, ) (Entered: 12/11/2007) |
| 12/10/2007 | ●38 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Raphael Nach by Dale J. MacDiamid; Order entered granting leave by Judge |

| | | |
|---|---|---|
| | | Ruben Castillo. Filing fee $ 50 paid, receipt number 10651095 (mb, ) (Entered: 12/12/2007) |
| 12/12/2007 | ●39 | MINUTE entry before Judge Ruben Castillo : Teamsters Local 282 Groups motion to appoint lead plaintiff and approve lead plaintiffs selection of lead counsel 11 and Lewis Wetstein, M.D.s motion to be appointed lead plaintiff and for approval of lead plaintiffs selection of lead counsel and liaison counsel 8 are granted. Teamsters Local 282 Group and Lewis Wetstein, M.D. are hereby appointed Co-Lead Plaintiffs in the above captioned action. The law firms Glancy Binkow & Goldberg LLP, Kirby McInerney, LLP and Schiffrin Barroway Topaz & Kessler, LLP are approved as Co-Lead Counsel. The law firm of Pomerantz Haudek Block Grossman & Gross LLP is approved as Plaintiffs Local Counsel. Mailed notice (mb, ) (Entered: 12/13/2007) |
| 12/12/2007 | ●40 | MINUTE entry before Judge Ruben Castillo : Status hearing held on 12/12/2007. Enter Stipulation and Order of a Schedule for Filing an Amended Complaint and a Response Thereto. Lead Plaintiffs to file an amended class action complaint by February 12, 2008. Defendant's response to the amended class action complaint will be due on or before April 14, 2008. If defendants files a motion to dismiss, Plaintiff's response will be due on or before 5/30/2008. Defendant's reply will be due on or before 6/30/2008. The Court will rule by mail. Mailed notice (mb, ) (Entered: 12/14/2007) |
| 12/12/2007 | ●41 | STIPULATION and ORDER of a schedule for filing an amended complaint and a response therego Signed by Judge Ruben Castillo on 12/12/2007.(mb, ) (Entered: 12/14/2007) |
| 12/13/2007 | ●42 | APPLICATION for Leave to Appear Pro Hac Vice on behalf of Teamsters Local 282 Group by Daniel Hume; Order entered granting leave by Judge Ruben Castillo. Filing fee $ 50 paid, receipt number 10913033 (mb, ) (Entered: 12/17/2007) |
| 12/26/2007 | ●43 | MOTION by Plaintiffs Lewis Wetstein, M.D., Raphael Nach, Teamsters Local 282 Group to change venue *pursuant to 28 U.S.C. 1404(a)* (Attachments: # 1 Certificate of Service)(Handelman, Leigh) (Entered: 12/26/2007) |
| 12/26/2007 | ●44 | MEMORANDUM by Lewis Wetstein, M.D., Raphael Nach, Teamsters Local 282 Group in support of motion to change venue43 (Handelman, Leigh) (Entered: 12/26/2007) |
| 01/15/2008 | ●46 | STIPULATION regarding motion to change venue43 (Attachments: # 1 Certificate of Service)(Handelman, Leigh) (Entered: 01/15/2008) |
| 01/17/2008 | ●47 | MINUTE entry before Judge Ruben Castillo :Defendant's response to Plaintiffs' motion to transfer pursuant to 28 USC 1404(a) 43 is due on or before 1/25/2008. Plaintiffs' reply will be due on or before 1/30/2008. The Court will rule on 2/5/2008 at 9:45 AM. Mailed notice (rao, ) (Entered: 01/17/2008) |
| 01/18/2008 | ●48 | RESPONSE by Linda Huber to MOTION by Plaintiffs Lewis Wetstein, |

|  |  | M.D., Raphael Nach, Teamsters Local 282 Group to change venue *pursuant to 28 U.S.C. 1404(a)*43 (Attachments: # 1 Notice of Filing and Certificate of Service)(Kim, Paula) (Entered: 01/18/2008) |
|---|---|---|
| 01/24/2008 | ❾49 | MINUTE entry before Judge Ruben Castillo : Hearing set for 2/5/2008 is vacated. After careful review, Plaintiff's unopposed motion to transfer pursuant to 28 U.S.C. Section 1404(a) 43 is granted. The Court easily concludes that all relevant considerations favor a transfer to the Southern District of New York - the material situs of this lawsuit. The Clerk of Court is directed to transfer this lawsuit to the Southern District of New York. Civil case terminated. Mailed notice (ar, ) (Entered: 01/25/2008) |
| 02/07/2008 | ❾50 | TRANSFERRED to the US District Court for the Southern District of New York, certified copies of transfer order and docket sheet, via certified mail number 7004-2510-0001-9550-8245. (ar, ) (Entered: 02/07/2008) |

FILED

JUL 19 2007

Jul. 19, 2007

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAPHAEL NACH, Individually and on Behalf of all Others Similarly Situated, | No. **07CV4071** |
| Plaintiff, | COI **JUDGE CASTILLO** |
| | **MAG.JUDGE VALDEZ** |
| v. | **JURY TRIAL DEMANDED** |
| LINDA S. HUBER, | |
| Defendant. | |

Plaintiff, Raphael Nach ("Plaintiff"), by his undersigned counsel, alleges the following upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief based upon the investigation of Plaintiff's attorneys as to all other matters. The investigation includes the thorough review and analysis of public statements, publicly filed documents of Moody's Corporation ("Moody's" or the "Company"), press releases, news articles and other information readily available on the Internet. Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## SUMMARY OF ACTION

1.    Plaintiff brings this action individually and on behalf of all purchasers of the common stock of Moody's between October 25, 2006 and July 10, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Moody's Corporation, through its subsidiaries, provides credit ratings, research, and analysis covering fixed-income securities, other debt instruments and the entities that issue such instruments in the global capital markets.

3.    Among other things, the Company assigns ratings to mortgage bonds comprising

risky "subprime" home loans, including bonds packaged as "collateralized debt obligations" and other securities backed by subprime assets. Investors rely on these ratings to assess the value and risk of these investments. While the nation's housing market was booming, Moody's reaped millions of dollars in fees for assigning ratings to subprime-mortgage-backed securities.

4.    Throughout the Class Period, Defendant misrepresented or failed to disclose that the Company assigned excessively high ratings to bonds backed by risky subprime mortgages – including bonds packaged as collateralized debt obligations – which was materially misleading to investors concerning the quality and relative risk of these investments. Moreover, even as a downturn in the housing market caused rising delinquencies of the subprime mortgages underlying such bonds, Moody's maintained its excessively high ratings, rather than downgrade the bonds to reflect the true risk of owning subprime-mortgage-backed debt instruments.

5.    Then, on July 11, 2007, Moody's shocked investors when it announced that the Company was downgrading 399 mortgage-backed securities issued in 2006 and reviewing an additional thirty-two for downgrade, affecting approximately $5.2 billion of bonds. The Company also disclosed that it had downgraded 52 bonds issued in 2005.

**JURISDICTION AND VENUE**

6.    This Court has jurisdiction over this action pursuant to: (a) Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and (b) 28 U.S.C. §§ 1331 and 1337.

7.    This action arises under and pursuant to: (a) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); (b) Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (c) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

8.    Venue is proper in this District pursuant to Section 27 of the Exchange Act,15

- 2 -

U.S.C. § 78aa.

9.     In furtherance of and in connection with the acts alleged herein, Defendant directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephonic communications, the Internet, and the facilities of the New York Stock Exchange (the "NYSE"), a national securities exchange.

## PARTIES

10.     Plaintiff Raphael Nach purchased Moody's Corporation securities during the Class Period, as set forth in the attached Certification, and was damaged thereby.

11.     Defendant Linda S. Huber (hereinafter, "Huber" or "Defendant,") is the Company's Chief Financial Officer ("CFO") and Executive Vice President.

12.     Because of Defendant's positions with the Company, she had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements and markets via access to internal corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management meetings and committees thereof and via reports and other information provided to her in connection therewith.

13.     Defendant Huber, by virtue of her high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Huber was involved in drafting, producing, reviewing

- 3 -

and/or disseminating the false and misleading statements and information alleged herein, was aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.     As an officer and controlling person of a publicly held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal securities laws, Defendant Huber had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management and earnings, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common stock would be based upon truthful and accurate information. Defendant Huber's misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.     Defendant Huber participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and was aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and was aware of their materially false and misleading nature. Because of Defendant Huber's executive and managerial positions with Moody's, she had access to the adverse undisclosed information about Moody's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Moody's and its business issued or adopted by the

- 4 -

Company materially false and misleading.

16.     Defendant Huber, because of her positions of control and authority as an officer of the Company, was able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Defendant Huber was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, Huber is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

17.     Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Moody's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Moody's business, operations and prospects and the intrinsic value of Moody's common stock; and (ii) caused Plaintiff and other members of the Class to purchase Moody's common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

**Background**

18.     Moody's Corporation is a provider of credit ratings, research and analysis covering fixed-income securities, other debt instruments, and the entities that issues such instruments in the global capital markets.  The Company's operates in two segments: Moody's Investors Service and Moody's KMV.  Moody's KMV develops and distributes quantitative credit risk assessment products and services for banks, corporations and investors in credit-

sensitive assets. Moody's Investors Service publishes rating opinions on a broad range of credit

obligations issued on domestic and international markets, including various corporate and

governmental obligations and structured finance securities. Moody's Investors Service also

publishes investor-oriented credit information, research and economic commentary, including in-

depth research on major debt issuers, industry studies and credit opinion handbooks. Investors

utilize Moody's research and credit rating to analyze the credit risks associated with fixed-

income securities.

## False and Misleading Statements During the Class Period

19.     On October 25, 2006, the first day of the Class Period, Moody's issued a press

release announcing its financial results for third quarter 2006. The press release stated in relevant

part as follows:

### Moody's Corporation Reports Results for the Third Quarter of 2006

NEW YORK--(BUSINESS WIRE)--Oct. 25, 2006--Moody's Corporation (NYSE: MCO) today announced results for the third quarter of 2006.

Summary of Results for Third Quarter 2006

Moody's reported revenue of $495.5 million for the three months ended September 30, 2006, an increase of 18% from $421.1 million for the same quarter of 2005. Operating income for the quarter was $268.8 million and rose 16% from $231.9 million for the same period of last year. Diluted earnings per share were $0.55, 15% higher than $0.48 in the third quarter of 2005. Results for the quarter included $20.0 million of expense related to stock options and other stock-based compensation plans, equivalent to $0.04 per diluted share, compared with $13.3 million, or $0.02 per share, in the prior-year period. Results for the third quarter of 2005 also included an $11.5 million reduction to tax reserves, equivalent to $0.04 per diluted share, related to legacy tax matters that Moody's assumed in connection with its separation from The Dun & Bradstreet Corporation in 2000 and which are described in Moody's annual and quarterly SEC filings.

Raymond McDaniel, Moody's Chairman and Chief Executive Officer,

commented, "Moody's reported strong results for the third quarter of 2006 due largely to better than expected performance from our U.S. and European structured finance and corporate finance ratings businesses. Based on Moody's strong results for the first nine months of 2006 we now believe that results for the full year 2006 will exceed our prior outlook."

In addition to its reported results, Moody's has included in this earnings release certain adjusted results that the Securities and Exchange Commission defines as "non-GAAP financial measures." Management believes that such non-GAAP financial measures, when read in conjunction with the company's reported results, can provide useful supplemental information for investors analyzing period to period comparisons of the company's growth. These non-GAAP financial measures relate to: (1) presenting results for the third quarter of 2005 and the first nine months of both 2006 and 2005 before adjustments for income tax exposures related to legacy income tax matters that Moody's assumed in connection with its separation from The Dun & Bradstreet Corporation in 2000 and which are described in Moody's annual and quarterly SEC filings; and (2) presenting results for the third quarter and first nine months of both 2006 and 2005 before the impact of expensing stock-based compensation, which is being phased in over a four year period for stock awards commencing in 2003. In addition, the 2006 outlook presented below includes a discussion of projected 2006 diluted earnings per share growth excluding the impact of: legacy income tax adjustments, the expensing of stock-based compensation, and any potential gain on the sale of Moody's headquarters building. Attached to this earnings release are tables showing adjustments to Moody's results for the third quarter and first nine months of 2006 and 2005 to arrive at non-GAAP financial measures excluding the impacts noted above.

Third Quarter Revenue

Revenue at Moody's Investors Service for the third quarter of 2006 was $459.6 million, 19% greater than in the prior year period. Foreign currency translation, mainly due to the weakness of the U.S. dollar relative to the euro, increased revenue growth by approximately 50 basis points and had a minimal impact on operating income growth.

Ratings revenue totaled $394.0 million in the quarter, rising 19% from a year ago. Within the ratings business, global structured finance revenue totaled $217.7 million for the third quarter of 2006, an increase of 25% from a year earlier. U.S. structured finance revenue rose 18%, benefiting from very strong growth from rating credit derivatives and higher revenue from rating residential mortgage-backed securities, which more than offset a year-over-year decline from the asset-backed securities business. International structured finance revenue rose

41%, benefiting from broad-based growth across the European business.

Global corporate finance revenue of $91.2 million in the third quarter of 2006 rose 17% from the same quarter of 2005. Revenue in the U.S. rose 20% from the prior year period as robust growth from rating bank loans more than offset a year-over-year decline in revenue from rating speculative grade bonds. Outside the U.S., corporate finance revenue increased 13% driven by strong growth in revenue from European investment grade ratings.

Global financial institutions and sovereigns revenue totaled $64.1 million for the third quarter of 2006, 10% higher than in the prior year period. Revenue increased 9% in the U.S. driven in part by new ratings mandates in the finance, real estate and insurance sectors. Outside the U.S., revenue grew 10% based largely on growth in issuer ratings for European banks.

U.S. public finance revenue was $21.0 million for the third quarter of 2006, 4% lower than in the third quarter of 2005, with an increase in new money issuance more than offset by a sharp decrease in refundings.

Moody's global research revenue rose to $65.6 million, increasing 22% from the same quarter of 2005. The quarter's results reflect higher revenue from selling Moody's credit research, licensing Moody's data to third parties, selling analytic tools, and providing credit training and economic research.

Revenue at Moody's KMV was $35.9 million for the quarter, up 3% from the strong prior year period, which had benefited from several large one time software and services sales.

Moody's U.S. revenue of $310.3 million for the third quarter of 2006 was up 16% from the third quarter of 2005. International revenue of $185.2 million was 20% higher than in the prior year period and included approximately 120 basis points of positive impact from currency translation. International revenue accounted for 37% of Moody's total in the quarter, unchanged from the year-ago period.

Third Quarter Expenses

Moody's operating expenses were $226.7 million in the third quarter of 2006, 20% higher than in the prior year period. This increase was driven primarily by higher personnel costs, various technology investments, and the phase-in of equity-based compensation begun in 2003. The quarter's stock-based compensation expense was $20.0 million compared with $13.3 million in the 2005 period. Moody's operating margin for the third quarter of 2006 was 54% compared with 55% in the prior year period.

- 8 -

Third Quarter Effective Tax Rate

Moody's effective tax rate was 40.9% for the third quarter of 2006 compared with 37.5% for the prior year. The increase in the effective tax rate was largely due to a favorable IRS settlement of a legacy tax matter in the prior year period.

Year-to-date Results

Revenue for the first nine months of 2006 totaled $1,447.1 million, an increase of 15% from $1,258.4 million for the same period of 2005. Operating income of $796.2 million was up 14% from $697.2 million for the same period of 2005. Currency translation had a negative impact on these results, reducing revenue growth by approximately 50 basis points and operating income growth by approximately 80 basis points. Diluted earnings per share for the first nine months of 2006 were $1.61, 20% higher than the $1.34 for the prior year period.

Earnings per share for the first nine months of 2006 included $54.6 million of expense related to stock options and other stock-based compensation plans, or $0.12 per share, compared with $42.5 million of similar expense, or $0.08 per share, for the first nine months of 2005. Results for the first nine months of 2005 included a charge of $9.4 million, equivalent to $0.02 per diluted share, for the settlement of sales tax matters related to Moody's operations in Japan from 2000 through June 30, 2005, and an $8.8 million net reduction in tax reserves, equivalent to $0.03 per diluted share, primarily related to legacy income tax exposures.

Ratings and research revenue at Moody's Investors Service totaled $1,344.0 million for the first nine months of 2006, an increase of 16% from the prior year period. Global ratings revenue was $1,154.7 million for the first nine months of 2006, up 15% from $1,004.7 million in the same period of 2005. Research revenue rose to $189.3 million for the first nine months of 2006, up 20% from the prior year period. Finally, revenue at Moody's KMV for the first nine months of 2006 totaled $103.1 million, 8% higher than in the prior year period.

Share Repurchases

During the third quarter of 2006, Moody's repurchased 2.9 million shares at a total cost of $168 million, which more than offset less than 1 million shares issued under employee stock compensation plans. Since becoming a public company in October 2000 and through September 30, 2006, Moody's has repurchased 82.1 million shares at a total cost of $2.7 billion, including 37.5 million shares to offset shares issued under employee stock plans. At quarter-end, Moody's had approximately $1.9 billion of share repurchase authority remaining.

Assumptions and Outlook for Full Year 2006

Moody's outlook for 2006 is based on assumptions about many macroeconomic and capital market factors, including interest rates, corporate profitability and business investment spending, merger and acquisition activity, consumer spending, residential mortgage borrowing and refinancing activity, and securitization levels. There is an important degree of uncertainty surrounding these assumptions and, if actual conditions differ from these assumptions, Moody's results for the year may differ from our current outlook.

Based on Moody's stronger than expected results for the first nine months of 2006 we have made a number of revisions to our outlook for the full year 2006. For Moody's overall, we now project revenue growth in the low teens percent range for the full year 2006. This assumes foreign currency translation for the remainder of the year at current exchange rates, which would result in no material full year impact from currency translation. We now expect the operating margin before the impact of expensing stock-based compensation to be flat to up 50 basis points in 2006 compared with 2005. Among other things, this reflects our increased outlook for revenue and excludes any potential gain on the sale of Moody's headquarters building. The margin outlook continues to reflect investments we are making to: expand internationally; improve our analytical processes; pursue ratings transparency and compliance initiatives; introduce new products; and improve our technology infrastructure.

For 2006, we project year-over-year growth in non-GAAP diluted earnings per share in the high teens to low twenties percent range. This forecast excludes the impacts of adjustments related to legacy tax matters in 2005 and 2006, the expensing of stock-based compensation in 2005 and 2006, and any potential gain on the sale of Moody's headquarters building. This year represents the final year of "phasing in" of expense related to stock-based compensation, which we began in 2003. The impact of expensing stock-based compensation is expected to be in the range of $0.15 - $0.17 per diluted share in 2006, compared to $0.10 per diluted share in 2005.

In the U.S., we forecast low to mid-teens percent revenue growth for the Moody's Investors Service ratings and research business for the full year 2006. In the U.S. structured finance business, we expect revenue for the year to rise in the mid-teens percent range from the record level of 2005. We now expect revenue from rating residential mortgage-backed securities (including home equity securitizations) to be essentially flat compared with 2005. In addition, we are expecting strong growth from rating credit derivatives and commercial mortgage-backed securities.

In the U.S. corporate finance business, we expect revenue growth of

- 10 -

approximately twenty percent for the year including good growth from rated bonds and bank loans.

In the U.S. financial institutions sector, we expect revenue to grow in the low teens percent range for the year reflecting new entrants to the debt capital markets and fee increases partly related to the Enhanced Analysis Initiative.

For the U.S. public finance sector, we expect revenue for 2006 to decline in the double-digit percent range as rising interest rates should continue to slow refinancing activity. We continue to expect strong growth in the U.S. research business at better than twenty percent.

Outside the U.S. we still expect ratings revenue to grow in the low teens percent range. This forecast assumes that foreign currency translation will have no material impact on revenue growth for the year. Our outlook assumes mid-teens to low twenties percent growth for all major business lines except financial institutions, where we expect international revenue to be essentially flat.

Our outlook for Moody's KMV globally anticipates growth in net sales and revenue from credit risk assessment subscription products, credit decision processing software, and professional services. We continue to expect this will result in high single-digit percent growth in revenue, with greater growth in profitability.

* * *

20.     On November 2, 2006 Moody's filed its quarterly report for the period ended

September 30, 2006 with the SEC on Form 10-Q, which was signed by Defendant and reaffirmed

the Company's previously announced financial results. Pursuant to Section 302 of the Sarbanes-

Oxley Act of 2002 ("Sarbanes-Oxley"), the Form 10-Q included a certification signed by the

Defendant stating that the Form 10-Q did not include any material misrepresentations.

21.     On February 7, 2007, Moody's issued a press release announcing its financial

results for fourth quarter and full-year 2006. The press release stated in relevant part as follows:

### Moody's Corporation Reports Results for Fourth Quarter and Full Year 2006

* Revenue increased 25% in 4Q06 and 18% for FY06

- 11 -

* Reported 4Q06 EPS of $0.97 included a gain of $0.33 for building sale

* EPS grew 28% in 4Q06 and 23% for FY06, excluding the gain

NEW YORK--(BUSINESS WIRE)--Feb. 7, 2007--Moody's Corporation (NYSE: MCO) today announced results for the fourth quarter and full year 2006.

Summary of Results for Fourth Quarter 2006

Moody's reported revenue of $590.0 million for the three months ended December 31, 2006, an increase of 25% from $473.2 million for the same quarter of 2005. Operating income for the fourth quarter was $463.3 million, which included a one-time gain on the sale of Moody's 99 Church Street building in New York. Excluding the gain, operating income of $302.7 million rose 25% from $242.4 million in the year-ago period. Net income was $278.6 million and diluted earnings per share were $0.97, including $0.33 per diluted share related to the one-time gain on the building sale. Excluding the gain, diluted earnings per share of $0.64 grew 28% from $0.50 per share in the prior year period. Earnings for the quarter also included $22.5 million of expense related to stock options and other stock-based compensation plans, equivalent to $0.05 per diluted share, compared with $12.3 million of expense, or $0.02 per diluted share, for the prior year period.

Raymond McDaniel, Chairman and Chief Executive Officer of Moody's, commented, "I am pleased to announce that Moody's delivered strong financial performance for both the fourth quarter and full year 2006. We generated strong revenue growth across most business lines, including structured finance and corporate finance ratings as well as in global credit research. While we anticipate that cyclical conditions in some market segments will become less favorable, overall market conditions combined with Moody's revenue diversity should support low-double-digit percent growth in 2007."

In addition to its reported results, Moody's has included in this earnings release certain adjusted results that the Securities and Exchange Commission defines as "non-GAAP financial measures." Management believes that such non-GAAP financial measures, when read in conjunction with the company's reported results, can provide useful supplemental information for investors analyzing period to period comparisons of the company's growth. These non-GAAP financial measures, as described more specifically in the text, include: (1) presenting fourth quarter and full year 2006 and fourth quarter and full year 2005 before the impact of expensing stock-based compensation, (2) presenting fourth quarter 2006 and full year 2006 excluding the gain on sale of Moody's 99 Church Street building, and (3) presenting full year 2006 and full year 2005 excluding adjustments for legacy income tax exposures. Beginning in 2007, stock-based compensation

expense will no longer be excluded from non-GAAP results or outlooks as the impact of stock-based compensation expense has been fully phased in as of 2006. Attached to this earnings release are tables showing adjustments to Moody's fourth quarter and full year results for 2006 and 2005 to explain non-GAAP financial measures excluding the impacts noted above.

Fourth Quarter Revenue

Revenue at Moody's Investors Service for the fourth quarter of 2006 was $550.3 million, an increase of 26% from the prior year period. Ratings revenue totaled $480.9 million in the quarter, rising 26% from a year ago. Research revenue of $69.4 million was 22% higher than in the fourth quarter of 2005.

Within the ratings business, global structured finance revenue totaled $275.7 million for the fourth quarter of 2006, an increase of 31% from a year earlier. U.S. structured finance revenue rose 27%, driven by strong growth in credit derivatives and commercial mortgage-backed securities ratings, tempered by a modest decline in asset backed securities revenue. International structured finance revenue rose 40%, reflecting strong growth across all asset classes.

Global corporate finance revenue of $111.1 million in the fourth quarter of 2006 rose 31% from the same quarter of 2005. Revenue in the U.S. rose 22% from the prior year period, reflecting sharply higher levels of rated loan and bond issuance for both investment grade and speculative grade securities. Outside the U.S., corporate finance revenue increased 45% due largely to bond issuance volume in Europe and Canada.

Global financial institutions and sovereigns revenue totaled $69.9 million for the fourth quarter of 2006, increasing 8% from the prior year period. Revenue in the U.S. was flat to the prior year quarter, following three consecutive quarters of moderate growth. Favorable results in insurance and real estate finance ratings in the U.S. were offset by declines in the banking and the finance and securities sectors. Outside the U.S., revenue rose 13% reflecting strong performance in the banking sectors in both Europe and Asia.

U.S. public finance revenue was $24.2 million for the fourth quarter of 2006, 18% higher than in the fourth quarter of 2005. This reflected an increase in refunding issuance in the quarter as long-term interest rates remained at low levels.

Moody's global research revenue rose to $69.4 million, up 22% from the same quarter of 2005. This growth reflected good increases in each of Moody's research product segments, including core research services, licensing of Moody's data to third parties, and sales of data and analytic tools.

Foreign currency translation positively impacted revenue and operating income growth for Moody's Investors Service by approximately 190 basis points and 110 basis points, respectively.

Revenue at Moody's KMV ("MKMV") for the fourth quarter of 2006 was $39.7 million, 11% higher than in the fourth quarter of 2005. Strong revenue growth from professional services and an increase in revenue from sales of risk product subscriptions were partially offset by declines in revenue from the licensing of credit processing software.

Moody's U.S. revenue of $360.5 million for the fourth quarter of 2006 was up 22% from the fourth quarter of 2005. International revenue of $229.5 million was 28% higher than in the prior year period and reflected approximately 450 basis points of positive impact from currency translation. International revenue accounted for 39% of Moody's total revenue in the quarter compared with 38% in the year-ago period.

Fourth Quarter Expenses

Operating expenses for the fourth quarter of 2006 were $126.7 million which included the gain on the sale of the 99 Church Street building. Excluding the gain, Moody's operating expenses were $287.3 million in the fourth quarter, 24% higher than in the prior year period. The higher fourth quarter expense was primarily related to higher personnel costs, including performance-based compensation expense and the final phasing-in of expense related to annual stock-based compensation awards, which commenced in January 2003 and generally vests over a four-year period. The quarter's stock-based compensation expense was $22.5 million compared with $12.3 million in the 2005 period. Excluding the gain on sale, Moody's operating margin for the fourth quarter of 2006 was 51%, equal to the margin for the same period in 2005.

Fourth Quarter Effective Tax Rate

Moody's effective tax rate for the fourth quarter of 2006 was 39.9% as compared with 38.5% for the prior year period. The tax rate for the fourth quarter of 2006 benefited from the recognition of additional foreign tax credits. The tax rate for the fourth quarter of 2005 benefited from the impact of the American Jobs Creation Act of 2004, which permitted Moody's a one-time opportunity to repatriate funds at a lower tax rate in 2005 than previously.

Full Year 2006 Results

Revenue for the full year 2006 totaled $2,037.1 million, an increase of 18% from $1,731.6 million for the same period of 2005. Operating income for the full year

2006 was $1,259.5 million and net income was $753.9 million. Excluding the gain on sale of the 99 Church Street building, operating income for 2006 grew 17% from $939.6 million and net income grew 18% from $560.8 million in 2005. Diluted earnings per share of $2.58 for the full year 2006 included $0.32 per diluted share related to the gain on sale. Excluding the gain, full year diluted earnings per share were $2.26, 23% higher than $1.84 for 2005.

Diluted earnings per share for the full year 2006 also included a benefit of $2.4 million, equivalent to $0.01 per diluted share, related to a reduction in reserves for legacy income tax exposures. Results for the full year 2005 included a charge of $9.4 million, equivalent to $0.02 per diluted share, for the settlement of sales tax matters related to Moody's operations in Japan from 2000 through June 30, 2005, and an $8.8 million net reduction in income tax reserves, equivalent to $0.03 per diluted share, primarily related to legacy income tax exposures. Moody's results for the full year 2006 also included $77.1 million of expense related to stock options and other stock-based compensation plans, or $0.17 per diluted share, compared with $54.8 million of similar expense, or $0.10 per diluted share, in the full year 2005.

Ratings and research revenue at Moody's Investors Service totaled $1,894.3 million for the full year 2006, an increase of 18% from the prior year period. The impact of currency translation on full year 2006 revenue was not material. Global ratings revenue was $1,635.6 million for the full year 2006, up 18% from $1,385.0 million in the same period of 2005. Each of the global ratings business lines achieved year-over-year growth with the exception of U.S. public finance. Research revenue rose to $258.7 million for the full year 2006, up 20% from the full year 2005. Finally, revenue at MKMV for the full year 2006 totaled $142.8 million, 9% higher than in the prior year period.

Share Repurchases

During the fourth quarter of 2006, Moody's repurchased 2.3 million shares at a total cost of $149.6 million and issued 1.1 million shares of stock under stock-based compensation plans. For the full year 2006, Moody's repurchased 18.0 million shares at a total cost of $1.1 billion and issued 6.5 million shares under stock-based compensation plans. Since becoming a public company in October 2000 and through December 31, 2006, Moody's has repurchased 84.4 million shares at a total cost of $2.9 billion, including 38.6 million shares to offset shares issued under stock-based compensation plans. At year-end, Moody's had $1.8 billion of share repurchase authority remaining under the current $2 billion program.

Outlook for Full Year 2007

Moody's outlook for 2007 is based on assumptions about many macroeconomic and capital market factors, including interest rates, corporate profitability and business investment spending, merger and acquisition activity, consumer spending, residential mortgage borrowing and refinancing activity, securitization levels and capital markets issuance. There is an important degree of uncertainty surrounding these assumptions and, if actual conditions differ from these assumptions, Moody's results for the year may differ from our current outlook.

For Moody's overall, we project low double-digit percent revenue growth for the full year 2007. This growth assumes foreign currency translation in 2007 at current exchange rates, which would result in no material full year impact from currency translation. We expect the operating margin to decline by approximately 150 basis points in 2007, due to investments we are continuing to make to sustain business growth, including international expansion, improving our analytical processes, pursuing ratings transparency and compliance initiatives, introducing new products, improving our technology infrastructure and relocating Moody's headquarters in New York City. On a GAAP basis, diluted earnings per share in 2007 are projected to be modestly lower compared to 2006. However, excluding the one-time gain on the sale of Moody's 99 Church Street building from 2006 results, we project low-double-digit percent growth in 2007 non-GAAP diluted earnings per share. This expected growth includes stock-based compensation expense in 2006 and 2007.

In the U.S., we project low-double-digit percent revenue growth for the Moody's Investors Service ratings and research business for the full year 2007. In the U.S. structured finance business, we expect revenue for the year to rise in the high-single to double-digit percent range, including strong double-digit year-over-year percent growth in revenue from credit derivatives and commercial mortgage-backed securities ratings, partially offset by an expected decline in revenue from residential mortgage-backed securities ratings, including home equity securitization.

In the U.S. corporate finance business, we expect revenue growth in the low double-digit percent range for the year, including good growth from rated bonds, bank loans and new products. We anticipate a stronger first half of 2007 followed by a weaker second half, due in part to an expected moderation in the pace of leveraged buyout transactions.

In the U.S. financial institutions sector, we project revenue in 2007 to grow in the low teens percent range for the year. For the U.S. public finance sector, we expect revenue for 2007 to grow modestly. We forecast growth in the U.S. research business to be about 20%.

Outside the U.S. we expect ratings revenue to grow in the high-teens percent

range with mid- to high-teens percent growth in all major business lines, led by corporate finance revenue growth in Europe and Asia, financial institutions growth in Europe, and growth in international structured finance. We also project about twenty percent growth in international research revenue.

For Moody's KMV globally, we expect growth in sales and revenue from credit risk assessment subscription products, credit decision processing software, and professional services. This should result in low-double-digit percent growth in revenue with greater growth in profitability.

<center>* * *</center>

22.     On March 1, 2007, Moody's filed its annual report for the period ended December 31, 2006 with the SEC on Form 10-K, which was signed by Defendant Huber, among others, and reaffirmed the Company's previously announced financial results. Pursuant to Section 302 of Sarbanes-Oxley, the Form 10-K included a certification signed by Huber stating that the Form 10-K did not include any material misrepresentations.

23.     On April 25, 2007, Moody's issued a press release announcing its financial results for first quarter 2007. The press release stated in relevant part as follows:

### Moody's Corporation Reports Results for First Quarter 2007

-- Revenue increased 32% from 1Q-06; Operating Income up 28%; EPS up 27%

-- Growth led by both global structured finance and corporate finance ratings

-- Repurchased 6.8 million shares for $443 million

-- FY 2007 EPS guidance reaffirmed

NEW YORK--(BUSINESS WIRE)--April 25, 2007--Moody's Corporation (NYSE: MCO) today announced results for the first quarter 2007.

Summary of Results for First Quarter 2007

Moody's reported revenue of $583.0 million for the three months ended March 31,

<center>- 17 -</center>

2007, an increase of 32% from $440.2 million for the same quarter of 2006. Operating income for the quarter was $304.7 million and rose 28% from $238.3 million for the same period of last year. Diluted earnings per share were $0.62 for the first quarter of 2007, 27% higher than $0.49 in the first quarter of 2006.

Raymond McDaniel, Chairman and Chief Executive Officer, commented, "Moody's achieved strong results for the first quarter of 2007. All major business units and geographic regions delivered double-digit percent revenue growth, led by strong gains in both global structured finance and corporate finance ratings. Looking forward, we expect that Moody's will generate results for the remainder of 2007 in line with the outlook that we provided at the beginning of this year."

First Quarter Revenue

Revenue at Moody's Investors Service for the first quarter of 2007 was $547.4 million, an increase of 34% from the prior year period. Foreign currency translation positively impacted operating results, increasing revenue growth by approximately 240 basis points and operating income growth by a similar amount. Ratings revenue totaled $472.4 million in the quarter, rising 36% from a year ago. Research revenue of $75.0 million was 25% higher than in the first quarter of 2006.

Within the ratings business, global structured finance revenue totaled $251.5 million for the first quarter of 2007, an increase of 44% from a year earlier. U.S. structured finance revenue rose 45%, driven by growth across most asset classes with strong results from rating commercial mortgage-backed securities and exceptional growth from credit derivatives ratings. International structured finance revenue rose 43%, benefiting from broad-based growth across all asset classes, particularly from credit derivatives and residential mortgage-backed securities ratings.

Global corporate finance revenue of $114.8 million in the first quarter of 2007 rose 40% from the same quarter of 2006. Revenue in the U.S. rose 52% from the prior year period reflecting significant growth in rating fees related to syndicated bank loans and high yield bonds. Outside the U.S., corporate finance revenue increased 19%.

Global financial institutions and sovereigns revenue of $76.7 million increased 16% for the first quarter of 2007. Financial institutions revenue in the U.S. rose 13% due to strong issuance by insurance companies and good growth in the finance and securities sectors, somewhat offset by weaker issuance in the real estate sector. Outside the U.S., revenue rose 19%, reflecting solid growth in the European banking and insurance sectors due to strong issuance, and good growth in new rating relationships, offset by a modest decline in revenue from rating local

government debt.

U.S. public finance revenue was $29.4 million for the first quarter of 2007, 15% higher than in the first quarter of 2006, reflecting higher-than-expected refundings and new money issuance fueled by an unanticipated increase in issuance by state and local governments.

Moody's global research revenue rose to $75.0 million, up 25% from the same quarter of 2006. The quarter's growth was driven by higher revenue in each of Moody's research product areas, including core research related to credit ratings, as well as economic analysis services, data licensing, and credit training. In addition, the unit produced strong revenue growth from new data and analytic products.

Revenue at Moody's KMV ("MKMV") for the first quarter of 2007 was $35.6 million, 10% higher than in the first quarter of 2006. Revenue from risk product subscriptions grew 13% and revenue from professional services grew 20%. Revenue from licensing of credit processing software and the related software maintenance fees was essentially flat versus the prior year period.

Moody's U.S. revenue of $378.6 million for the first quarter of 2007 was up 36% from the first quarter of 2006. International revenue of $204.4 million was 27% higher than in the prior year period and included approximately 590 basis points of positive impact from currency translation. International revenue accounted for 35% of Moody's total in the quarter compared with 37% in the year-ago period.

First Quarter Expenses

Moody's operating expenses were $278.3 million in the first quarter of 2007, 38% higher than in the prior year period. About two-thirds of the increase was driven by higher personnel costs while the remaining one-third was largely driven by additional lease expense primarily related to Moody's headquarters move later this year and incremental technology investments. Moody's operating margin for the first quarter of 2007 was 52.3%, 180 basis points lower than the prior year period.

First Quarter Effective Tax Rate

Moody's effective tax rate was 41.8% for the first quarter of 2007 compared with 39.5% for the prior year period. The increase was due primarily to the favorable settlement of state tax audits in the prior year and incremental tax expense in the first quarter of this year associated with the adoption of FASB Interpretation No. 48 "Accounting for Uncertainty in Income Taxes" effective January 1, 2007.

Share Repurchases

During the first quarter of 2007, Moody's repurchased 6.8 million shares at a total cost of $442.6 million and issued 2.2 million shares under employee stock-based compensation plans. First quarter share repurchases were funded using a combination of excess free cash and $80 million financed by Moody's revolving credit facility. Since becoming a public company in October 2000 and through March 31, 2007, Moody's has repurchased 91.2 million shares at a total cost of $3.3 billion, including 40.8 million shares to offset shares issued under employee stock plans. At quarter-end, Moody's had $1.3 billion of share repurchase authority remaining under the current $2 billion program.

Assumptions and Outlook for Full Year 2007

Moody's outlook for 2007 is based on assumptions about many macroeconomic and capital market factors, including interest rates, corporate profitability and business investment spending, merger and acquisition activity, consumer spending, residential mortgage borrowing and refinancing activity and securitization levels. There is an important degree of uncertainty surrounding these assumptions and, if actual conditions differ from these assumptions, Moody's results for the year may differ from our current outlook.

For Moody's overall, we project low-teens percent revenue growth for the full year 2007. This growth assumes foreign currency translation in 2007 at current exchange rates. We continue to expect the full-year operating margin, excluding the one-time gain on the sale of Moody's 99 Church Street building from 2006 results, to decline by approximately 150 basis points in 2007 compared with 2006. This reflects investments to sustain business growth including: international expansion, improving our analytical processes, pursuing ratings transparency and compliance initiatives, introducing new products, improving our technology infrastructure and relocating Moody's headquarters in New York City. We expect our quarterly spending pattern to differ from previous years, which could result in quarterly operating margins that differ materially from our full-year expectations. On a GAAP basis, diluted earnings per share in 2007 are still projected to be modestly lower compared to 2006. However, excluding the one-time gain on the building sale from 2006 results, we continue to project low-double-digit percent growth in 2007 diluted earnings per share.

In the U.S., we still project low-double-digit percent revenue growth for the Moody's Investors Service ratings and research business for the full year 2007. In the U.S. structured finance business, we now expect revenue for the year to rise in the high-single-digit percent range, including solid double-digit year-over-year percent growth in revenue from credit derivatives and commercial mortgage-backed securities ratings, partially offset by a decline in revenue from residential mortgage-backed securities ratings, including home equity securitization, in the low-teens percent range, which is a greater decline than the

mid-single digit percent decline originally forecast.

In the U.S. corporate finance business, we now expect revenue growth in the mid-twenties percent range for the year, up from our previous expectation of low double-digit percent growth, largely due to a higher volume of leveraged transactions than previously anticipated.

In the U.S. financial institutions sector, we continue to expect revenue to grow in the low-teens percent range. For the U.S. public finance sector, we continue to forecast revenue for 2007 to grow modestly despite better performance in the first quarter, due to a softening of issuance in certain sectors, including healthcare, higher education and infrastructure. We continue to expect growth in the U.S. research business to be about twenty percent.

Outside the U.S. we still expect ratings revenue to grow in the high-teens percent range with high-teens percent growth across all major business lines, led by corporate finance revenue growth in Europe and Asia, financial institutions growth in Europe, and growth in international structured finance. We also now project growth in the low twenties percent range for international research revenue.

For Moody's KMV globally, we continue to expect growth in sales and revenue from credit risk assessment subscription products, credit decision processing software, and professional services. This should result in low-double-digit percent growth in revenue with greater growth in profitability.

* * *

24.     On May 3, 2007 Moody's filed its quarterly report for the period ended March

31, 2007 with the SEC on Form 10-Q, which was signed by Defendant Huber and reaffirmed the

Company's previously announced financial results.  Pursuant to Section 302 of Sarbanes-Oxley,

the Form 10-Q included a certification signed by Huber stating that the Form 10-Q did not

include any material misrepresentations.

25.     Defendant's statements described in ¶¶19-24, above, were materially false and

misleading because Defendant  misrepresented or failed to fully disclose that the Company

assigned excessively high ratings to bonds backed by risky subprime mortgages – including

- 21 -

bonds packaged as collateralized debt obligations – which was materially misleading to investors concerning the quality and relative risk of these investments. Moreover, even as a downturn in the housing market caused rising delinquencies of the subprime mortgages underlying such bonds, Moody's maintained its excessively high ratings, rather than downgrade the bonds to reflect the true risk of owning subprime-mortgage-backed debt instruments.

## Disclosures at the End of The Class Period

26.     Then, on July 11, 2007, Moody's shocked investors when it announced that the Company was downgrading 399 mortgage-backed securities issued in 2006 and reviewing an additional thirty-two for downgrade, affecting approximately $5.2 billion of bonds. The Company also disclosed that it had downgraded 52 bonds issued in 2005.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and(b)(3) of the Federal Rule of Civil Procedure on behalf of a Class, consisting of all persons who purchased or otherwise acquired Moody's common stock between October 25, 2006 and July 10, 2007, inclusive (the "Class Period"), and who were damaged thereby. Excluded from the Class are Defendant, members of the immediate family of Defendant, any subsidiary or affiliate of Moody's and the directors, officers, and employees of Moody's or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

28.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands

of members of the Class located throughout the United States. Record owners and other members of the Class may be identified from records maintained by the Company and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

29.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendant's wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendant's acts and omissions as alleged herein;

(b)     whether Defendant participated in and pursued the common course of conduct complained of herein;

(c)     whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, operations, financial condition, and prospects of Moody's;

(d)     whether statements made by Defendant to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, value, performance, and prospects of the Company;

- 23 -

(e)    whether the market price of Moody's common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(f)    the extent to which the members of the Class have sustained damages and the proper measure of damages.

32.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

33.    At all relevant times, the market for Moody's common stock was an efficient market for the following reasons, among others:

(a)    Moody's common stock was listed and actively traded on the NYSE, a highly efficient market;

(b)    As a regulated issuer, the Company filed periodic public reports with the SEC; and,

(c)    Moody's regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

(d)    As a result, the market for Moody's securities promptly digested current information with respect to the Company from all publicly available sources and reflected such

- 24 -

information in the Company's stock price. Under these circumstances, all purchasers of Moody's

common stock during the Class Period suffered similar injury through their purchase of stock at

artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

34.     The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

To the extent that the specific statements pleaded herein were identified as forward-looking

statements, there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking

statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-

looking statements pleaded herein, Defendant is liable for those false forward-looking statements

because at the time each of those forward-looking was made Defendant knew that the particular

forward-looking statement was false, and/or the forward-looking statement was authorized and/or

approved by an executive officer of the Company who knew that those statements were false

when made.

## SCIENTER ALLEGATIONS

35.     As alleged herein, Defendant acted with scienter in that Defendant knew that the

public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, Defendant Huber, by virtue of her

- 25 -

receipt of information reflecting the true facts regarding Moody's, her control over, and/or receipt
and/or modification of Moody's allegedly materially misleading misstatements and/or her
associations with the Company which made her privy to confidential proprietary information
concerning Moody's, participated in the fraudulent scheme alleged herein.

## FIRST CLAIM

## <u>Breach of Fiduciary Duty</u>

36.     Plaintiff repeats and realleges each and every allegation contained above as if fully
set forth herein.

37.     Defendant Huber owed a fiduciary duty to the Class, as purchasers and owners
of Moody's stock.

38.     Defendant, by means of her making the foregoing false and misleading
statements, breached her fiduciary duty to the Class.

## SECOND CLAIM

## Violations Of Section 10(b) Of The Exchange Act
## <u>And Rule 10b-5Promulgated Thereunder</u>

39.     Plaintiff repeats and realleges each and every allegation contained above.

40.     Defendant: (a) knew or recklessly disregarded material adverse
nonpublic information about the Company's financial results and then existing business
conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving
the misleading statements, releases, reports, and other public representations of and about
Moody's.

41.     During the Class Period, Defendant, with knowledge of or reckless

disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     Defendant has violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Moody's stock during the Class Period.

43.     Plaintiff and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for Moody's stock. Plaintiff and the Class would not have purchased Moody's stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendant's false and misleading statements.

## THIRD CLAIM

### Violations Of Section 20(a) Of The Exchange Act

44.     Plaintiff repeats and realleges each and every allegation contained above.

45.     Defendant Huber acted as controlling person of the Company within the meaning of § 20(a) of the Exchange Act. By reason of her senior executive positions she had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.

46. By reason of such wrongful conduct, the Defendant is liable

pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of her wrongful

conduct, Plaintiff and the other members of the Class suffered damages in connection with their

purchases of Moody's stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying

Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other Class

members against Defendant, for all damages sustained as a result of Defendant's wrongdoing, in

an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: July _19_, 2007

**O'ROURKE KATTEN & MOODY**

By: _____

Joel L. Lipman
161 North Clark Street
Suite 2230
Chicago, IL 60601
Telephone:    (312) 849-2020
Facsimile:    (312) 849-2021

*Attorneys for Plaintiff*

- 28 -

**SWORN CERTIFICATION OF PLAINTIFF RAPHAEL NACH**
**MOODY'S CORPORATION SECURITIES LITIGATION**

I, Raphael Nach, certify that:

1.     I have reviewed the Complaint and authorized its filing.

2.     I did not purchase MOODY'S CORPORATION, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in MOODY'S CORPORATION during the Class Period set forth in the Complaint are as follows:

I bought 36 shares on 12/26/2006 at $70.80 per share

5.     I have not served as a representative party on behalf of a class under this title during the last three years.

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 7/16/07

_____
(Please Sign Your Name Above)
RAPHAEL NACH

# CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Raphael Nach | Linda S. Huber |

**(b)** County of Residence of First Listed Plaintiff   Los Angeles County, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
JOEL L. LIPMAN
O'ROURKE KATTEN & MOODY
161 North Clark Street, Suite 2230
CHICAGO IL 60601
312/849-2020

Attorneys (If Known)

**FILED**
JUL 19 2007
JUL 19 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07CV4071**
**JUDGE CASTILLO**
**MAG.JUDGE VALDEZ**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ]110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ]610 Agriculture | [ ]422 Appeal 28 USC 158 | [ ]400 State Reapportionment |
| [ ]120 Marine | [ ]310 Airplane | [ ]362 Personal Injury— Med. Malpractice | [ ]620 Other Food & Drug | | [ ]410 Antitrust |
| [ ]130 Miller Act | [ ]315 Airplane Product Liability | [ ]365 Personal Injury— Product Liability | [ ]625 Drug Related Seizure of Property 21 USC 881 | [ ]423 Withdrawal 28 USC 157 | [ ]430 Banks and Banking |
| [ ]140 Negotiable Instrument | [ ]320 Assault, Libel & Slander | [ ]368 Asbestos Personal Injury Product Liability | [ ]630 Liquor Laws | | [ ]450 Commerce/ICC Rates/etc. |
| [ ]150 Recovery of Overpayment & Enforcement of Judgment | [ ]330 Federal Employers' Liability | | [ ]640 R.R. & Truck | **PROPERTY RIGHTS** | [ ]460 Deportation |
| [ ]151 Medicare Act | [ ]340 Marine | **PERSONAL PROPERTY** | [ ]650 Airline Regs. | [ ]820 Copyrights | [ ]470 Racketeer Influenced and Corrupt Organizations |
| [ ]152 Recovery of Defaulted Student Loans (excl. vet.) | [ ]345 Marine Product Liability | [ ]370 Other Fraud | [ ]660 Occupational Safety/Health | [ ]830 Patent | [ ]480 Consumer Credit |
| [ ]153 Recovery of Overpayment of Veteran's Benefits | [ ]350 Motor Vehicle | [ ]371 Truth in Lending | [ ]690 Other | [ ]840 Trademark | [ ]490 Cable/Satellite TV |
| [ ]160 Stockholders' Suits | [ ]355 Motor Vehicle Product Liability | [ ]380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ]810 Selective Service |
| [ ]190 Other Contract | [ ]360 Other Personal Inj. | [ ]385 Property Damage Product Liability | [ ]710 Fair Labor Standards Act | [ ]861 HIA (1395ff) | [ ]850 Security/Commodity/Exch. |
| [ ]195 Contract Product Liability | | | [ ]720 Labor/Mgmt. Relations | [ ]862 Black Lung (923) | [ ]875 Customer Challenge 12 USC 3410 |
| [ ]196 Franchise | | | | [ ]863 DIWC/DIWW (405(g)) | [ ]891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ]730 Labor/Mgmt.Reporting & Disclosure Act | [ ]864 SSID Title XVI | [ ]892 Economic Stabilization Act |
| [ ]210 Land Condemnation | [ ]441 Voting | [ ]510 Motions to Vacate Sentence | [ ]740 Railway Labor Act | [ ]865 RSI (405(g)) | [ ]893 Environmental Matters |
| [ ]220 Foreclosure | [ ]442 Employment | Habeas Corpus: | | **FEDERAL TAX SUITS** | [ ]894 Energy Allocation Act |
| [ ]230 Rent Lease & Ejectment | [ ]443 Housing/ Accommodations | [ ]530 General | [ ]790 Other Labor Litigation | [ ]870 Taxes (U.S. Plaintiff or Defendant) | [ ]895 Freedom of Information Act |
| [ ]240 Torts to Land | [ ]444 Welfare | [ ]535 Death Penalty | | | [ ]900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ]245 Tort Product Liability | [ ]445 ADA—Employment | [ ]540 Mandamus & Other | [ ]791 Empl. Ret. Inc. Security Act | [ ]871 IRS—Third Party 26 USC 7609 | [ ]950 Constitutionality of State Statutes |
| [ ]290 All Other Real Property | [ ]446 ADA — Other | [ ]550 Civil Rights | | | [X]890 Other Statutory Actions |
| | [ ]440 Other Civil Rights | [ ]555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

Breach of Fiduciary Duty, 15. U.S.C. § 78j(b) and 78t(a)

## VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary)

| VIII. REQUESTED IN COMPLAINT: | [X]CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 0 | CHECK YES only if demanded in complaint: JURY DEMAND: [X]Yes [ ]No |
|---|---|---|---|

**IX. This case** [X] is not a refiling of a previously dismissed action.

[ ] is a refiling of case number _____, previously dismissed by Judge _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 7/19/07 | Joel L. L~ |

**U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**ATTORNEY APPEARANCE FORM**

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| In the Matter of | 07CV4071 |
|---|---|
| Raphael Nach, Plaintiff | **JUDGE CASTILLO** |
| v. | |
| Linda S. Huber, Defendant. | **MAG. JUDGE VALDEZ** |

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Raphael Nach, Plaintiff

**FILED**

JUL 1 9 2007
Jul. 19, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| NAME (Type or print) |
|---|
| Joel L. Lipman |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
|---|
| |

| FIRM |
|---|
| O'Rourke Katten & Moody |

| STREET ADDRESS |
|---|
| 161 N. Clark Street, Suite 2230 |

| CITY/STATE/ZIP |
|---|
| Chicago, Illinois 60601 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| 6229726 | (312) 349-2020 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES [X] | NO [ ] |
|---|---|---|
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES [ ] | NO [X] |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES [X] | NO [ ] |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES [ ] | NO [X] |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL [ ]     APPOINTED COUNSEL [ ]

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Raphael Nach

                          Plaintiff,

v.                                            Case No.: 1:07–cv–04071
                                              Honorable Ruben Castillo

Linda Huber

                          Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, August 8, 2007:

    MINUTE entry before Judge Ruben Castillo :Parties to file a joint status report on
or before 9/24/2007. The Court will hold a status hearing in open court on 9/27/2007 at
9:45 AM.Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 3.0</span>**
**Eastern Division**

Raphael Nach

                    Plaintiff,

v.                                  Case No.: 1:07−cv−04071

                                  Honorable Ruben Castillo

Linda Huber

                    Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, September 10, 2007:

      MINUTE entry before Judge Ruben Castillo :Parties to file the joint status report on or before 10/5/2007. Status hearing reset to 10/11/2007 at 9:45 AM. Status hearing set for 9/27/2007 is vacated.Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                                Case Number:

## AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| |
|---|
| NAME (Type or print) |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>              s/ |
| FIRM |
| STREET ADDRESS |
| CITY/STATE/ZIP |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE  NUMBER |
|---|---|
| | |

| |
|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE?          YES          NO |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE?          YES          NO |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR?          YES          NO |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY?    YES          NO |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.<br><br>RETAINED COUNSEL          APPOINTED COUNSEL |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

RAPHAEL NACH, Individually and On
Behalf Of All Others Similarly Situated

                              Plaintiff,

              vs.

  LINDA S. HUBER,

                        Defendant.

No. 07-C-4071

Judge Ruben Castillo

## MOTION OF THE LEWIS WETSTEIN, M.D. TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

PLEASE TAKE NOTICE that class member Lewis Wetstein, M.D. ("Wetstein") by his counsel, will hereby move this Court, on a date and at such time as may be designated by the Court, for an Order (i) appointing Wetstein as Lead Plaintiff; (ii) approving Wetstein's selection of the law firm of Schiffrin Barroway Topaz & Kessler, LLP to serve as Lead Counsel; (iii) approving Wetstein's selection of Miller Law LLC to serve as Liaison Counsel; and (iv) granting such other and further relief as the Court may deem just and proper. In support of this motion,

Wetstein submits herewith a Memorandum of Law.

Dated: September 26, 2007          Respectfully submitted,


                                   By: */s/ Marvin A. Miller*
                                   Marvin A. Miller
                                   Lori A. Fanning
                                   **MILLER LAW LLC**
                                   115 S. LaSalle St.
                                   Suite 2910
                                   Chicago, IL 60603
                                   Telephone:     (312) 332-3400
                                   Facsimile:     (312) 676-2676

                                   **Designated Local Counsel and
                                   Proposed Liaison Counsel**

                                   **SCHIFFRIN BARROWAY
                                     TOPAZ & KESSLER, LLP**
                                   Stuart L. Berman
                                   Sean M. Handler
                                   Tammy D. Cummings
                                   280 King of Prussia Road
                                   Radnor, PA 19087
                                   Telephone:     (610) 667-7706
                                   Facsimile:     (610) 667-7056

                                   **Proposed Lead Counsel**

**CERTIFICATE OF SERVICE**

It is hereby certified that a copy of the foregoing document was filed and served via electronic transmission with the clerk of court using the CM/ECF system on this 26th day of September, 2007 and thereby served upon all counsel of record.

Joel Lee Lipman
O'Rourke, Katten & Moody
161 North Clark Street
Suite 2230
Chicago, IL 60601
jlipman@okmlaw.com


/s/ Marvin A. Miller
Marvin Miller

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAPHAEL NACH, Individually and On Behalf Of All Others Similarly Situated<br><br>         Plaintiff,<br>      vs.<br>LINDA S. HUBER,<br>         Defendant. | No. 07-C-4071<br><br>Judge Ruben Castillo |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF LEWIS WETSTEIN, M.D.  TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

### PRELIMINARY STATEMENT

Moody's Corporation ("Moody's" or the "Company") investor Lewis Wetstein, M.D. ("Wetstein" or "Movant") has losses totaling approximately $11,017 as a result of his investment in Moody's securities.  Accordingly, Movant is believed to have suffered the largest financial loss of any other movant and, as such, has the largest financial interest in the outcome of this litigation.  As the most adequate plaintiff, as defined by Private Securities Litigation Reform Act of 1995 ("PSLRA"), Wetstein hereby moves for his appointment as lead plaintiff of a proposed class of persons or entities who purchased or acquired Moody's securities between October 25, 2006 and July 10, 2007, inclusive (the "Class Period").

### INTRODUCTION

The above-captioned action is a securities purchaser class action lawsuit that has been brought against certain officers and/or directors of the Company alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

Movant, with losses of approximately $11,017, in connection with his purchases of Moody's securities during the Class Period, is suitable and adequate to serve as lead plaintiff.[1] Furthermore, Movant has submitted a sworn certification, demonstrating his desire to serve as lead plaintiff in this action and his understanding of the attendant duties and obligations of serving as such.  *See* Exhibit A.[2]  To the best of his knowledge, Movant's losses represent the largest known financial interest of any Class member seeking to be appointed as lead plaintiff. *See* Exhibit B.  Movant is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that sustained greater financial losses.  In addition, Movant satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and therefore, is qualified for appointment as lead plaintiff in these actions.  Thus, as demonstrated herein, Movant is presumptively the most adequate plaintiff and should be appointed lead plaintiff.

Movant respectfully submits this memorandum of law in support of his motion, pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4 (a)(3)(B), as amended by the PSLRA, for an order: (1) appointing Wetstein to serve as lead plaintiff pursuant to the Exchange Act; (2) approving Wetstein's selection of Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class; and (3) approving Wetstein's selection of Miller Law LLC to serve as Liaison Counsel for the Class.

---

[1]     The losses suffered by Movant are not the same as his legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

[2]     Wetstein's sworn certification documenting his transactions pursuant to the federal securities laws is attached hereto at Exhibit A.

## PROCEDURAL BACKGROUND

The above-captioned action was commenced in this jurisdiction on or about July 19,
2007.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on July 28, 2007, the first notice that a class
action had been initiated against defendants was published in a widely circulated national
business-oriented publication advising members of the proposed class of their right to move the
Court to serve as lead plaintiff no later than September 26, 2007.  *See* Exhibit B.  Movant is a
class member (*see* Exhibit A) and is timely filing this motion within the 60 day period following
publication of the July 28, 2007 notice pursuant to Section 21D of the PSLRA.

## STATEMENT OF FACTS[3]

Moody's Corporation, through its subsidiaries, provides credit ratings, research and risk
analysis covering fixed-income securities, other debt instruments and the entities that issue such
instruments on the global capital markets.  The Company assigns ratings to mortgage bonds
comprised of risky "subprime" home loans, which investors rely on when assessing the risks and
value of investing in these instruments.  Throughout the Class Period, the Company earned
millions of dollars in fees for assigning ratings to subprime-mortgage backed securities, but the
Company failed to disclose that it had assigned exceptionally high ratings to bonds backed by
these risky subprime mortgages.

From October 25, 2006 through April 25, 2007, Moody's issued press releases regarding
the Company's reported ratings revenue growth.  At these times, the Company reported increases
in their ratings revenue.  First, on October 25, 2006, the Company reported ratings revenue of
$394 million in the third quarter of 2006, an increase of 19% from the same quarter previous

---

[3]      These facts were derived from the allegations contained in the above-captioned action.

year.  Then, on February 7, 2007, the Company reported ratings revenue of $480.9 million for the fourth quarter of 2006, an increase of 26% from a year ago. On April 25, 2007, the Company reported ratings revenue of $472.4 million in the first quarter of 2007, rising 36% from the prior year period.  Furthermore, the Company projected low-double digit percent revenue growth for the Moody's Investor Service ratings and research business for the full year of 2007. At the time of these press releases, the Company failed to disclose that the Company had assigned excessively high ratings to bonds backed by risky subprime mortgages.  Even as a downturn in the housing market caused rising delinquencies of subprime mortgages underlying such bonds, Moody's maintained its excessively high ratings and continued to increase their ratings revenue, rather than downgrade the bonds to reflect the true risk of owning subprime-mortgage backed debt instruments.

Finally, on July 11, 2007, Moody's shocked the market when it announced that the Company was downgrading various bonds.  Moody's announced that the Company was downgrading 399 mortgage-backed securities issued in 2006 and was reviewing 32 for downgrade, which affected approximately $5.2 billion of bonds.  In addition, Moody's disclosed that it had downgraded 52 bonds issued in 2005.

## ARGUMENT

### I.    WETSTEIN SHOULD BE APPOINTED LEAD PLAINTIFF

#### A.    The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure.  *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Plaintiff in the first-filed action published a notice on July 28, 2007.  *See* Exhibit B.  This notice indicated that applications for appointment as lead plaintiff were to be made no later than September 26, 2007.  Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action.  15 U.S.C. § 78u-4(a)(3)(A), (B).

Next, according to the PSLRA, the Court shall appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> (aa)  has either filed the complaint or made a motion in response to a notice . . .

5

(bb)  in the determination of the court, has the largest financial
interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal
Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. §78u-4(a)(3)(B)(iii); *Mayo v. Apropos Tech., Inc.*, No. 01 C 8406, 2002 U.S. Dist.

LEXIS 1924, at *8 (N.D. Ill. Feb. 6, 2002) (Coar, J.).

### B.      Wetstein Is "The Most Adequate Plaintiff"

#### 1.      Wetstein Has Made A Motion For His Appointment As Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after

publication of the notice, the Wetstein timely moves this Court to be appointed lead plaintiff on

behalf of all plaintiffs and class members covered by the above-captioned action and any other

actions deemed related by this Court.

#### 2.      Wetstein Has The Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the

class member who represents the largest financial interest in the relief sought by the action.  *See*

*Lax v. First Merchs. Acceptance Corp.,* No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *7

(N.D. Ill. Aug. 6, 1997).  As is demonstrated herein, the Wetstein (with losses of $11,017) has

the largest known financial interest in the relief sought by the Class.  *See* Exhibit B.

#### 3.      Wetstein Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a

party may serve as a class representative if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is
impracticable, (2) there are questions of law or fact common to the

> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Apropos Tech.*, 2002 U.S. Dist. LEXIS 1924, at *12 (noting that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection). As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.[4]

### a.  Wetstein Fulfills The Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if each class member's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the class members and his or her claims are based on the same legal theory." *Apropos Tech.*, 2002 U.S. Dist. LEXIS 1924, at *12-13 (internal citations omitted). However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Id.,* at *13.

Movant seeks to represent a class of purchasers of Moody's securities which have identical, non-competing and non-conflicting interests. Wetstein satisfies the typicality requirement because, just like all other class members, he: (1) purchased or acquired Moody's

---

[4]     Wetstein, a physician residing in New Jersey, has claims that are typical of those of other class members and can adequately serve as Lead Plaintiff.

securities during the Class Period; (2) at prices allegedly artificially inflated by defendants'
materially false and misleading statements and/or omissions; and (3) suffered damages thereby.
Thus, Movant's claims are typical of those of other class members since his claims and the
claims of other class members arise out of the same course of events.

### b.     Wetstein Fulfills The Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the
interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy
of the Movant to:

> (1) whether there are any conflicts between the interests of the
> Movant and the members of the Class; (2) whether the Movant is
> an adequate representative of the Class; (3) whether the interests of
> the Movant are clearly aligned with the members of the putative
> Class; and (4) whether there is evidence of any antagonism
> between their respective interests.

15 U.S.C. § 78u-4(a)(3)(B); *see also Lax,* 1997 U.S. Dist. LEXIS 11866, at *21

(discussing adequacy requirement).  As detailed above, Movant shares common questions of law
and fact with the members of the Class and his claims are typical of the claims of other class
members.  Further, Movant has already taken significant steps demonstrating that he has and will
protect the interests of the Class: he has executed a certification detailing his Class Period
transactions and expressing his willingness to serve as lead plaintiff; he has moved this Court to
be appointed as lead plaintiff in this action; and he has retained competent and experienced
counsel who, as shown below, will be able to conduct this complex litigation in a professional
manner.  Furthermore, Wetstein has the largest known financial interest which gives him a
"significant interest in the outcome of the case to ensure vigorous advocacy." *Taubenfeld v.
Career Educ. Corp.,* No. 03 C 8884*,* 2004 U.S. Dist. LEXIS 4363, at *7 (N.D. Ill. Mar. 19,

2004).  Thus, Movant, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfies all elements of the Exchange Act's prerequisites for appointment as lead plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## II.      THE COURT SHOULD APPROVE WETSTEIN'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class.  *See Lax,* 1997 U.S. Dist. LEXIS 11866, at *25.  In that regard, Movant has selected and retained Schiffrin Barroway Topaz & Kessler, LLP to serve as Lead Counsel for the Class and Miller Law LLC to serve as Liaison Counsel for the Class.  These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class.  *See* Exhibits D & E.

Because there is nothing to suggest that Movant or his counsel will not fairly and adequately represent the Class, or that Movant is subject to unique defenses -- which is the *only* evidence that can rebut the presumption of adequacy under the Exchange Act -- this Court should appoint Wetstein as Lead Plaintiff and approve his selection of Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class and Miller Law LLC as Liaison Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (a) appoint Wetstein as Lead Plaintiff; (b) approve Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class; and (c) approve Miller Law LLC as Liaison Counsel for the Class.

Dated: September 26, 2007                    Respectfully submitted,


                                             By: */s/ Marvin A. Miller*
                                             Marvin A. Miller
                                             Lori A. Fanning
                                             **MILLER LAW LLC**
                                             115 S. LaSalle St.
                                             Suite 2910
                                             Chicago, IL 60603
                                             Telephone:    (312) 332-3400
                                             Facsimile:    (312) 676-2676

                                             **Designated Local Counsel and
                                             Proposed Liaison Counsel**

                                             Stuart L. Berman
                                             Sean M. Handler
                                             Tammy D. Cummings
                                             **SCHIFFRIN BARROWAY
                                               TOPAZ & KESSLER, LLP**
                                             280 King of Prussia Road
                                             Radnor, PA 19087
                                             Telephone:    (610) 667-7706
                                             Facsimile:    (610) 667-7056

                                             **Proposed Lead Counsel**

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a copy of the foregoing document was filed and served via electronic transmission with the clerk of court using the CM/ECF system on this 26th day of September, 2007 and thereby served upon all counsel of record.

Joel Lee Lipman
O'Rourke, Katten & Moody
161 North Clark Street
Suite 2230
Chicago, IL 60601
<u>jlipman@okmlaw.com</u>

*/s/ Marvin A. Miller*
Marvin Miller

# EXHIBIT A

**CERTIFICATION**

I, (print name) _____LEWIS WETSTEIN, M.D._____ ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

      1.     Plaintiff has reviewed the Complaint, authorizes its filing, and retains Schiffrin Barroway Topaz & Kessler, LLP and such co-counsel it deems appropriate to associate with to pursue such action on a contingent fee basis.

      2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

      3.     Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group,  including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

      4.     Plaintiff's purchase and sale transaction(s) in the **Moody's Corp. (NYSE: MCO)**  security that is the subject of this action during the Class Period is/are as follows :

| Type of Security (common stock, preferred, option, or bond) | Date Purchased | Date Sold | Number of Shares | Price per share |
|---|---|---|---|---|
| MOODYS CORP | 25 JUNE 07 | | 1000 | $62.1864 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**(Please list purchases and sales on separate lines; purchases first then sales on lines below; also list additional transactions on a separate piece of paper, if necessary)**

      5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

      6.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as described below:_____.

      7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _14_ day of _September_____, 200_7_.

_____         _____Lewis Wetstein, M.D._____
Signature                              Print Name

# EXHIBIT B

The Economist July 28th 2007

## Claims Brought Against Linda S. Huber Announced by O'Rourke Katten & Moody

Notice is hereby given that an action was filed July 19, 2007, in the United States District Court for the Northern District of Illinois, Case No. 07-cv-4071 (RC), on behalf of shareholders who purchased the common stock of Moody's Corporation ("Moody's") between October 25, 2006 and July 10, 2007, inclusive (the "Class Period").

The Complaint charges Linda S. Huber with violations of federal securities laws. Among other things, plaintiff claims that defendant's misleading statements concerning Moody's business and operations caused Moody's stock price to become artificially inflated, inflicting damages on investors.

Pursuant to 15 U.S.C. §78u-4, if you are a member of the proposed class described above, you may move the Court, not later than 60 days from the date of this Notice, to serve as lead plaintiff; however, you must meet certain legal requirements. If you wish to discuss this action or have any questions concerning this Notice or your rights or interests with respect to these matters, please contact Joel L. Lipman, Esquire, of O'Rourke Katten & Moody, 161 North Clark Street, Suite 2230, Chicago, Illinois 60601, (312) 849-2020.

# EXHIBIT C

## MOODY'S CORPORATION ESTIMATED LOSSES

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS | | | | ESTIMATED LOSSES |
| | DATE | SHARES | SHARE PRICE | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE | SALES AMOUNT | |
|---|---|---|---|---|---|---|---|---|---|
| Lewis Wetstein, M.D. | 6/25/2007 | 1,000 | 62.1864 | 62,186.40 | RETAINED | 1,000 | 51.1691 | 51,169.10 | (11,017.30) |
| | | 1,000 | | | | 1,000 | | | (11,017.30) |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL FOR LEWIS WETSTEIN, M.D. | | | | | | | | | (11,017.30) |
| | | | | | | | | | |
| CLASS PERIOD: 10/25/06 - 7/10/07 | | | | | | | | | |
| | | | | | | | | | |
| (1) For shares retained at the end of the Class Period, estimated losses are calculated by multiplying those shares | | | | | | | | | |
| by the moving mean average price per share of Moody's Corporation during the 90-days after the end of the Class Period. | | | | | | | | | |
| The price used is 51.1691 as of 9/25/07. | | | | | | | | | |

# EXHIBIT D



SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
Attorneys at Law

**PENNSYLVANIA OFFICE**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667.7706
Facsimile: (610) 667.7056

**CALIFORNIA OFFICE**
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945.0770
Facsimile: (925) 945.8792

---

# FIRM PROFILE

Schiffrin Barroway Topaz & Kessler, LLP, located just outside of Philadelphia, Pennsylvania, specializes in representing shareholders and consumers in complex class action litigation in state and federal courts throughout the United States. Since our inception, SBTK has recovered billions of dollars on behalf of defrauded shareholders and aggrieved consumers. The firm is led by its senior partners, Richard S. Schiffrin, Andrew L. Barroway, Marc A. Topaz, and David Kessler, with assistance from partners Stuart L. Berman, Katharine M. Ryan, Gregory M. Castaldo, Michael K. Yarnoff, Joseph H. Meltzer, Darren J. Check, Tobias L. Millrood, Andrew L. Zivitz, Sean M. Handler, John A. Kehoe, Lee D. Rudy, Kay E. Sickles, Eric L. Zagar and numerous experienced associates and staff.

SBTK focuses on the prosecution of securities fraud actions and derivative and transactional litigation brought against public companies, their officers and directors, and their auditors and investment banking firms. In addition, SBTK represents employees in ERISA/401 K actions, as well as individuals and institutions in consumer litigation, product liability and antitrust actions.

Throughout our history, SBTK has represented various private institutional investors, including public and Taft-Hartley pension funds, hedge funds, mutual fund managers, investment advisors, and insurance companies, as well as thousands of individual investors in securities fraud class actions. Currently, SBTK is serving as Lead or Co-Lead Counsel in several high profile securities class actions against companies such as Tyco, Delphi Corp., Tenet Healthcare, Sprint Corp. and PNC Bank. In addition, SBTK has played a prominent role in the following precedent setting actions:

**In re Tenet Healthcare Corp. Securities Litigation,**
**No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002)**

SBTK serves as co-lead counsel on behalf of the State of New Jersey and its Division of

Investment against Tenet Healthcare Corp. and certain of its former officers and directors. Among other things, the Lead Plaintiff alleges that defendants made a series of materially false or misleading statements and omissions concerning Tenet's business model and financial health from January 11, 2000 through November 7, 2002. After defeating defendants' motions to dismiss and performing substantial document and deposition discovery, a partial settlement has been reached in the amount of $216.5 million in cash which will be submitted for preliminary approval by the Court in the coming weeks. The Partial Settlement is being funded primarily by Tenet and its insurance carriers ($215 million), with personal contributions in the aggregate amount of $1.5 million being made by two of Tenet's former officers, Jeffrey Barbakow and Thomas Mackey. In addition to the substantial cash recovery, the prosecution of this action has played a prominent role in Tenet's initiation of sweeping corporate governance reforms which have led to Tenet being ranked by various institutional rating entities as among the best corporations in America for its corporate governance. The case will continue against KPMG as the Court denied KPMG's motion to dismiss the action in its entirety in December, 2005.

**In re AremisSoft Corp. Securities Litigation,**
**C.A. No. 01-CV-2486 (D.N.J. 2002):**

SBTK is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom remain fugitives. In settling the action, SBTK, as sole Lead Counsel, assisted in reorganizing the Company as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, approved by the court, enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained SBTK to further assist with prosecuting the actions on behalf of the litigation trust. After filing an action in the Isle of Man, where the trust successfully froze more than $200 million of stolen funds from one of the fugitives, the trust achieved a settlement of this action for $200 million, which was returned to the United States and paid to the trust. Recently, the trust commenced another action in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer. Thus far, counsel on behalf of the trust and its beneficiaries have achieved settlements with the Company and certain of its directors and officers as well as the Company's auditors, lawyer and underwriters for a total of more than $250 million. The beneficiaries of the trust have already received in excess of 28% of their recognized losses.

**In re Initial Public Offering Securities Litigation,**
**Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):**

SBTK is one of only six law firms comprising Plaintiffs' Counsel's Executive Committee, and was selected from over sixty law firms which had brought such actions. This litigation challenges the legality of the IPO allocations practices of virtually all of the major investment banking firms from 1998 through 2000, and encompasses over 300 coordinated actions.

# PARTNERS

**RICHARD S. SCHIFFRIN**, founding partner of the firm, is licensed to practice law in Illinois and Pennsylvania, and has been admitted to practice before numerous United States District Courts. In his seven years of practice with the Office of the Public Defender of Cook County, Illinois, Mr. Schiffrin represented hundreds of clients in both bench and jury trials, as well as appeals. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and has served as a faculty member at numerous legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics — Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Most recently, Mr. Schiffrin spoke at the MultiPensions 2005 Conference in Amsterdam, Netherlands; the Public Funds Symposium 2005 in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin oversees all aspects of litigation on behalf of the firm. Mr. Schiffrin has been recognized for his expertise in numerous cases, including most prominently:

*In re AremisSoft Corp. Securities Litigation, C.A. No. 01-CV-2486 (D.N.J. 2002):*

SBTK is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom remain fugitives. In settling the action, SBTK, as sole Lead Counsel, assisted in reorganizing the Company as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, approved by the court, enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained SBTK to further assist with prosecuting the actions on behalf of the litigation trust.

After filing an action in the Isle of Man, where the trust successfully froze more than $200 million of stolen funds from one of the fugitives, the trust achieved a settlement of this action for $200 million, which was returned to the United States and paid to the trust. Recently, the trust commenced another action in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer.

Thus far, counsel on behalf of the trust and its beneficiaries have achieved settlements with the Company and certain of its directors and officers as well as the Company's auditors, lawyer and underwriters, for a total of more than $250 million. The beneficiaries of the trust have already received in excess of 28% of their recognized losses.

*Henry v. Sears, et al., Case No. 98 C 4110 (N.D. Ill. 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel on behalf of the largest class of credit card holders in history. At stake was the right of Sears and its newly formed affiliate, Sears National Bank ("SNB"), to retroactively increase the interest rates on eleven million credit card accounts with outstanding balances resulting from purchases made prior to the accounts being transferred to SNB. Schiffrin Barroway Topaz & Kessler alleged that such conduct violated the Truth-in-Lending Act, the National Banking Act and state consumer fraud statutes. After extensively litigating various aspects of liability, an additional nine months were then spent determining damages. The extraordinary complexity of the damage calculations required Mr. Schiffrin and experts from both parties to develop, test and utilize a novel computer model to ascertain total damages for the class and individualized damages for each class member. Ultimately, Mr. Schiffrin and his partner, Mr. Kessler, were able to negotiate a $156 million settlement, which represented approximately 66% of total damages. In approving the settlement, District Court Judge Leinenwebber of the Northern District of Illinois stated:

. . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance.

The entire settlement fund of $156 million was distributed without the filing of a single proof of claim form by any class member.

*Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III*
*(Tenn. Chan. Ct., 20th Judicial District, 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved and important corporate governance provisions were put in place to prevent future abuse. Mr. Schiffrin, in addition to achieving these desirable results, was able to personally effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

*Jordan v. State Farm Insurance Company, Case No. 97 CH 11*
*(Cir. Ct., McLean County, Ill. 1998):*

Schiffrin Barroway Topaz & Kessler brought a claim on behalf of multiple plaintiffs alleging that State Farm had engaged in fraudulent sales practices by "churning" policies and marketing and selling "vanishing premium" policies that never "vanished." After several years of discovery, motion practice and settlement negotiations, Mr. Schiffrin played a critical role in

resolving the action for $225 million in cash, dividend enhancements and other monetary benefits for current and former State Farm policyholders. Schiffrin Barroway Topaz & Kessler also has achieved substantial settlements in 20 additional cases alleging fraudulent sales practices by various insurance companies.

Mr. Schiffrin has also represented defrauded shareholders and companies in complex class and derivative actions, including the following:

*Huscher v. Curley, et al., No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (In re Sotheby's Holdings, Inc. Derivative Litigation):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action arising out of Sotheby's alleged antitrust price fixing conspiracy with auction house rival Christie's International PLC. A multi-million dollar settlement was negotiated by Mr. Schiffrin whereby Diana Brooks (Sotheby's President at the time of the alleged wrongdoing) agreed to relinquish all of her Sotheby's stock options, and the Company's insurance carrier made a substantial monetary payment to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the litigation.

**ANDREW L. BARROWAY**, managing partner of the firm, received his law degree from the University of Pennsylvania Law School, where he was a member of the ABA Negotiation team. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Barroway frequently lectures on securities class action and lead plaintiff issues, and recently spoke at the 2005 Institutional Investor Hedge Fund Workshop in New York City and the Public Funds Summit 2005 in Phoenix, Arizona. Mr. Barroway has been actively involved in all aspects of litigation on behalf of the firm, and co-manages the firm's securities department. Of his numerous successful representations of shareholders, the following stand out as exceptional:

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of February 2005, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Schiffrin Barroway Topaz & Kessler for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

*In re Digital Lightwave, Inc. Securities Litigation, Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):*

The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions. After extensive litigation and negotiations, a settlement consisting primarily of stock

ultimately grew to a value of over $170 million between the time in which the settlement was negotiated and the time at which it was distributed. Schiffrin Barroway Topaz & Kessler took on the primary role in negotiating the terms of the equity component, insisting that the class have the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses. Schiffrin Barroway Topaz & Kessler believes that this represents the largest percentage recovery for shareholders in securities class action history.

Mr. Barroway, along with his partner, Mr. Kessler, has also negotiated substantial settlements of securities class actions in which Schiffrin Barroway Topaz & Kessler was Lead or Co-Lead Counsel against Pinnacle Holdings, Cell Pathways, Gateway, Mercator and NetSolve. Mr. Barroway currently represents numerous public pension funds, private investment funds, money management firms, and individuals in securities fraud litigation as Lead or Co-Lead Counsel.

**MARC A. TOPAZ,** a senior partner of the firm, received his law degree from Temple University School of Law, where he was an editor of the Temple Law Review and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the New York University Tax Law Review. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Topaz manages the firm's derivative, transactional and antitrust departments. In this regard, Mr. Topaz has been actively involved in litigating the following prominent cases:

*In re MTC Electronic Shareholder Litigation, No. CV-93-0876 (E.D.N.Y. 1993):*

Schiffrin Barroway Topaz & Kessler served as Co-Counsel in a case involving securities fraud by MTC, its officers and directors, underwriters and accountants. The case presented novel issues of Chinese law, and required the construction of a database of hundreds of thousands of documents utilized in numerous party and non-party depositions. A $72 million settlement was achieved on the eve of trial.

*In re Oppenheimer Capital, L.P., Unitholders Litigation, Consolidated No. 16022NC (Del. Ch. 1997):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs alleging that a merger proposed by Pimco Advisors benefitted certain Pimco insiders by disproportionately allocating tax benefits achieved from the restructuring of a limited partnership, and failing to provide adequate compensation to the Oppenheimer shareholders. Plaintiffs moved to enjoin the transaction and a settlement was reached whereby defendants agreed to pay a special dividend to Oppenheimer limited partners of approximately $16 million.

*Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III (Tenn. Chan. Ct., 20th Judicial District, 1999):*

*(See description under Richard S. Schiffrin)*

**DAVID KESSLER**, a senior partner of the firm, graduated with distinction from the Emory School of Law. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Prior to practicing law, Mr. Kessler was a Certified Public Accountant in Pennsylvania. Mr. Kessler co-manages the firm's nationally recognized securities department and assists in the management of the mass tort department. In addition, Mr. Kessler often lectures on securities litigation and was a featured speaker on hot topics in securities litigation in a seminar entitled "The Explosion and Evolution of Class Action Law" in December 2004 in Philadelphia, Pennsylvania, and the Corporate Governance Summit on Corporate Accountability in July 2003 in New York City. Mr. Kessler has achieved the following outstanding results in federal securities cases:

*In re Initial Public Offering Securities Litigation,*
*Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):*

Mr. Kessler, along with Mr. Schiffrin, is presently heading up the firm's litigation efforts in its prominent position as an Executive Committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, Schiffrin Barroway Topaz & Kessler was one of only six selected to serve on the Executive Committee. The coordinated actions, which have been filed against 309 separate issuers of publicly traded securities, challenge the legality of the practices which company the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 309 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history. At the present time, the court has preliminarily approved a $1 billion settlement with the issuers and their officers and directors. The case is proceeding against the underwriting defendants.

*In re Assisted Living Concepts, Inc. Securities Litigation, Lead Case No. 99-167-AA (D. Or. 1999):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's startup losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

*In re Twinlab Corporation Securities Litigation, Master File*
*No. 98-CV-7425 (E.D.N.Y. 1998):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and successfully litigated the action and was able to negotiate a settlement in the amount of $26 million plus interest.

*In re Cumulus Media Inc. Securities Litigation, Lead Case
No. 00-C-391 (E.D. Wis. 2000):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and successfully litigated the
action and negotiated a settlement of $13 million in cash and 240,000 shares of freely tradable
stock in Cumulus Media, which traded for approximately $19 per share, for a total settlement
value of $17.5 million at the time the settlement was approved by the Court.

**STUART L. BERMAN**, a partner of the firm, received his law degree from George
Washington University National Law Center, and his undergraduate degree from Brandeis
University. He is licensed to practice law in Pennsylvania and New Jersey, and has been
admitted to practice before the United States District Court for the Eastern District of
Pennsylvania and the United States District Court for the District of New Jersey. Mr. Berman
manages the firm's lead plaintiff department and has been instrumental in courts appointing
many of the firm's institutional and individual clients as lead plaintiffs in important cases, such
as:

*In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462- RSWL (C.D. Cal. 2002),*

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y.
2002), State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-
2071-JWL (D. Kan. 2003),*

*In re DreamWorks Animation SKG, Inc. Sec. Litig., CV-05-03966 MRP (VBKx) (C.D. Cal.
2005),*

*In re Delphi Corp. Sec. Litig., 1:05-CV-2637 (NRB) (S.D.N.Y. 2005);*

*In re Star Gas Sec. Litig., 3:04-CV-01766-JBA (D. Conn. 2004), Witriol v. Conexant Systems,
Inc., 04-CV-6219 (SRC/TJB) (D.N.J. 2004),*

*In re Vaxgen Inc. Securities Litigation, No. C 03-01129 JSW (N.D. Cal. 2003),*

*In re American Business Financial Services, Inc., No. 04- 0265 (E.D. Pa. 2004)*

*and In re Autobytel, Inc. Securities Litigation, No. CV04-8987 MMM (JWJx) (C.D. Cal. 2004).*

Mr. Berman represents institutional investors worldwide in securities litigation and other related
matters. In addition, Mr. Berman is a frequent speaker on securities issues, especially as they
relate to institutional investors, at The European Pension Symposium in Florence, Italy; the
Public Funds Symposium 2005 in Washington, D.C.; the *Pennsylvania Public Employees
Retirement (PAPERS) Summit* in Harrisburg, Pennsylvania; and the New England Pension
Summit in Newport, Rhode Island. He speaks with institutional investors located around the
world regarding their rights and obligations associated with securities fraud class actions and
individual actions. Mr. Berman works closely with the firm's institutional investors and counsels

them on fulfilling their fiduciary obligations and exercising their rights in all types of securities related actions.

Mr. Berman has specialized in the area of securities litigation for the past nine years. He is particularly proud of the results achieved in *In re AremisSoft Corp. Sec. Litig., C.A. No. 01-CV-2486 (D.N.J. 2002),* a case on which Mr. Berman and his partner, Richard Schiffrin, have worked extensively. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom are now fugitives. In settling the action, Schiffrin Barroway Topaz & Kessler, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, which was approved by the Court, called for the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The Court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained Schiffrin Barroway Topaz & Kessler to continue prosecuting the actions on behalf of the litigation trust. After extensive litigation in the Isle of Man, including the successful freezing of more than $200 million of stolen funds, the trust recently settled its action against one of the principal wrongdoers and recovered approximately $200 million. Thus far, the trust has distributed to beneficiaries of the trust more than 28% of their recognized losses (excluding the value of the equity of the new Company), and is poised to recover even more. Recently, the trust commenced further litigation in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer.

**KATHARINE M. RYAN,** a partner of the firm, graduated *cum laude* from Villanova University School of Law in May 1984. Ms. Ryan is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Third Circuit and the United States Supreme Court. Ms. Ryan recently participated as a speaker in a legal teleconference entitled "Is the PSLRA's Safe Harbor Provision Safe?" Ms. Ryan is actively involved in litigating several of the firm's most prominent cases and was integral in the excellent results achieved in the following cases:

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of February 2005, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Schiffrin Barroway Topaz & Kessler for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

*In re New Power Holdings, Inc. Securities Litigation, No. 02 Civ. 1550 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and was instrumental in

obtaining a recovery of $41 million in cash for class members against a bankrupt company, certain of its officers and directors and the underwriters of the Company's offering. Claims involved New Power, an offshoot of Enron, that was formed to re-enter the deregulated energy market and pursued an IPO with no viable plan to hedge against volatile energy prices.

**GREGORY M. CASTALDO**, a partner of the firm, received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey. Mr. Castaldo has been actively involved in litigating the following cases:

*In re Liberate Technologies Securities Litigation, No. C-02-5017 (MJJ) (N.D. Cal. 2005):*

Plaintiffs alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earnings. As sole Lead Counsel, Schiffrin Barroway Topaz & Kessler successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

*In re Unigraphics Solutions Inc. Shareholders Litigation, Consol. C.A. No. 18916,*

Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $35 million for members of the class;

*In re Prodigy Communications Corp. Shareholders Litigation, Consol. C.A. No. 19113-NC,*

Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $36 million for members of the class; and

*In re Sodexho Marriott Shareholders Litigation, Consol. C.A. No. 18640-NC,*

Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $166 million for members of the class.

Mr. Castaldo is also presently litigating *In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462-RSWL (C.D. Cal. 2002), and State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003).*

**MICHAEL K. YARNOFF**, a partner of the firm, received his law degree from Widener University School of Law. Mr. Yarnoff is licensed to practice law in Pennsylvania, New Jersey, and Delaware and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. He serves in the firm's securities litigation department and has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following:

*In re CVS Corporation Securities Litigation, C.A. No. 01-11464 JLT (D.Mass.):*

After more than three years of contentious litigation and a series of protracted mediation sessions, Schiffrin Barroway Topaz & Kessler, LLP, serving as co-lead counsel, secured a $110 million recovery for class members in the CVS Securities Litigation. Specifically, the suit alleged that CVS violated accounting practices by delaying discounts on merchandise in an effort to prop up its earnings. In addition, the suit charged that in 2001, the Company and its Chief Executive Officer, Thomas M. Ryan, improperly delayed announcement of its intention to close approximately 200 underperforming stores, and that an industry-wide pharmacist shortage would have a materially negative impact on the Company's performance. Settlement was reached just days prior to the commencement of trial, and shortly after the district court had denied the defendants' motions for summary judgment. This substantial recovery, which represents the third-largest settlement in a securities class action case in the First Circuit, received final approval from District Judge Joseph Tauro on September 27, 2004.

*In re InfoSpace, Inc. Securities Litigation, Master File No. C-01-0913-Z (D. Wash. 2001):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs alleging that InfoSpace and certain of its officers and directors overstated revenues by using improper accounting methods, overstated the demand for InfoSpace's wireless services, misstated InfoSpace's financial relationships with major customers, and falsely represented that InfoSpace would receive subscription fees from users of web-enabled cell phones. After two years of hard-fought litigation and complex mediation, a settlement of $34.3 million was obtained for members of the class.

*In re Riverstone Networks, Inc. Securities Litigation, Case No. CV-02-3581 (N.D. Cal. 2002):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five-months of mediation, the parties reached a settlement of $18.5 million.

**JOSEPH MELTZER,** a partner of the firm, received his law degree, with honors, from Temple University School of Law. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit.

Mr. Meltzer concentrates his practice in the areas of ERISA and antitrust complex litigation, and manages the firm's ERISA litigation department, which has excelled in the highly specialized area of prosecuting claims on behalf of retirement savings plans. Mr. Meltzer is Lead Counsel in several pending nationwide class actions brought under ERISA.

Mr. Meltzer has helped obtain several multi-million dollar settlements on behalf of class members, including the recent settlements in *In re Global Crossing ERISA Litigation, No. 02 Civ. 7453 (S.D.N.Y.)* ($79 million settlement) and In re Augmentin Antitrust Litigation, No. 02-442 (E.D. Va.) ($29 million settlement). Mr. Meltzer also prosecutes claims on behalf of third-party payors and consumers and is currently serving as Lead Counsel in *In re Remeron Antitrust Litigation, No. 02-CV-2007 (D.N.J.)* and In *re Wellbutrin SR/Zyban Antitrust Litigation (E.D. Pa.).*

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Meltzer practiced at Barrack, Rodos & Bacine in Philadelphia, where he had prominent roles in prosecuting several complex class actions to successful conclusions, including *In re Sorbates Direct Purchaser Antitrust Litigation, No. C 98-4886 (N.D. Cal. 2001)* ($92 million settlement) and also defended clients in antitrust and commercial litigation.

**ANDREW L. ZIVITZ**, a partner of the firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Zivitz practiced with the Philadelphia law firms of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP and Drinker Biddle & Reath, LLP, where he litigated complex commercial and environmental matters.

Mr. Zivitz is admitted to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Zivitz concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in several of the largest class action securities cases currently pending nationwide. In addition, Mr. Zivitz has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following:

*In re Tenet Healthcare Corp., 02-CV-8462 (C.D.Cal.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Tenet Healthcare and certain of its officers and directors defrauded Medicare out of hundreds of millions of dollars, materially overstated Tenet's revenues, and performed unnecessary cardiac surgeries to increase the Company's earnings. After three years of hard-fought litigation and complex mediation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement involving a $216.5 million payment from Tenet and the Company's former CEO and COO, and specific corporate governance improvements.

*In re Computer Associates, No. 02-CV-1226 (E.D.N.Y.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business, materially overstated the company's revenues, and engaged in illegal insider selling. After nearly

two years of litigation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement of $150 million from the company.

*In re Aon Corp., No. 02-CV-5631 (N.D. Ill.):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and was instrumental in obtaining a recovery of $7.25 million for class members against Aon Corp. and certain of its officers. Plaintiffs brought claims against the defendants on the grounds that they touted the prospects and successes of the company's multi-million dollar "Business Transformation Plan," when in fact they knew that the plan was damaging the company's business.

**DARREN J. CHECK**, a partner of the firm, received his law degree from Temple University School of Law and his undergraduate degree in History, with honors, from Franklin & Marshall College. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, and the United States District Court for the District of Colorado. Mr. Check concentrates his practice in the area of securities litigation and institutional investor relations. Mr. Check began his career at Schiffrin Barroway Topaz & Kessler by working extensively with partner David Kessler on *In re Initial Public Offering Securities Litigation, No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002)*, widely considered the largest securities class action in history. Mr. Check currently concentrates his work as the firm's Director of Institutional Relations, and consults with institutional investors from around the world regarding their rights and responsibilities with respect to their investments in the U.S. market, the monitoring of their investments, and taking an active role in shareholder litigation. Mr. Check regularly meets with institutional investors and speaks at conferences and seminars to discuss class actions, corporate governance, and how Schiffrin Barroway Topaz & Kessler's services can be of use to them. Recently, Mr. Check spoke at the MultiPensions 2005 Conference in Amsterdam, Netherlands; the European Pension Symposium in Florence, Italy; the Public Funds Summit 2005 in Phoenix, Arizona; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; and the New England Pension Summit in Newport, Rhode Island.

In addition, Mr. Check serves in the firm's lead plaintiff department, which involves litigation strategy and lead plaintiff issues.

**TOBIAS MILLROOD,** a partner of the firm, manages the mass tort department at Schiffrin Barroway Topaz & Kessler. Mr. Millrood has been actively involved in mass tort litigation involving Prempro (Hormone Therapy), Guidant Cardiac Devices, Medtronic Cardiac Devices, Vioxx, Fen-Phen, Baycol, Meridia, Thimerosal, Ephedra and Zyprexa.

Mr. Millrood has been distinguished with leadership roles in several national products liability actions. Mr. Millrood currently serves as Liaison Counsel in In Re Hormone Therapy Litigation, Philadelphia Court of Common Pleas. Mr. Millrood also serves on the Plaintiffs' Steering Committee in MDL 1507 – In Re Prempro Products Liability and is Chair of the Association of Trial Lawyers of America (ATLA) Hormone Therapy Litigation Group. Mr. Millrood served as

a Co-Chair of the Expert Committee in *In Re Baycol Litigation, Philadelphia Court of Common Pleas*. In Meridia, Mr. Millrood is Co-Chair of the ATLA Meridia Litigation Group. He also served on the Executive Committee of MDL 1481, In re Meridia Products Liability. In Thimerosal, Mr. Millrood serves on the Executive Committee of the Omnibus Autism Proceedings before the National Vaccine Injury Compensation Program. In August 2003, Mr. Millrood's article on Hormone Therapy was published in Trial magazine. Mr. Millrood speaks frequently at various seminars, on the topics of Mass Tort Litigation, Hormone Therapy, Cardiac Device Litigation, Meridia, the Ethics of Settling Mass Tort Cases and Electronic Discovery. Mr. Millrood has helped his clients to achieve millions of dollars in settlement of their product liability claims.

Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Mr. Millrood practiced at Anapol Schwartz. While at Anapol Schwartz, Mr. Millrood garnered several notable achievements, including serving as co-counsel in a $22 million medical malpractice verdict in Wallace v. Fraider (Phila. CCP Mar. 2001), one of the highest in state history. He also wrote and argued cases resulting in significant changes to Pennsylvania law: *Cullen v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n, 760 A.2d 1198 (Pa. Commw. 2000)* (Pennsylvania workers' compensation carrier could not assert a subrogated claim for benefits that its insured's employee was precluded from recovering in settlement of a related medical malpractice claim); and Estate of Magette v. Goodman, 2001 WL 218981 (Pa. Super. 2001) (failure to retain evidence of EKG strip during orthopedic surgery that resulted in death of patient required new trial where court failed to give jury adverse inference instruction).

Mr. Millrood received his law degree from University of Tulsa College of Law. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit. Mr. Millrood is a former member of the Pennsylvania Trial Lawyers Board of Governors and the Executive Committee of the Philadelphia Bar Association Young Lawyers' Division.

**SEAN M. HANDLER**, a partner of the firm, received his law degree, cum laude, from Temple University School of Law. Mr. Handler received his undergraduate degree from Colby College, with distinction in American Studies. He is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Handler practiced at Reed Smith, LLP in Philadelphia. Mr. Handler concentrates his practice in the area of securities litigation, and serves in the firm's lead plaintiff department, which involves working with clients, litigation strategy and lead plaintiff issues. In this role, Mr. Handler has assisted partner Stuart Berman in enabling various of the firm's institutional and individual clients to serve as lead plaintiffs in important cases, such as *In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462-RSWL (C.D. Cal. 2002), In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002), State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003), In re Ariba Inc. Securities Litigation, Master File No. 03-00277 JF (N.D. Cal. 2003), and In re Autobytel, Inc. Securities Litigation, No. CV04-8987 MMM (JWJx)(C.D. Cal. 2004).*

**JOHN A. KEHOE**, a partner of the firm, received a B.A. from Depaul University, and a Master's degree in Public Administration from the University of Vermont. He received his J.D., magna cum laude, from Syracuse University College of Law in 1997, where he was an Associate Editor of the Syracuse Law Review, an Associate Member of the Moot Court Board, and an alternate member on the National Appellate Team. Mr. Kehoe is licensed to practice law in the State of New York, and has been admitted to practice before the United States District Court for the Southern District of New York.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Kehoe had extensive securities litigation experience as an associate at Bernstein, Litowitz, Berger & Grossman, LLP, and prior to that, at Clifford Chance US LLP. Before attending law school, Mr. Kehoe worked as a police officer in Burlington and Brattleboro, Vermont, and served as the lead investigator in numerous felony and misdemeanor complaints. Mr. Kehoe concentrates his practice in the area of securities litigation, and has worked extensively with partner David Kessler on In re Initial Public Offering Securities Litigation, Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002), currently pending in the Southern District of New York.

**LEE D. RUDY**, a partner of the firm, received his law degree from Fordham University in 1996. In law school he was a senior editor of the Fordham Urban Law Journal and published *A Procedural Approach to Limited Public Forum Cases*, 22 Ford. Urb. L.J. 1255 (1995). He received his undergraduate degree, *cum laude*, from the University of Pennsylvania in 1992. Mr. Rudy is licensed to practice law in Pennsylvania and New York. From 1996 to 2002, Mr. Rudy was an Assistant District Attorney in the Manhattan District Attorney's Office, where he prosecuted dozens of felony jury trials to verdict, including robbery, rape, and murder cases. From 2003 to 2005, Mr. Rudy was an Assistant United States Attorney in the District of New Jersey, where he investigated and prosecuted numerous fraud and violent crime cases, and where he tried several major fraud cases to verdict in federal court. Mr. Rudy co-manages the firm's mergers and acquisition and shareholder derivative litigation department along with Marc Topaz and Eric Zagar.

**KAY E. SICKLES**, a partner of the firm, received her law degree from the University of Pennsylvania School of Law. She received her undergraduate degree from Colgate University, graduating, *with honors,* from the History department. Prior to joining the firm, Ms. Sickles was an associate with Sandals & Langer, LLP, where she litigated complex class actions arising out of violations of the ERISA and antitrust statutes. She is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Ms. Sickles concentrates her practice in the area of securities litigation and specializes in settlement matters.

**ERIC L. ZAGAR**, a partner of the firm, received his law degree from the University of Michigan Law School, *cum laude*, where he was an Associate Editor of the Michigan Law Review. He has practiced law in Pennsylvania since 1995, and previously served as a law clerk

to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court. He is admitted to practice in Pennsylvania.

Mr. Zagar concentrates his practice in the area of shareholder derivative litigation. Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout the nation, including *David v. Wolfen*, Case No. 01- CC-03930 (Orange County, CA) (Broadcom Corp. Derivative Action); *In re PolyMedica Corporation Shareholder Derivative Litigation*, Case No. 01-3446 (Middlesex County, MA); *In Re Dynacq Int'l. Shareholder Derivative Litigation*, Case No. 2002- 07135 (Harris County, TX); and *Castillo v. Cavallaro, et al.*, Case No. A467663 (Clark County, NV) (Station Casinos, Inc. Class and Derivative Action). Mr. Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees.


# ASSOCIATES AND OTHER PROFESSIONALS

**JULES D. ALBERT**, an associate of the firm, received his J.D. in 2005 from the University of Pennsylvania Law School, where he was a Senior Editor of the University of Pennsylvania Journal of Labor and Employment Law and recipient of the James Wilson Fellowship. Mr. Albert also received a Certificate of Study in Business and Public Policy from The Wharton School at the University of Pennsylvania. Mr. Albert graduated Magna Cum Laude with a Bachelor of Arts in Political Science from Emory University. Mr. Albert is licensed to practice law in Pennsylvania, and concentrates his practice in the Mergers and Acquisitions and Stockholders' Derivative Actions department.

**KATIE L. ANDERSON**, an associate of the firm, received her law degree from Widener University School of Law in 2002. She received her undergraduate degree from the University of Pittsburgh in 1999. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Anderson served as a Deputy Attorney General for the Pennsylvania Office of Attorney General, Bureau of Consumer Protection, where she was responsible for enforcing a wide range of consumer oriented laws.

Ms. Anderson is licensed to practice law in Pennsylvania and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of mass tort litigation.

**MICHELLE M. BACKES,** an associate of the firm, received her law degree from Villanova University School of Law. Ms. Backes received her undergraduate degrees in Finance and Art History from Loyola College in Maryland in 2002. Ms. Backes is licensed to practice law in Pennsylvania and New Jersey. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of securities litigation.

**IAN D. BERG**, an associate of the firm, received his J.D. and B.A. from Northwestern University. Mr. Berg concentrates his practice in the area of securities litigation and he plays a significant role in investigating and evaluating potential cases, including proprietary claims and direct actions on behalf of institutional clients. Prior to joining Schiffrin, Barroway, Topaz & Kessler, Mr. Berg primarily practiced in the areas of commercial litigation and land use on behalf of corporations and real estate investment trusts. He is licensed to practice law in Pennsylvania and Illinois.

**ROBERT W. BIELA**, an associate of the firm, received his law degree from the Penn State Dickinson School of Law, where he served on the editorial board of the Environmental Law and Policy Journal. Mr. Biela received his undergraduate degree from West Chester University. Prior to joining the firm, Mr. Biela was an associate at Mager White and Goldstein, LLP, where he practiced in the areas of complex commercial litigation and securities litigation. Mr. Biela is licensed to practice in Pennsylvania, and focuses his practice in the area of securities litigation.

**KATHERINE B. BORNSTEIN**, an associate of the firm, received her law degree from Emory University School of Law. Ms. Bornstein received her undergraduate degree from the University of Maryland. She is licensed to practice law in Pennsylvania and Maryland. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Bornstein was an associate at Provost & Umphrey Law Firm, LLP, where she worked on a number of complex litigation issues. Ms. Bornstein concentrates her practice at Schiffrin Barroway Topaz & Kessler in the areas of ERISA, antitrust and consumer protection.

**TREVAN BORUM**, an associate of the firm, received a B.A. from Wake Forest University in 1987 and his J.D. from Widener University Law School in 1992. He is licensed to practice law in Pennsylvania and has been admitted to practice before the United States District Court for The Eastern District of Pennsylvania.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Borum practiced criminal defense at a firm in Philadelphia also served as an Assistant District Attorney in Philadelphia in the Homicide Unit for ten years. At Schiffrin Barroway Topaz & Kessler, Mr. Borum concentrates his practice in mergers and acquisition litigation.

**JONATHAN R. CAGAN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Cagan received his undergraduate degree, cum laude, from Temple University. Mr. Cagan is licensed to practice law in New Jersey, and is admitted to the Third Circuit Court of Appeals. Mr. Cagan concentrates his practice in the area of securities litigation and specializes in discovery matters.

**EDWARD W. CIOLKO**, an associate of the firm, received his law degree from Georgetown University Law Center, and an MBA from the Yale School of Management. Prior to joining the firm, he served as an Attorney Advisor to Commissioner Sheila F. Anthony at the Federal Trade Commission. He is licensed to practice law in the State of New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey. Mr. Ciolko concentrates his practice in the areas of antitrust, ERISA, and consumer protection.

**ALISON K. CLARK**, an associate of the firm, received her law degree, cum laude, from Boston University School of Law, and received her undergraduate degree in Political Science, with honors, from Lehigh University.  Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Clark was an attorney with a Fairfield County, Connecticut law firm, where she practiced in the areas of civil and commercial litigation, and real estate transactions.

Ms. Clark is licensed to practice law in Connecticut, and has been admitted to practice before the United States District Court for the District of Connecticut. Ms. Clark concentrates her practice in the areas of Mergers and Acquisitions and Stockholders' Derivative Actions department.

**STEPHEN E. CONNOLLY**, an associate of the firm, received his law degree from Villanova University School of Law, and is a graduate of The Pennsylvania State University. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Connolly was an associate at a Philadelphia firm where he practiced in the areas of complex litigation, securities and antitrust litigation. Mr. Connolly is licensed to practice law in Pennsylvania, and concentrates his practice in the area of securities litigation.

**MARK S. DANEK**, an associate of the firm, received his undergraduate degree in Architecture from Temple University in 1996, and his law degree from Duquesne University School of Law in 1999. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Danek was employed as in-house counsel of a real estate investment trust corporation that specialized in the collection of delinquent property tax receivables. He is licensed to practice law in the Commonwealth of Pennsylvania and has been admitted to practice before the Courts of the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Supreme Court of the United States of America. Mr. Danek concentrates his practice in the area of securities litigation.

**BRADLEY A. DIRKS**, an associate of the firm, received his J.D. from The University of Akron School of Law and a B.A. in Journalism and Political Science, *cum laude*, from the University of Wisconsin.  He is a member of the State Bar of New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Dirks worked for an Atlantic City, New Jersey-based law firm where he focused on administrative law and regulatory issues in the casino gaming industry.  Mr. Dirks concentrates his practice in the area of Mergers and Acquisitions and Stockholders' Derivative Actions department.

**JENNIFER L. ENCK,** an associate of the firm, received her law degree, *cum laude*, from Syracuse University College of Law in 2003 and her undergraduate degree in International Politics from The Pennsylvania State University in 1999.  Ms. Enck also received a Masters degree in International Relations from Syracuse University's Maxwell School of Citizenship and Public Affairs.  Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Enck was an associate with Spector, Roseman & Kodroff, P.C. in Philadelphia, where she worked on a number of complex antitrust, securities and consumer protection cases.

Ms. Enck is licensed to practice law in Pennsylvania. She concentrates her practice in the areas of securities litigation and settlement matters.

**ROBERT J. GRAY**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Gray received Bachelor of Sciences degree from La Salle University with a dual major of Accounting and Finance. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Gray was an associate at Philadelphia boutique litigation firm practicing in the areas of complex commercial litigation and corporate transactions. Mr. Gray also worked as in-house counsel for a small, publicly-traded holding company.

Prior to beginning his law career, Mr. Gray worked as a forensic accountant for six years, conducting a variety of investigations for numerous governmental agencies and law firms. He received his C.P.A. license in 1997.

Mr. Gray is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area consumer protection.

**JOHN GROSS**, an associate of the firm, received his law degree from Widener School of Law, and his undergraduate degree from Temple University. Mr. Gross is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Gross was an insurance defense litigation associate at a large, Philadelphia based firm. Mr. Gross now concentrates his practice in the areas of securities litigation, antitrust litigation and shareholder derivative actions.

**MARK K. GYANDOH**, an associate of the firm, received his undergraduate degree from Haverford College and his law degree from Temple University School of Law. During law school Mr. Gyandoh served as the research editor for the Temple International and Comparative Law Journal and published Foreign Evidence Gathering: What Obstacles Stand in the Way of Justice?, 15 Temp. Int'l & Comp. L.J. (2001). Mr. Gyandoh also served as Co-President of the International Law Society and Editor of the group's monthly newsletter. Mr. Gyandoh is licensed to practice in New Jersey and Pennsylvania. Prior to joining Schiffrin and Barroway, Mr. Gyandoh was an associate at Gerolamo, McNulty, Divis & Lewbart. Prior to that, Mr. Gyandoh served as a judicial clerk for the Honorable Dennis Braithwaite of the Superior Court of New Jersey Appellate Division. Recently, in March 2004, Mr. Gyandoh participated in a conference in Prague, Czech Republic, titled Redefining Europe, where he presented a paper titled Incorporating the Principle of Co-Equal Branches into the European Constitution: Lessons to be Learned from the United States. The paper was published in a book of selected papers from the conference titled Redefining Europe. Mr. Gyandoh concentrates his practice with Schiffrin Barroway Topaz & Kessler in the area of ERISA, antitrust and consumer protection.

**BENJAMIN J. HINERFELD** is an associate at the firm, and concentrates his work in securities litigation. In 1996, he graduated from the University of Pittsburgh School of Law, where he served as Lead Note and Comment Editor of the *Journal of Law and Commerce*. From 1996 to 1997, he clerked for the Hon. Sandra Schultz Newman of the Supreme Court of Pennsylvania. Prior to joining SBTK, Mr. Hinerfeld worked in a securities litigation firm in Wilmington,

Delaware.

From 2000 to 2003, Mr. Hinerfeld was a writing consultant with the Undergraduate Writing Center at the University of Texas at Austin.   During that time he also co-authored, with Dr. Sarah Jane Rehnborg and Catherine Fallon, "Investing in Volunteerism: The Impact of Service Initiatives in Selected Texas State Agencies" a report prepared by The RGK Center for Philanthropy and Community Service, LBJ School of Public Affairs.  He received his bachelor's degree from Vassar College and a master's degree in American History from the University of Texas at Austin.

Mr. Hinerfeld is licensed to practice law in Pennsylvania.

**MICHAEL J. HYNES**, an associate of the firm, received his law degree from Temple University School of Law, and is a graduate of Franklin and Marshall College. Mr. Hynes is licensed to practice law in Pennsylvania, New Jersey and Montana, and has been admitted to practice in the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Eastern and Middle Districts of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Hynes practiced law at Cozen O'Connor, where he concentrated on bankruptcy and commercial litigation. He was an attorney with the Defenders' Association of Philadelphia from 1991 to 1996, where he defended thousands of misdemeanor and felony cases. At Schiffrin Barroway Topaz & Kessler, Mr. Hynes concentrates his practice in the areas of securities litigation and shareholder derivative litigation.

**D. SEAMUS KASKELA, a**n associate of the firm, received his law degree from Rutgers School of Law – Camden, and received his undergraduate degree in Sociology from Saint Joseph's University. Prior to graduating from law school and joining Schiffrin Barroway Topaz & Kessler, LLP, Mr. Kaskela was a law clerk with a large Philadelphia law firm, where he worked in the complex civil litigation department. Mr. Kaskela is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania (pending) and the United States District Court for the District of New Jersey. Mr. Kaskela works in the firm's case development department.

**TARA P. KAO**, an associate of the firm, received her J.D. in 2006 from Villanova University School of Law, where she was a Managing Editor of Student Works for the Villanova Law Review.  Ms. Kao received her Bachelor of Science in Business/Finance, *cum laude*, from Carnegie Mellon University.  Ms. Kao is licensed to practice law in Pennsylvania, and concentrates her practice in the area of Mergers and Acquisitions and Stockholders' Derivative Actions department.

**JENNIFER L. KEENEY**, an associate of the firm, received her law degree, *cum laude*, from Temple University Beasley School of Law, and her undergraduate degree in History, with honors, from Washington University in St. Louis in 2003.  Ms. Keeney is licensed to practice in Pennsylvania.  She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of securities litigation.

**HAL J. KLEINMAN**, an associate of the firm, received his law degree from The John Marshall Law School, and his undergraduate degree from Ithaca College. Mr. Kleinman is licensed in Illinois and Pennsylvania, and has been admitted to practice before the United States District Court for the Northern District of Illinois, the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Seventh Circuit, the Court of Appeals for the Third Circuit, and the United States Court of Claims.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Kleinman practiced law in Chicago, where his practice concentrated in the area of Complex Litigation, Mass *Torts and Class Actions. Mr. Kleinman was a member of the law and briefing committee that successfully obtained class certification in In re Hartmarx Securities Litigation, Case No. 01 C 7832 (N.D. Ill.).* In addition, he was appointed to the Class Counsel Management Committee in *Cress, et al. v. Sara Lee Corporation, Case No. 98 L 15072 (Cir. Ct., Cook County, Ill.).* For his work in this matter, Mr. Kleinman was asked to be a guest lecturer at the University of Chicago Law School's Class Action Controversies Seminar and to discuss the Sara Lee litigation. He also was responsible for representing hundreds of clients in various Mass Torts, including MDL-1431, *In re Baycol Products Liability Litigation; MDL-1373, In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liability Litigation; MDL-1203, In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liability Litigation; and MDL-926, In re Silicone Gel Breast Implants Product Liability Litigation.* Mr. Kleinman concentrates his practice in the area of Mass Torts.

**ERIC LECHTZIN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Lechtzin received his undergraduate degree in Political Science and Economics, magna cum laude, from Temple University, where he received Phi Beta Kappa honors. Mr. Lechtzin is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Lechtzin was an associate with the firm of Grant & Eisenhofer, P.A., where his practice was concentrated in federal securities class actions and corporate governance litigation. Mr. Lechtzin spent the first ten years of his career at two large Philadelphia law firms where he represented corporate and public sector clients in a wide range of complex commercial litigation, including toxic torts, labor and employment, insurance, and environmental law. Mr. Lechtzin has extensive trial experience and has argued appeals before the Supreme Court of Pennsylvania and other appellate courts. Mr. Lechtzin concentrates his practice with Schiffrin Barroway Topaz & Kessler in the area of securities class action litigation.

**LISA MELLAS**, an associate of the firm, received her law degree from the University of Florida College of Law and her undergraduate degree from the University of Florida. Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Ms. Mellas was an associate at White and Williams, LLP, where she practiced in the Property Department. Ms. Mellas is licensed to practice in New York, New Jersey and Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Western District of Pennsylvania, and the District of New Jersey. She concentrates her practice at Schiffrin Barroway Topaz and Kessler in the area of consumer protection and ERISA.

**JAMES A. MARO, JR.,** an associate of the firm, received his law degree from the Villanova University School of Law in 2000. He received a B.A. in Political Science from the Johns Hopkins University in 1997. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Maro was an attorney at a Montgomery County law firm, where he practiced in the areas of civil and commercial litigation.

Mr. Maro is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area of Mergers and Acquisitions and Stockholders' Derivative Actions department.

**RICHARD A. MANISKAS,** an associate of the firm, received his law degree from Widener University School of Law, and received his undergraduate degree from the University of Pittsburgh. While in law school, Mr. Maniskas served as Internal Editor of the Widener Journal of Public Law. He is licensed to practice law in Pennsylvania and the District of Columbia, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Maniskas works in the firm's case development department.

**JAMES H. MILLER,** an associate of the firm, received his J.D. in 2005 from Villanova University School of Law, where he was enrolled in Villanova University's J.D./M.B.A. program. Mr. Miller received his Master of Business Administration from Villanova University in 2005, and received his Bachelor of Chemical Engineering from Villanova University in 2002. Mr. Miller is licensed to practice law in Pennsylvania and concentrates his practice in the areas of Mergers & Acquisitions and Stockholders' Derivative Actions.

**CASANDRA A. MURPHY,** an associate of the firm, received her law degree from Widener University School of Law in 1998. She received her undergraduate degree from Gettysburg College in 1995. Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Ms. Murphy was an associate at Post & Schell, P.C. where she practiced general casualty litigation. Ms. Murphy is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United State District Court for the Eastern District of Pennsylvania. Ms. Murphy has lectured for the Pennsylvania Bar Institute and the Philadelphia Judicial Conference. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust.

**CHRISTOPHER L. NELSON,** an associate of the firm, received his law degree from Duke University School of Law, and his undergraduate degree in Business, Economics, and the Law from Washington University in St. Louis. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Nelson practiced with the Philadelphia law firm of Berger & Montague, P.C., where he was a securities litigator.

Mr. Nelson is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Fourth, Fifth and Ninth Circuits, and the United States District Court for the Eastern District of Pennsylvania.

Mr. Nelson concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in numerous pending nationwide class action securities cases.

**NICHOLAS S. PULLEN,** an associate of the firm, received his law degree, cum laude, from the Georgetown University Law Center in 2000. Upon graduation, Mr. Pullen worked at two prominent Philadelphia law firms. In 2003, he joined the administration of Governor Edward G. Rendell, where he served as Chief Counsel to the Pennsylvania Commission on Crime and Delinquency. Most recently, Mr. Pullen served as campaign manager for the Jim Eisenhower for Attorney General Campaign. He is licensed to practice law in Pennsylvania, and has been admitted to practice in the United States District Court for the District of Colorado. Mr. Pullen serves in the firm's Institutional Relations department.

**KAREN E. REILLY**, an associate of the firm, received her law degree from Pace University School of Law, where she was a member of the Moot Court Board and National Moot Court Team. Ms. Reilly received her undergraduate degree from the State University of New York College at Purchase. She is licensed to practice law in Pennsylvania, New Jersey, New York, Connecticut and Rhode Island, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, District of New Jersey, Southern and Eastern Districts of New York, and the District of Connecticut. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Reilly practiced at Pelino & Lentz, P.C., in Philadelphia, where she litigated a broad range of complex commercial cases. Ms. Reilly concentrates her practice in the area of securities litigation.

**STEVEN D. RESNICK**, an associate of the firm, received his law degree from The Dickinson School of Law of The Pennsylvania State University, and his undergraduate degree, *cum laude*, from West Chester University. Mr. Resnick is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, the United States District Court for the District of New Jersey and the United States District Court for the District of Nebraska. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Resnick was an associate at the firm of German, Gallagher & Murtagh, where his practice concentrated in the defense of medical malpractice, products liability and premises liability. Mr. Resnick now concentrates his practice in the area of mass tort litigation.

**EMANUEL SHACHMUROVE**, an associate of the firm, received his law degree from The University of Michigan Law School, where he was an Associate Editor of the Michigan Journal of Law Reform. Mr. Shachmurove received his Bachelor of Science in Economics, *cum laude*, from The Wharton School at the University of Pennsylvania, where he was a Joseph Wharton Scholar.

**BHARATI O. SHARMA**, an associate of the firm, received her law degree from the American University Washington College of Law, a Master of Public Administration from The George Washington University, and her undergraduate degree from the University of Pittsburgh. Ms. Sharma is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey.

Ms. Sharma is a former judicial law clerk to the Honorable Stephen Skillman, Superior Court of New Jersey, Appellate Division, and a former member of American University's International Law Review. She is the founder and current President of the South Asian Bar Association of Philadelphia. Ms. Sharma also serves on the Executive Committees of the North American South Asian Bar Association and the Philadelphia Bar Association Young Lawyer's Division.

Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Sharma practiced complex civil litigation at a Philadelphia law firm. She now concentrates her practice in the areas of pharmaceutical and product liability litigation.

**BENJAMIN J. SWEET**, an associate of the firm, received his juris doctor from The Dickinson School of Law, and his BA, *cum laude*, from the University Scholars Program of The Pennsylvania State University. While in law school, Mr. Sweet served as Articles Editor of the *Dickinson Law Review*, and was also awarded Best Oral Advocate in the ATLA Junior Mock Trial Competition.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Sweet practiced in the Pittsburgh office of Reed Smith LLP, where he specialized in complex civil litigation. While at Reed Smith, Mr. Sweet co-authored *Assignability of Non-Compete Covenants*, 74 Pa. Bar. Q. 64 (April 2003). Mr. Sweet is licensed to practice law in the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the United States Court of Appeals for the Ninth Circuit. Mr. Sweet concentrates his practice in the area of securities litigation and has helped obtain several multi-million dollar settlements on behalf of class members in several nationwide federal securities class actions, including *In re CVS Pharmacy, Inc. Secs. Litig.*, No. 01-11464 (D.Mass. 2005) ($110 million recovery for Class members), *In re Zomax Inc. Secs. Litig.*, No. 04-cv-1155 (D.Minn. 2005) (multi-million dollar cash and stock recovery for Class members), *In re Flextronics Int'l Ltd. Secs. Litig.*, No. 03-cv-2102 (N.D. Cal. 2004) ($4.25 million recovery for Class members) and *In re Black Box Corp. Secs. Litig.*, No. 03-cv-412 (W.D. Pa. 2004) (multi-million dollar recovery for Class Members). Mr. Sweet is currently Lead or Co-Lead Counsel in several pending nationwide class action securities cases, including *In re Tyco Int'l Ltd. Secs. Litig.*, MDL Docket No. 02-1335-B (D.N.H.) and *In re PNC Financial Services Group, Inc. Secs. Litig.*, No. 02cv271 (W.D. Pa.).

**NICOLETTE TROPIANO**, an associate of the firm, received her law degree from Temple University School of Law.  Ms. Tropiano received her undergraduate degree in Economics and Business Administration with a concentration in Accounting and Finance from Ursinus College in 2001.  Ms. Tropiano is licensed to practice in Pennsylvania.  She concentrates her practice in the area of securities litigation, and serves in the firm's lead plaintiff department which involves working with clients, litigation strategy and lead plaintiff issues.

**MICHAEL C. WAGNER**, is an associate of the firm. He received his undergraduate degree in Government from Franklin & Marshall College, and his law degree from the University of Pittsburgh School of Law in 1996. Mr. Wagner is licensed to practice law in Pennsylvania, and he has been admitted to practice in the United States Court of Appeals for the Third Circuit, and United States District Courts in for the Eastern and Western Districts of Pennsylvania, for the Eastern District of Michigan, and for the District of Colorado.

Before joining Schiffrin Barroway Topaz & Kessler, Mr. Wagner worked at Rubin, Fortunato & Harbison, a boutique law firm in Paoli, PA, representing Fortune 100 corporations, as well as individuals and small businesses, in employment matters across the country. Mr. Wagner earlier worked for several years at Spector, Gadon & Rosen, in Philadelphia, concentrating his practice in complex commercial and corporate litigation. At Schiffrin Barroway Topaz & Kessler, Mr. Wagner focuses his practice in the areas of securities litigation and shareholders' derivative litigation.

**JOSEPH A. WEEDEN**, an associate of the firm, received his law degree from the University of North Carolina School of Law, where he received the Gressman-Politt Award for outstanding oral advocacy. Mr. Weeden also received his undergraduate degree from the University of North Carolina at Chapel Hill, where he was a Joseph E. Pogue Scholar. Prior to joining the firm, Mr. Weeden was an associate at Kaufman & Canoles, P.C., where he practiced in the areas of commercial and business law. Mr. Weeden is licensed to practice law in Virginia, and concentrates his practice in the area of complex ERISA litigation.

**GERALD D. WELLS, III**, an associate of the firm, received his law degree from Temple University School of Law, where he served on the editorial board of the Environment Law & Technology Journal. He is licensed to practice in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District Court of New Jersey, and the United States District Court for the Eastern District of Michigan.

Mr. Wells concentrates his practice in the areas of antitrust, ERISA, and consumer protection and has helped obtain several multi-million dollar settlements on behalf of class members, including the recent settlements in *In re Bristol-Myers Squibb ERISA Litigation*, No. 02-CV-10129 (LAP) ($41.22 million in cash plus structural remedies valued at up to $52 million) and *Falk v. Amerada Hess Corp., et al.,* No. 03-CV-2491-FSH-PS ($2.25 million in cash plus structural remedies valued at up to $23.8 million). Mr. Wells currently serves as counsel in several pending nationwide class action ERISA cases, including *Wilson v. Federal Home Loan Mortgage Corp.,* MDL 1584 (JES) (S.D.N.Y.), *Smith v. Delta Air Lines, Inc.*, No. 04-CV-2592-ODE (N.D. Ga.), and *In re Westar Energy Inc. ERISA Litig.,* No. 03-4032-JAR (D. Kan.).

**ROBIN WINCHESTER**, an associate of the firm, received her law degree from Villanova University School of Law, and received her undergraduate degree in Finance from St. Joseph's University. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania.

Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Penn-sylvania. She concentrates her practice in the area of Mergers and Acquisitions and Stockholders' Derivative Actions department.

**TERENCE S. ZIEGLER**, an associate of the firm, received his law degree from the Tulane University School of Law. Mr. Ziegler received a Bachelor of Business Administration degree with a concentration in Finance from Loyola University. Mr. Ziegler is licensed to practice law in the State of Louisiana, and has been admitted to practice before the United States Court of Appeals for the Fifth Circuit, the United States District Court for the Eastern District of Louisiana and the United States District Court for the Middle District of Louisiana. Mr. Ziegler concentrates his practice in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust.

**KEVIN P. CAULEY** serves in the firm's business development and institutional relations department. Mr. Cauley is a graduate of Temple University. Prior to joining the firm, Mr. Cauley was Director of Business Development for a multi-family office in New York City. Mr. Cauley also has prior experience in institutional fiduciary investment consulting, money manager selection, best trade executions, and asset allocation modeling. He has held the Series 7, 24, 63, and 65 licenses with the NASD. Mr. Cauley has also done political consulting in coordinating and directing various aspects of field operations for local, state, and national campaigns in Southeastern Pennsylvania. He is also an active member of The Pennsylvania Future Fund, A.O.H. Division 88 "Officer Danny Boyle Chapter," The Saint Andrews Society, The Friendly Sons of Saint Patrick, The Clover Club of Philadelphia, The Foreign Policy Research Institute, a Board Member of The Princeton Committee on Foreign Relations, and is an elected member to The Pennsylvania Society and The Union League of Philadelphia, where he serves on the Armed Services Committee.

## OF COUNSEL

**CHRISTIE A. CANNON**, of counsel to the firm, received her law degree from Emory University School of Law and her undergraduate degree from Auburn University, *magna cum laude*. In law school Ms. Cannon was named to the Order of the Barristers, was one of twelve people from her class chosen to be on the Moot Court Special Teams, and served as the Director of Special Teams on the Moot Court Board of Directors. Ms. Cannon also served as one of three team members for the Georgia Intrastate Moot Court competition and as an alternate member for the National Moot Court Team.

Ms. Cannon has spent her legal career representing both plaintiffs and defendants in complex litigation around the United States and overseas, with a prominent emphasis on securities litigation under federal and state securities laws. Ms. Cannon is licensed to practice law in Georgia and has been admitted to practice before the Eleventh Circuit Court of Appeals, the United States District Court for the Northern District of Georgia, and all Georgia trial and appellate courts. In 2005, Ms. Cannon was voted by her peers and named by *Atlanta Magazine* and *Law and Politics Magazine* to be a *Georgia Super Lawyer*, placing her in the top 5% of attorneys and among the top 15 securities litigation attorneys in Georgia.

Ms. Cannon is working extensively with partner David Kessler on *In re Initial Public Offering Securities Litigation*, Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002), currently pending in the Southern District of New York.

**ROBERT M. BRAMSON** has more than twenty-five years of experience in the litigation of antitrust and consumer cases, class actions and other complex litigation. Mr. Bramson received his undergraduate degree in economics, summa cum laude, from the University of California at Berkeley in 1977, and obtained his law degree from the Boalt Hall School of Law in 1981. Mr. Bramson is a member of the California Bar.

Mr. Bramson has represented both plaintiffs and defendants in numerous antitrust cases, and has acted as lead counsel in two such actions taken to trial - Pacific West Cable Co. v. City of Sacramento, et al. (E.D. Cal.) ($12 Million settlement on 24th day of trial, at close of plaintiff's case; Sherman Act §2 monopolization claims) and Coleman et al. v. Sacramento Cable Television (Sacramento Sup. Ct.) ($2.4 Million judgment after 17-day trial; class action/B & P §17200 case; B & P §17204 discriminatory pricing claims).

Mr. Bramson specializes in antitrust, business torts and communications litigation, as well as in class action cases. He served for many years on the Board of Directors of the National Association of Consumer Advocates and co-chaired its class action committee. He is a contributing author to the National Consumer Law Center's publication Consumer Class Actions. He acted as reporter for the National Association of Consumer Advocates in preparing its influential Standards and Guidelines For Consumer Class Actions, 176 F.R.D. 375 (1997).

Mr. Bramson's lecture topics have included "Strategic and Ethical Issues in Litigating 17200 Cases" (Bar Association of San Francisco, San Francisco 2001), "Equitable Remedies In Class Actions and Under California's Section 17200 Statute" (National Association of Consumer Advocates, Chicago 2000), "Ethical Issues Arising in Class Action Settlements" (National Consumer Law Center, Wash. DC and San Diego 1999 and 1998) "California's Business & Professions Code Section 17200" (California Bar Association, Lake Tahoe 1997), "Preparation of Competitive Business Practices Cases" (Continuing Education of the Bar, Sacramento 1997), and "The Cable Communications Policy Act of 1984" (California State University, Fullerton 1993).

In addition to serving as Of Counsel to Schiffrin Barroway Topaz & Kessler, Mr. Bramson is a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.

**ALAN R. PLUTZIK** specializes in complex business litigation in state and federal courts throughout the United States. Areas of particular emphasis include class actions, securities fraud and corporate governance litigation, consumer law, antitrust, constitutional and communications law. Mr. Plutzik is admitted to practice in California and the District of Columbia (inactive member), and is a member of the bars of the United States Supreme Court, the Second, Eighth, Ninth, Tenth and District of Columbia Circuits and numerous federal district courts throughout the United States.

Mr. Plutzik received his law degree from the University of California at Berkeley's Boalt Hall School of Law in 1977. He received his undergraduate degree from St. John's College, Annapolis, Maryland, in 1971, and also holds an M. A. from Stanford University. Over the

course of his twenty-nine year career, Mr. Plutzik has also handled a wide variety of class actions and derivative cases. He has represented, among other clients, corporate shareholders and limited partners challenging conduct by their general partners, officers or directors; consumers and businesses harmed by price-fixing and other anticompetitive conduct; consumers in actions against insurance companies, banks and other lenders; investors in securities fraud cases and derivative suits; employees in ERISA and wage/hour cases; purchasers of mislabeled and defective products; victims of toxic pollution; persons harmed by defective products; and cellular telephone and cable television subscribers.

Mr. Plutzik has also handled a substantial number of cases that raise First Amendment and other constitutional issues, and has represented broadcasters, cable television companies, communications common carriers and consumers in litigation and in administrative proceedings before the Federal Communications Commission and the California Public Utilities Commission.

Mr. Plutzik has written or lectured on topics that include class actions, California consumer law, substantive and procedural issues under the federal securities laws, First Amendment issues applicable to new media, cable television franchising and cable television companies' access to utility poles and real estate developments. He has appeared as a guest radio commentator on the Len Tillem Show on KGO-Radio in San Francisco, discussing class actions, consumer protection law and investor rights.

Mr. Plutzik has served as a judge pro tem on the Contra Costa County Superior Court. He is also President of the Warren W. Eukel Teacher Trust, a community-based charity that honors outstanding teachers in Contra Costa County, California.

In addition to serving as Of Counsel to Schiffrin Barroway Topaz & Kessler, Mr. Plutzik is a partner in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.

**L. TIMOTHY FISHER** specializes in consumer and securities class actions and complex business litigation. He has been actively involved in several cases in which multi-million dollar recoveries were achieved for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and fraud. Mr. Fisher is a member of the California Bar.

Mr. Fisher received his Juris Doctorate from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is

also a member of Phi Beta Kappa.

In addition to serving as Of Counsel to Schiffrin Barroway Topaz & Kessler, Mr. Fisher is an associate in the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, of Walnut Creek, California.

**EXHIBIT E**



**www.millerlawllc.com**

Miller Law LLC is a litigation boutique law firm which unites the talents of attorneys with more than fifty combined years of experience in a wide range of complex civil litigation.  The foundation of the firm is the ability to handle large sophisticated class actions in a variety of practice areas in federal and state courts across the country.

Our litigation experience covers a varied and broad range of industries including pharmaceuticals, airlines, telecommunications, commodities and securities.

Miller Law LLC's fees are contingent on our success in achieving a favorable result for our clients and are reviewed and awarded by the court.  Because we advance the costs of the litigation and our fees are earned on a predominately contingent basis, we continuously monitor and carefully evaluate each case throughout the litigation and understand the need to be efficient. This gives us the confidence and flexibility to employ creative thought in the decision-making process at every stage of the litigation.  The skill and experience of Miller Law's attorneys has been recognized repeatedly by their peers, at whose request we have served as court-appointed *liaison* and co-lead counsel, and by courts, which have appointed us to leadership positions in complex multi-district or consolidated litigation in securities, commodities, consumer and antitrust class actions where we have been responsible for many outstanding recoveries and precedent-making decisions.

## *Representative Pending Matters:*

### *Antitrust:*

**Reed v. Advocate Health Care, et al.,** *06 C 3337 (N.D. Ill.)*  This class action involves the alleged conspiracy among five Chicago area hospitals to suppress and price-fix the salaries and benefits for Registered Nurses salaries.  Mr. Miller has been appointed by the court to serve as Plaintiffs' *liaison* counsel.

### *Commodities:*

**Kohen, et  al. v. Pacific Investment Management Company, et al.**, No. 05 C 4681 (N.D. Ill.). This class action seeks recovery for the alleged violation of the Commodity Exchange Act when the Defendants improperly manipulated the Ten-Year Treasury bonds.   Mr. Miller, at the request of Lead Counsel, serves as liaison counsel for the Plaintiffs.

### *Consumer Protection*

#### *Predatory lending*

**In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litigation**, MDL 1715, (N.D. Ill.).  This large multidistrict national class action against this "subprime" lender, challenges Ameriquest's alleged predatory lending practices, "bait and switch", faulty appraisals, improper late fees and hidden

costs, among other practices, and seeks damages and remedial relief on behalf of borrowers. At Plaintiffs' Co-lead counsel's request, Mr. Miller serves as *liaison* counsel.

***Miller, et.al. v. Countrywide Bank, et.al.,* 07-11275 (D. Mass.)** – plaintiffs seek remedies for the alleged discriminatory effects of home financing policies.

***Jones v. Long Beach Mortgage Co., Washington Mutual Bank, F.A. and Mortgage Results Corp.,*** (D.Mass) – seeking remedies for allegations of discriminatory effects of home financing policies.

### Consumer Fraud

***Painters District Local Council No. 30 Health & Welfare Fund v. Amgen, Inc.,*** 07 C 3880 (C.D. CA.) alleges unlawful off-label and otherwise deceptive marketing of recombinant protein biological drug products used to stimulate red blood cell growth and activation brought on behalf of a union "employee welfare benefit plan".

## Intellectual Property:

***Acco Brands USA v. PC Guardian Anti-Theft Products, Inc., et al.,*** No. 06 C 7102 (N.D. Ill.). The firm represents one of the named defendants in this alleged patent infringement case.

## Securities:

***Central Laborers' Pension Fund v. Sirva, Inc., et al.,*** 04 C 7644 (N.D. Ill.). This national securities class action seeks recovery from the defendant for violations of the securities laws because of the alleged failure to disclose to the investing public the true financial condition of the company. The complaint has survived a motion to dismiss filed by defendants and is beginning the discovery process. At the request of Lead counsel appointed by the court, Mr. Miller serves as Plaintiffs' *liaison* counsel.

***Lawrence E. Jaffe Pension Plan v. Household International,*** 02-5893 (N.D.Ill). The firm serves as liaison counsel in this securities fraud litigation alleging that Household engaged in a variety of illegal sales practices and improper lending techniques to manipulate publicly reported financial statistics.

***Makor Issues & Rights & Ltd. v. Tellabs, et.al.,*** 02-4356 (N.D. Ill.) *This securities fraud action alleges that Tellabs, a global supplier of optical networking, broadband access and voice-quality enhancement solutions to telecommunications carriers and internet service providers engaged in wrongdoing concerning certain of its core products. Miller Law LLC serves as Liaison Counsel.*

## Shareholder and Derivative actions:

***Murphy v. CDW Corp. Et. Al.,*** 07-3033 (N.D. Ill.) The firm represents a purported class of the public shareholders of CDW Corporation who sued the company and its directors for breach of fiduciary duties in connection their acceptance of the $7.3 billion buyout. The class action complaint alleges, among other matters, that the

price does not reflect the true value of the company to its shareholders.

***Levy Investments v. Nuveen,*** 07-CH-16832 (Cir. Ct. Cook Cty, Ill.), class action complaint for breach of fiduciary duty in connection with a proposed "going private" transaction.

***Bronstein v. Daley and Abbott Labs,*** 07-3984 (N.D.Ill.) derivative action alleging a breach of fiduciary duty in the proposed sale of a core diagnostics business to GE.

## *Antitrust:*

*Some of the significant antitrust cases in which Miller Law attorneys have been prominently involved include:*

***House v. GlaxoSmithKline PLC***, No. 2:02cv442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. On January 10, 2005, the court entered and order approving a $29 million settlement for the benefit of consumers and third-party payors. *See* http://www.augmentinlitigation.com.

***In re Relafen Antitrust Litig.*** 01-12239 (D. Mass.). On September 28, 2005, Judge William G. Young of the United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for brand and generic versions of the arthritis medication Relafen. In certifying an earlier class of end-payors, the court singled out our Firm [then Miller Faucher and Cafferty LLP] as experienced and vigorous advocates. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004). In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.*, experienced, competent, and vigorous] in every way." *See In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel."). The litigation has produced many significant decisions including: 286 F Supp. 2d 56 (D. Mass. 2003) (denying motion to dismiss); 346 F. Supp. 2d 349 (D. Mass. 2004) (denying defendant's motion for summary judgment). *See* www.relafensettlement.com.

***Nichols v. SmithKline Beecham Corp.***, No. 00-CV-442 (E.D. Pa.). Plaintiffs allege that SmithKline, which makes the brand-name anti-depressant Paxil, misled the United States Patent Office into issuing patents to protect Paxil from competition from generic substitutes. On April 22, 2005, Judge John R. Padova granted final approval to a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil. *Nichols v. SmithKline Beecham Corp.*, 2005-1 Trade Cas. (CCH) ¶74,762 (E.D. Pa. April 22, 2005). *See also Nichols v. SmithKline Beecham Corp.*, 2003 WL 302352 2003-1 Trade Cas. (CCH) ¶ 73,974 (E.D. Pa. Jan. 29, 2003) (denying defendant's motion to strike expert testimony). *See* www.paxilclaims.com.

***In re Warfarin Sodium Antitrust Litig.***, MDL 98-1232 (D. Del.). Multi-district class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. On August 30, 2002, the Court granted final approval to a $44.5 million settlement. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002). On December 8, 2004, the United States Court of Appeals for the Third Circuit upheld approval of the settlement. 391 F.3d 516 (3d Cir. 2004). *See* www.coumadinsettlement.com.

*In re Cardizem CD Antitrust Litig.,* MDL No. 1278 (E.D. Mich.).  Multi-district class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.)  Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition.  On October 1, 2003, Judge Nancy Edmunds granted final approval to an $80 million settlement for the benefit of third-party payors and consumers.  *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508 (E.D. Mich. 2003), *app. dismissed,* 391 F.3d 812 (6th Cir. 2004).  The litigation resulted in several significant decisions, including: 105 F. Supp. 618 (E.D. Mich. 2000) (denying motions to dismiss);  105 F. Supp. 2d 682 (E.D. Mich. 2000) (granting plaintiffs' motions for partial summary judgment and holding agreement *per se* illegal under federal and state antitrust law); 200 F.R.D. 326 (E.D. Mich. 2001) (certifying exemplar end-payor class); 332 F.3d 896 (6th Cir. 2003) (upholding denial of motion to dismiss and grant of partial summary judgment), *cert. denied,* 125 S.Ct. 307 (2004).  *See* www.cardizemsettlement.com.

*In re Synthroid Marketing Litig.,* MDL No. 1182 (N.D. Ill).  This multidistrict action arises out of alleged  unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders.  On August 4, 2000, the court granted final approval of a settlement in the amount of $87.4 million plus interest.  *See* 188 F.R.D. 295 (N.D. Ill. 1999).  On August 31, 2001, approval of the settlement was upheld on appeal.  *See* 264 F.3d 712 (7th Cir. 2001).

*In re Lorazepam & Clorazepate Antitrust Litig.,* MDL 1290 (D.D.C.).  This multidistict class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets.  After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs.  On February 1, 2002, Judge Thomas F. Hogan approved a class action settlements on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million.  *See* 205 F.R.D. 369 (D.D.C. 2002).

*In re Lithotripsy Antitrust Litig.,* No. 98 C 8394 (N.D. Ill.).  Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area.  The parties have entered a settlement agreement and are in the process of seeking court approval.   In granting class certification, Judge George Lindberg stated that "Miller Law is experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation."  *Sebo v. Rubenstien,* 188 F.R.D. 310, 317 (N.D. Ill. 1999).  On June 12, 2000, the court approved a $1.4 million settlement.  *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086 (N.D. Ill. June 12, 2000)

**Brand-Name Prescription Drug Indirect Purchaser Actions**.  Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia.  The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies.  In 1998, the parties agreed to a multi-state settlement in the amount of $64.3 million, which was allocated among the actions. In approving state-specific settlements, the courts were highly complementary of the performance of counsel.  In approving the Wisconsin Settlement, for example, Judge Moria G. Krueger commented that "this Court, in particular, has been helped along every step of the way by some outstanding lawyering and I believe that applies to both sides. ... You can hardly say that there's been anything but five star attorneys involved in this case".  *Scholfield v. Abbott Laboratories*, No. 96 CV 0460, Transcript of Hearing at 31 & 33 (Cir. Ct., Dane Co., Wisc., Oct. 5, 1998).  *See also McLaughlin v. Abbott*

*Laboratories*, No. CV 95-0628, Transcript of Proceedings at 28 (Super. Ct., Yavapai County, Oct. 28, 1998) ("I think the quality of counsel is excellent."). Reported decisions include: *Goda v Abbott Labs,* 1997-1 Trade Cas. (CCH) ¶71,730 (Superior Court D.C., Feb 3, 1997) (granting class certification); *In re Brand Name Prescription Drugs Antitrust Litig. (Holdren, Yasbin, Meyers),* 1998-1 Trade Cas. (CCH) ¶72,140 (N.D. Ill., Feb. 26, 1998) (remanding three actions to state courts).

**In Re Cellular Phone Cases**, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.) Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. On February 20, 1998, the court granted final approval to a settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.

**Garabedian v. LASMSA Limited Partnership**, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. By order of January 27, 1998, the court granted final approval to two settlements that provide $165 million in in-kind benefits.

**Lobatz v. AirTouch Cellular**, 94-1311 BTM (AJB) (S.D. Cal.) Class action alleging price-fixing of cellular telephone service in San Diego County, California. On June 11, 1997, the court approved a partial settlement in the amount of $4 million. On October 28, 1998, the Court approved another settlement that entailed $4 million worth of in-kind benefits. In an order entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex and four-year long litigation, Class Counsel [including Miller Law] demonstrated in their legal briefs and arguments before this Court their considerable skill and experience in litigating anti-trust class actions..."

**In re Airline Ticket Commission Antitrust Litig.**, MDL No. 1058 (D. Minn.) Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

*Investor protection has been a significant part of Miller Law attorneys' vast experience. Some of the significant securities and commodities cases in which Miller Law attorneys have been prominently involved include:*

## Commodities

**Dennison v. BP Corporation**, No. 06 C 3334 (N.D. Ill.). This class action was commenced to recover damages as a result of defendant's alleged improper conduct in manipulating the price of propane. Mr. Miller serves as Co-Lead Counsel in this consolidated Plaintiffs' class action.

**Smith v. Groover**, 77 C 2297 (N.D.Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. Mr. Miller was one of Plaintiff's counsel in this precedent making decision.

The case was affirmed, *sub nom*, by the United States Supreme Court in *Merrill Lynch Pierce Fenner & Smith v. Curran*, 451 U. S. 906 (1982).

*In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill.).  A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989.  In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995).  Mr. Miller served as Co-Lead Counsel for Plaintiffs.

*In re Sumitomo Copper Litig.*, 96 Civ. 4584(MP) (S.D.N.Y.).  Class action arising out of manipulation of the world copper market.  On October 7, 1999, the court approved settlements aggregating $134,600,000.  *See* 189 F.R.D. 274 (S.D.N.Y. 1999).  In awarding attorneys' fees, Judge Milton Pollack noted that it was  "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999).  Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).  Mr. Miller was appointed by Judge Pollack as Plaintiffs' Co-Lead Counsel.

*In re International Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.)  Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act.  The case settled with individual defendants and proceeded to a judgment against the corporate entity.  In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class.

*In re First Commodity Corporation of Boston Customer Account Litig.*, MDL-713 (D. Mass).  Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act.  The action settled for $5.3 million.  *See* 119 F.R.D. 301 (D. Mass. 1987).

## Securities

*In re Sears, Roebuck and Co Securities Litigation, No. 02 C 07527 (N.D.Ill.).* Settled a class action lawsuit for $215 million in a case brought by shareholders. The case alleged breach of fiduciary duty for failing to prevent improper bankruptcy collection practices under the company's debt reaffirmation agreements. Mr. Miller served as plaintiff's liaison counsel in this nationwide securities case.

*Abrams v. van Kampen Funds*, Case No. 01 C 7538 involving a mutual fund that is charged with improperly valuating its net asset value

*In re Baldwin-United Corporation Sec. Litig.*, MDL-581, (S.D.N.Y.). In this early multi-district securities class action, Plaintiffs' counsel advanced the novel issue of whether Single Premium Deferred Annuities sold by the stock brokerage industry were securities and the sale of approximately $4.2 billion of were in violation of the federal and state securities laws.  A $180 million settlement was obtained was the largest securities class action settlements at the time and remains one of the larger securities class action settlements on record.  In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

*In re Prudential Securities Incorporated Limited Partnerships Litig.*, MDL 1005 (S.D.N.Y.).  A nationwide multi-district class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests.  On November 20, 1995, the court approved a partial settlement, which established a $110 million settlement fund.  *See* 912 F. Supp. 97 (S.D.N.Y. 1996).  The final settlements produced an aggregate of more than $132 million for injured investors.

*In re Bank One Shareholders Class Actions*, No. 00 C 880 (N.D. Ill.). In this securities fraud class action against Bank One and certain officers. On June 1, 2001, Judge Milton I. Shadur appointed Mr. Miller to draft the Consolidated Class Action Complaint. At the request of court-appointed lead counsel, Mr. Miller served as Plaintiffs' *liaison* counsel. Judge Shadur approved a $45 million settlement. When he testified before the Task Force on Selection of Class Counsel, Judge Shadur characterized the predecessor to Miller Law but whose Managing Partner was Marvin Miller now the principal of Miller Law, as a "high quality Chicago law firm."

*Danis v. USN Communications, Inc.,* No. 98 C 7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc. On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000). At the request of Co-Lead Counsel, Mr. Miller served as *liaison* counsel for Plaintiffs.

*In re Caremark International Inc. Sec. Litig.*, No. 94 C 4751 (N.D. Ill.). Securities fraud class action arising out of Caremark's allegedly improper financial arrangements with physicians. On December 15, 1997, the court approved a $25 million settlement.

*In re Nuveen Fund Litig.*, No. 94 C 360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds. Mr. Miller served as Plaintiffs' liaison counsel and at the fairness hearing to approve a $24 million settlement, Magistrate Judge Edward A. Bobrick commented that "there's no question that the attorneys for the plaintiffs and the attorneys for the defendants represent the best this city [Chicago] has to offer ... this case had the best lawyers I've seen in a long time, and it is without question that I am committed to a view that their integrity is beyond reproach." (6/3/97 Tr. at 5-6.)

*In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.). Securities fraud class action arising out of the Archer-Daniels-Midland price-fixing scandal. On April 4, 1997, the court approved a $30 million settlement.

*In re VMS Sec. Litig.*, 89 C 9448 (N.D. Ill.). Securities fraud class action and derivative suit relative to publicly traded real estate investments. The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991) and approved a class and derivative settlement worth $98 million.

*In re Salton/Maxim Sec. Litig.*, No. 91 C 7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman (now Chief Judge of the United States District Court for the Northern District of Illinois) approved a multi-million dollar settlement achieved for the class, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

*In re Telesphere Sec. Litig.*, 89 C 1875 (N.D. Ill.) In his opinion approving a class action settlement, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years [now 37 years] practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." 753 F.Supp. 716, 719 (N.D. Ill. 1990).

*Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.).  A multi-million dollar settlement was approved on in this securities fraud class action arising out of a broker's marketing of a speculative Australian security.  The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement."  855 F. Supp. 825, 831 (E.D.N.C. 1994).

*Hoxworth v. Blinder Robinson & Co.*, 88-0285 (E.D. Pa.).  Securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks."  *See* 903 F.2d 186 (3rd Cir. 1990).  Judgment in excess of $70 million was obtained in February, 1992.  The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992).  *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

## Intellectual Property

*Baxter International, et al., v. McGaw, Inc. __ C ___ (N.D. Ill.).*  Mr. Miller successfully represented the Defendant in this patent infringement case and served as a member of the trial team which won a jury verdict of non-infringement of three needless injection sites and also obtained a finding that the Plaintiff had engaged in inequitable conduct on two of the patents.  The decision was affirmed by the Court of Appeals Federal Circuit.  ( 96-1329,-1342, 97-1331,-1350 decided June 30, 1998).

## Other Representative Cases

*In re Sears, Roebuck and Co., ERISA Litigation,* 02 C 8324 (N.D. Ill.**).**  Mr. Miller served as plaintiff's liaison counsel in this nationwide action.  Sears settled this ERISA action for $14.5 million in cash.   The case alleged breaches of fiduciary duties in contravention of the Employee Retirement Income Security Act of 1974. The plan participants will directly benefit from the resulting settlement.

*PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission*, No. 98 CH 5500 (Circuit Court of Cook County, Ill.).  This class action sought recovery of an unconstitutional infrastructure maintenance fee imposed by municipalities on wireless telephone and pager customers in the State of Illinois.  On August 1, 2002, the court granted final approval to a settlement of more than $31 million paid by the City of Chicago.  Subsequently, the court certified a settlement class of all wireless users  in the State of Illinois and a Defendant Class of municipalities throughout the state which collected Infrastructure Maintenance Fees from wireless users and approved a settlement for the Class of  in excess of $11 million.  Mr. Miller served as a  Co-lead counsel for Plaintiffs in this novel class action.

*In re Chubb Corporation Drought Insurance Litig.*, MDL-782 (S.D. Ohio).  A breach of contract action arising out of the termination of an agricultural drought insurance program in the midst of the drought of 1988.  The action settled for more than $70 million.

### Defendant Representations

In addition to our representation of plaintiffs, Miller Law attorneys have also represented defendants in complex class actions and derivative suits, including  *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware).  The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp.

547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

## Individual Biographies

### MEMBER

**MARVIN A. MILLER**, principal and founder of the firm, has more than 30 years of commercial and class action litigation experience. Mr. Miller has been lead or co-lead counsel across the full spectrum of industries (airline, cell and telephone, financial services, Internet and technology, manufacturing, pharmaceuticals, retailing, stock broker and exchange, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance, shareholder derivative actions) that encompasses Miller Law LLC's practice. Mr. Miller holds an AV® (highest) rating from Martindale-Hubbell®.

Prior to founding Miller Law LLC in 2007, Mr. Miller was a co-founder of another national class action law firm. Throughout his career in class action jurisprudence, Mr. Miller has represented shareholders and investors in high profile and precedent-setting class action litigation involving such companies as Continental Illinois National Bank and Trust and Baldwin United Corporation. He was lead attorney in *Smith v. Groover*, in which he represented clients against the Chicago Board of Trade and several of its traders; the decision in the case, later affirmed, *sub. nom.*, in *Curran v. Merrill Lynch Pierce Fenner & Smith*, by the U.S. Supreme Court, established the precedent that an individual has an implied private right of action to sue an Exchange for negligence in failing to supervise its members.

Mr. Miller is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review*. He received his undergraduate degree from Hofstra University in Hempstead, New York in 1967. He is admitted to the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth, Seventh, and Eleventh Circuits, the United States District Courts for the Northern District of Illinois (including the Trial Bar), Southern District of New York, Eastern District of Michigan and Northern District of California. Mr. Miller is a member of the Chicago Bar Association and the Illinois State Bar Association and serves on the *Cy Pres* Committee of the Illinois Bar Foundation.

### ASSOCIATE

**LORI A. FANNING** concentrates her practice in the field of complex and class litigation in a wide range of matters before state and federal courts, primarily in the areas of consumer protection, antitrust and securities fraud. She has also represented individual investors who have been harmed by the professional misconduct of stockbrokers and investment advisers in securities arbitrations before the National Association of Securities Dealers. She has prosecuted a variety of lawsuits involving the airline, banking, credit card, internet, pharmaceutical, telephone and insurance industries. Ms. Fanning currently litigates securities fraud claims against such companies as Household International and Tellabs; antitrust claims against companies such as Unocal and Amgen; and defends against patent litigation on behalf of Datamation Systems, Inc. Ms. Fanning actively participated in the trial preparations for *In re VisaCheck/MasterMoney Antitrust Litigation,* a civil antitrust case that settled for in excess of $3 billion on the eve of trial. Before joining Miller Law LLC, Ms. Fanning was associated with another boutique class action law firm for six years. Prior to attending law school, she enjoyed a successful career as a logistician with the United States

government at the Naval Sea Systems Command in the Washington, D.C. area in support of Foreign Military Sales, new ship construction and naval equipment.  For her dedication, the Department of the Navy honored her with the Meritorious Civilian Service medal.

Ms. Fanning received her law degree, with honors and a Certificate in Litigation and Alternative Dispute Resolution, from Illinois Institute of Technology-Chicago-Kent College of Law in 2000.  She also holds a Master's degree in Science Administration from Central Michigan University (1993), and a Bachelor's degree from the University of Nebraska at Omaha (1986). She is admitted to practice in the state of Illinois and the federal district courts for the Northern District of Illinois, the Eastern District of Wisconsin, and the United States Court of Appeals for the Seventh Circuit. Ms. Fanning is also a member of the American, Illinois State and Chicago Bar Associations and volunteers for the CBA's Judicial Evaluation Committee.

### *OF COUNSEL*

**MATTHEW E. VAN TINE** focuses his practice on antitrust, securities fraud, and consumer protection matters. He has participated in the prosecution and defense of many securities, antitrust, and consumer class actions over the past two decades including securities litigation against Van Kampen Funds and Baxter International; antitrust class actions involving nurses' wages, the drug warfarin sodium (Coumadin), and an industry-wide effort to raise drug prices paid by retail drug stores (the Brand Name Prescription Drug Antitrust Litigation); and litigation on behalf of consumers challenging an unconstitutional fee imposed on wireless and landline phone customers. Before associating with Miller Law LLC, Mr. Van Tine was affiliated with two other class action boutique law firms for fourteen years.  Mr. Van Tine has also practiced with large law firms in Chicago and Boston, and served as an Assistant Corporation Counsel for the City of Chicago Law Department.

Mr. Van Tine  received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983,  where he served as an Executive Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island.  Mr. Van Tine's practice admissions include the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts.  He is a member of the Chicago and American Bar Associations, and served as the immediate past President of the Abraham Lincoln Marovitz American Inn of Court.

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                                Case Number:

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| |
|---|
| NAME (Type or print) |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>        s/ |
| FIRM |
| STREET ADDRESS |
| CITY/STATE/ZIP |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE  NUMBER |
|---|---|
| | |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES | NO |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES | NO |

| |
|---|
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.<br><br>RETAINED COUNSEL          APPOINTED COUNSEL |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **RAPHAEL NACH, Individually and on behalf of all others similarly situated,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　　　　　-against-<br><br>**LINDA HUBER,**<br><br>　　　　　　　**Defendant.** | **Civil Action No.: 07 C 4071** |

## MOTION OF TEAMSTERS LOCAL 282 GROUP TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr. (collectively, "Teamsters Local 282 Group" or "Movants") hereby move this Court, Honorable Ruben Castillo, 219 South Dearborn Street, Room 2146, Chicago, Illinois, pursuant to Fed R. Civ. P. 42 and §21(D) et seq. of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order (i) appointing Movants as Lead Plaintiff; (ii) approving Lead Plaintiff's selection of Kirby McInerney LLP and Glancy Binkow & Goldberg LLP as Co-Lead Counsel, and Pomerantz Haudek Block Grossman & Gross, LLP as Liaison Counsel for the Class.

This motion is brought pursuant to the Securities Exchange Act of 1934 as amended by the PSLRA.

This motion is made on the ground that good cause exists for the granting of the Order sought. This motion is based on this notice, the accompanying memorandum of points and authorities, Declaration of Ira M. Press, and the Court's complete files and records in the above-

captioned action, as well as such further argument as the Court may allow at the hearing on this motion.

Dated: September 25, 2007

Respectfully submitted,

_____/s/ Patrick V. Dahlstrom_____

Patrick V. Dahlstrom
Leigh H. Smollar
Joshua B. Silverman
POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS, LLP
One North La Salle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181

Proposed liaison counsel for Movant

Ira M. Press
KIRBY McINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
(310) 201-9150

Proposed co-lead counsel for Movant

Christopher J. Keller
Eric J. Belfi
Andrei V. Rado
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
(212) 907-0700

Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **RAPHAEL NACH, Individually and on behalf of all others similarly situated,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　-against-<br><br>**LINDA HUBER,**<br><br>　　　　　　**Defendant.** | **Civil Action No.: 07 C 4071** |

## NOTICE OF PRESENTMENT OF MOTION OF TEAMSTERS LOCAL 282 GROUP TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

**TO:　ALL PARTIES AND THEIR COUNSEL OF RECORD:**

　　**PLEASE TAKE NOTICE THAT**, Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr. (collectively, "Teamsters Local 282 Group" or "Movants"), by and through their Counsel, will appear in front of this Court, Honorable Ruben Castillo, 219 South Dearborn Street, Room 2146, Chicago, Illinois, on October 2, 2007, at 9:45 a.m., and then and there present Movants' motion pursuant to Fed R. Civ. P. 42 and §21(D) et seq. of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order:

　　(i)　　appointing Movants as Lead Plaintiff; and

　　(ii)　　approving Lead Plaintiff's selection of Kirby McInerney LLP and Glancy Binkow & Goldberg LLP as Co-Lead Counsel, and Pomerantz Haudek Block Grossman & Gross, LLP as Liaison Counsel for the Class.

Dated: September 25, 2007

Respectfully submitted,

    /s/ Patrick V. Dahlstrom

      Patrick V. Dahlstrom
      Leigh H. Smollar
      Joshua B. Silverman
POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS, LLP
One North La Salle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181

Proposed liaison counsel for Movant

Ira M. Press
KIRBY McINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
(310) 201-9150

Proposed co-lead counsel for Movant

Christopher J. Keller
Eric J. Belfi
Andrei V. Rado
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
(212) 907-0700

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Patrick V. Dahlstrom, do hereby certify that on September 25, 2007, I caused copies

of the following documents to be served upon the counsel and/or parties listed below:

1. NOTICE OF PRESENTMENT OF MOTION OF TEAMSTERS LOCAL 282 GROUP TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

2. MOTION OF TEAMSTERS LOCAL 282 GROUP TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

3. MEMORANDUM OF LAW IN SUPPORT OF THE TEAMSTERS LOCAL 282 GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF MOVANT'S SELECTION OF CO-LEAD COUNSEL

4. DECLARATION OF IRA M. PRESS IN SUPPORT OF MOTION TO APPOINT TEAMSTERS LOCAL 282 GROUP AS LEAD PLAINTIFF AND FOR APPROVAL OF COUNSEL PURSUANT TO SECTION 21D(A)(3)(b) OF THE SECURITIES EXCHANGE ACT OF 1934.

***Via CM/ECF:***

Joel Lee Lipman
O'Rourke, Katten & Moody
161 North Clark Street
Suite 2230
Chicago, Illinois 60601

Counsel for Raphael Nach

Marvin A. Miller
Miller Law LLC
115 South La Salle Street
Suite 2910
Chicago, Illinois 60603

Counsel for Lewis Wetstein, M.D.

***Via Federal Express:***

Linda S. Huber
c/o Moody's Corp.
99 Church Street
New York, New York 10007

/s/ Patrick V. Dahlstrom
Patrick V. Dahlstrom

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **RAPHAEL NACH, Individually and On Behalf of All Others Similarly Situated,**<br><br>        **Plaintiff,**<br><br>   **-against-**<br><br>**LINDA HUBER,**<br><br>        **Defendant.** | **Civil Action No.: 07 C 4071** |

## MEMORANDUM OF LAW IN SUPPORT OF THE TEAMSTERS LOCAL 282 GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF MOVANT'S SELECTION OF CO-LEAD COUNSEL

     Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr. (collectively "Movant" or the "Teamsters Local 282 Group") respectfully submit this memorandum of law in support of their motion pursuant to Fed R. Civ. P. 42 and §21(D) et seq. of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order:

     (i)   appointing the Teamsters Local 282 Group as Lead Plaintiff; and

     (ii)   approving Lead Plaintiff's selection of Kirby McInerney LLP and Glancy Binkow & Goldberg LLP as Co-Lead Counsel, and Pomerantz Haudek Block Grossman & Gross, LLP as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

     The above-captioned action alleges violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission by a senior officer of Moody's Corporation ("Moody's" or the "Company").

Teamsters Local 282 Group, members of the proposed class of purchasers of Moody's securities between October 25, 2006 and July 10, 2007 (the "Class Period"), has suffered losses of $232,958.80 from the Group members' Class Period transactions in Moody's securities. *See* exhibits B and C to accompanying September 25, 2007 declaration of Ira M. Press ("Press Declaration").

## **FACTUAL BACKGROUND**

Moody's Corporation, through its subsidiaries, provides credit ratings, research, and analysis covering fixed-income securities, other debt instruments and the entities that issue such instruments in the global capital markets.

Among other things, the Company assigns ratings to mortgage bonds comprising risky "subprime" home loans, including bonds packaged as "collateralized debt obligations" and other securities backed by subprime assets. Investors rely on these ratings to assess the value and risk of these investments. While the nation's housing market was booming, Moody's reaped millions of dollars in fees for assigning ratings to subprime-mortgage-backed securities

Throughout the Class Period, the Company assigned excessively high ratings to bonds backed by risky subprime mortgages - including bonds packaged as collateralized debt obligations - which was materially misleading to investors concerning the quality and relative risk of these investments. Moreover, even as a downturn in the housing market caused rising delinquencies of the subprime mortgages underlying such bonds, Moody's maintained its excessively high ratings, rather than downgrade the bonds to reflect the true risk of owning subprime-mortgage-backed debt instruments.

Then on July 11, 2007, Moody's shocked investors when it announced that the Company was downgrading 399 mortgage-backed securities issued in 2006 and reviewing an additional thirty-two

for downgrade, affecting approximately $5.2 billion of bonds. The Company also disclosed that it had downgraded 52 bonds issued in 2005.  In reaction to that disclosure and others concerning Moody's mortgage ratings, Moody's stock price declined materially.

**ARGUMENT**

## I.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiffs in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a  published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(I) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;

> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Teamsters Local 282 Group satisfies all three of these criteria and thus is entitled to the presumption that Movant is the most adequate plaintiff to represent all class period purchasers of Moody's securities.  Accordingly, Movant's motion to be appointed Lead Plaintiff for the proposed Class should be granted.

A.   **Movant is Willing to Serve as Lead Plaintiff**
     **On Behalf of All Purchasers of Moody's Securities**

On July 28, 2007, counsel for plaintiff in the above-captioned action caused a notice to be published in a widely circulated business publication, announcing that a securities class action had been filed against the defendant herein, and advising purchasers of Moody's securities that they had until September 26, 2007 to file a motion to be appointed as Lead Plaintiff. *See* Press Declaration Exhibit A.  The PSLRA provides that motions for appointment of lead plaintiff must be filed within 60 days following publication of the statutory notice. This motion is filed within the statutory time period. In connection with this motion, Movant has attached sworn certifications from its members attesting that they are willing to serve as representative of the Class and are willing to provide testimony at deposition and trial, if necessary. *See* Press Declaration Exhibit B. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

B.   **Movant has the Largest Financial**
     **Interest in the Relief Sought by the Class**

The PSLRA provides that the most adequate plaintiff is presumed to be the "person or group of persons" that, among other things, "has the largest financial interest in the relief sought by the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

Movants collectively purchased 18,340 Moody's shares during the Class Period. Movant spent $1,175,435 on its Class Period Moody's purchases and suffered damages of $232,958.80. *See* Press Declaration, Exhibit C.

Teamsters Local 282 Group believes that its financial interest in the class claims is greater than those of all other qualified movants seeking appointment as lead plaintiff and, thus, that Movant possesses the largest financial interest in the relief sought by the Class.

**C.      Movant Satisfies the Requirements of
          Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the relief sought, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites for class certification, only two– typicality and adequacy – directly address the personal characteristics of the proposed class representative.  See *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005) (Castillo, J.)  Consequently, in deciding a motion for appointment of lead plaintiff, the Court should limit its inquiry to the typicality and adequacy requirements of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  See *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 at *6 (N.D. Ill. Aug, 11, 1997), *accord, Taubenfeld v. Career Education Corp.*, 2004 WL 554810 *2 (N.D. Ill. Mar. 19, 2004)

Movant fulfills all of the requirements of Rule 23. Movant shares substantially the same questions of law and fact with other purchasers of Moody's securities, *i.e.,* whether

defendant violated the Exchange Act through misleading statements concerning the Company's ratings practices which inflated the price of Moody's securities.   Members of the Teamsters Local 282 Group purchased Moody's securities at prices that were artificially inflated, as did all other persons and entities who acquired Moody's securities during the Class Period and Movant, like all Class members, was damaged thereby.  See *Takara, supra,* 229 F.R.D. at 580.

Thus, the close alignment of interests between Movant and other Class Period purchasers of Moody's securities as well as Movant's strong desire to prosecute the claims on behalf of such persons and entities, provide ample reasons to grant Movant's motion to serve as Lead Plaintiff.

**D.** **Movant Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses**

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class;

or

(bb)    is subject to unique defenses that render such plaintiff incap-able of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

Courts have held that the "adequacy" of a class representative for Rule 23 purposes means that (i) the plaintiff's attorney is qualified experienced and generally able to conduct the litigation and (ii) the plaintiff does not have any interests antagonistic to the class.

*Takara, supra,* 249 F.R.D. 577, 580; *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 *5, 6 (N.D. Ill. Mar. 15, 2005).

Movant is not aware of any unique defenses that would render its members inadequate to represent other purchasers of Moody's securities. Further, the members of the Teamsters Local 282 Group have demonstrated a commitment to protecting the interests of the Class by signing Certifications expressing a willingness to serve as class representative and provide deposition and trial testimony, if necessary. See Press Declaration Exhibit B (Movant's certifications). Movant has selected experienced and competent counsel, who, as detailed below, will provide excellent representation of the Class' interests. See Press Declaration Exhibit D (resume of Movant's counsel). Accordingly, Movant should be appointed Lead Plaintiff for the Class.

## II.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to the approval of the Court.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Teamsters Local 282 Group has selected the law firms of Kirby McInerney LLP and Glancy Binkow & Goldberg LLP to serve as Co-Lead Counsel and Pomerantz Haudek Block Grossman & Gross, LLP as Liaison Counsel for the proposed class. Proposed lead counsel are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firms' resumes.  *See* Press Declaration Exhibits D & E. As a result of their

extensive experience in litigation involving issues similar to those raised in this action, Movant's

counsel have the skill and knowledge that will enable them to prosecute this action effectively

and expeditiously.  Thus, the Court may be assured that by approving Movant's selection of Lead

Counsel, the purchasers of Moody's securities will receive the best legal representation available.

## **CONCLUSION**

For all the foregoing reasons, Teamsters Local 282 Group respectfully requests

that the Court: (i) appoint Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr.

as Lead Plaintiff;  (ii) approve its selection of Lead Counsel and Liaison Counsel for the Class;

and (iii) grant such other and further relief as the Court may deem just and proper.

 Dated:  September 25, 2007

Respectfully submitted,

     /s/ Patrick V. Dahlstrom
        Patrick V. Dahlstrom
        Leigh H. Smollar
        Joshua B. Silverman
POMERANTZ HAUDEK BLOCK
  GROSSMAN & GROSS, LLP
One North La Salle Street
Suite 2225
Chicago, IL 60602-3908
(312) 377-1181

Proposed liaison counsel for Movant

Ira M. Press
KIRBY McINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
(310) 201-9150

Proposed co-lead counsel for Movant

Christopher J. Keller
Eric J. Belfi
Andrei V. Rado
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
(212) 907-0700

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAPHAEL NACH, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> LINDA HUBER, <br><br> Defendant. | Civil Action No.: 07 C 4071 |

### DECLARATION OF IRA M. PRESS IN SUPPORT OF MOTION TO APPOINT TEAMSTERS LOCAL 282 GROUP AS LEAD PLAINTIFF AND FOR APPROVAL OF COUNSEL PURSUANT TO SECTION 21D(A)(3)(b) OF THE SECURITIES EXCHANGE ACT OF 1934

I, IRA M. PRESS, declare under penalty of perjury, this 25th day of September 2007, as follows:

1.  I am a member of Kirby McInerney LLP, counsel for movant in this action. I submit this Declaration in support of the motion by the Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr. (collectively "Movant" or "Teamsters Local 282 Group") for the appointment of Lead Plaintiff and for approval of Lead Plaintiff's selection of counsel.

2.  Attached hereto as Exhibit A is a true and correct copy of the notice to class members that was published in *The Economist* on July 28, 2007, advising the public of the pendancy of a class action filed on behalf of investors in Moody's securities.

3.  Attached hereto as Exhibit B are true and correct copies of the signed certifications of the Teamsters Local 282 Group members pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The certification of Teamsters Local 282 Pension Trust Fund was previously filed in connection with that Fund's recent commencement of a proposed class action on behalf of Moody's investors.

4.  Attached hereto as Exhibit C is a loss chart that calculates Movant's damages from class period investments in Moody's securities.

5.  Attached hereto as Exhibit D is a true and correct copy of the firm biography for the law firm of Kirby McInerney LLP, Proposed Co-Lead Counsel.

6.  Attached hereto as Exhibit E is a true and correct copy of the firm biography for the law firm of Glancy Binkow & Goldberg LLP, Proposed Co-Lead Counsel.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Date:  9/26/07

IRA M. PRESS

# EXHIBIT A

### Claims Brought Against Michael Strauss and Stephen A. Hozie Announced by Law Offices of William F. Salle

Notice is hereby given that an action was filed July 18, 2007, in the United States District Court for the Central District of California, Case No. 2:07-cv-04661 DDP, on behalf of shareholders who purchased the common stock of American Home Mortgage Investment Corp. ("American Home Mortgage" or the "Company") between April 26, 2006 and June 28, 2007, inclusive (the "Class Period").

The Complaint charges Michael Strauss and Stephen A. Hozie with violations of federal securities laws. Among other things, plaintiff claims that defendants' misleading statements concerning American Home Mortgage's financial performance and prospects caused the Company's stock price to become artificially inflated, inflicting damages on investors.

Pursuant to 15 U.S.C. §78u-4, if you are a member of the proposed class described above, you may move the Court, not later than 60 days from the date of this Notice, to serve as lead plaintiff; however, you must meet certain legal requirements. If you wish to discuss this action or have any questions concerning this Notice or your rights or interests with respect to these matters, please contact William F. Salle, Esquire, of Law Offices of William F. Salle, 425 E. Colorado St., Suite 755, Glendale, California 91205, (818) 543-1900.

### Claims Brought Against Linda S. Huber Announced by O'Rourke Katten & Moody

Notice is hereby given that an action was filed July 19, 2007, in the United States District Court for the Northern District of Illinois, Case No. 07-cv-4071 (RC), on behalf of shareholders who purchased the common stock of Moody's Corporation ("Moody's") between October 25, 2006 and July 10, 2007, inclusive (the "Class Period").

The Complaint charges Linda S. Huber with violations of federal securities laws. Among other things, plaintiff claims that defendant's misleading statements concerning Moody's business and operations caused Moody's stock price to become artificially inflated, inflicting damages on investors.

Pursuant to 15 U.S.C. §78u-4, if you are a member of the proposed class described above, you may move the Court, not later than 60 days from the date of this Notice, to serve as lead plaintiff; however, you must meet certain legal requirements. If you wish to discuss this action or have any questions concerning this Notice or your rights or interests with respect to these matters, please contact Joel L. Lipman, Esquire, of O'Rourke Katten & Moody, 161 North Clark Street, Suite 2230, Chicago, Illinois 60601, (312) 849-2020.



**Habitat for Humanity®**

**Habitat for Humanity International**

is pleased to announce the opening of its regional headquarters for the Europe and Central Asia region in Slovakia. We have a number of exciting regional positions available beginning September 2007 for our expanding mission in the region including:

**Communications and Advocacy director**

**Public Relations and Media manager**

**Advocacy manager**

**Fundraising manager**

**Housing Finances manager and officer**

Check our website at www.habitateurope.org for details and how to apply.

## Business & Personal

**Immigrate to Canada?**

Abrams & Krochak, a respected Canadian Immigration Law firm can help.
1.416.482.3387
www.AKCanada.com

**Offshore Companies**
From the World's No.1 Provider

With 30 year's experience, 20 global offices and over 200 tax, corporate and trust professionals, no other corporate service provider is better positioned to deliver solutions that work.

Contact a consultant via our website or call today for an exploratory discussion: +44 (1624) 811000

ocra.com

**ocra**worldwide
EXCELLENCE IN GLOBAL CORPORATE SERVICES

OFFSHORE CORPORATIONS, BANKS, TRUSTS, FOUNDATIONS, BANK A/Cs, CREDIT CARDS
www.GLOBAL-MONEY.com
gmc@global-money.com
Fax: +3120-5241407

**NEW AUTHORS**
PUBLISH YOUR BOOK
ALL SUBJECTS INVITED
WRITE OR SEND YOUR MANUSCRIPT TO:
**ATHENA PRESS**
QUEEN'S HOUSE, 2 HOLLY ROAD, TWICKENHAM TW1 4EG. ENGLAND
e-mail: info@athenapress.com
www.athenapress.com



We open SWISS BANK accounts
www.swiss-bank-accounts.com

**What's New and Exciting on the Internet?**

**SUPREME MASTER TELEVISION**

Enjoy Positive, Inspirational & Entertaining Programs!

• Words of Wisdom
• Vegetarian Cooking
• Selected Movies
• Noteworthy News
• A Journey Through Aesthetic Realms
• International Entertainment Programs, etc.

Broadcasting FREE via Satellite

Watch Live Online!
24 hours a Day on Internet TV
www.SupremeMasterTV.com

### Readers are Recommended

to make appropriate enquiries and take appropriate advice before sending money, incurring any expense or entering into a binding commitment in relation to an advertisement. The Economist Newspaper Limited shall not be liable to any person for loss or damage incurred or suffered as a result of his / her accepting or offering to accept an invitation contained in any advertisement published in The Economist.

# EXHIBIT B

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

_WiLLiAm M. MAYE_ declares as follows:
(Individual Name)

1.  I am the _FuND ADMiNiSTRAToR_ for _Teamsters Local 282 Pension Trust Fund_

(Individual Title)          (Institution)

("plaintiff"). As such, I am authorized to make this certification on plaintiff's behalf.

2.  I have read the attached complaint and have authorized its filing on plaintiff's behalf. Plaintiff retains Kirby McInerney LLP, and such co-counsel as it deems appropriate to associate with, to pursue such action on a contingent fee basis.

3.  Plaintiff did not purchase Moody's securities at the direction of plaintiffs' counsel or in order to participate in this private action.

4.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in Moody's securities during the class period set forth in the complaint are set forth below on the attached Schedule A.

6.  During the three years prior to the date of this certification, plaintiff has not served or sought to serve as a representative party, for a class in any action filed under the federal securities laws, except as noted on Schedule A.

7.  Plaintiff will not accept payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any class recovery, except as ordered/approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this

21 day of _SEPT._____, 2007.

_____
Signature

## SCHEDULE A

Transactions of Plaintiff in Moody's Corporation:

| Date | Purchase/Sale | No. of Shares | Price Per Share |
|------|---------------|---------------|-----------------|
| 11/7/06 | Sale | 950 | $66.21 |
| 2/12/07 | Purchase | 650 | $72.96 |
| 3/13/07 | Sale | 650 | $65.30 |
| 5/9/07 | Purchase | 1,430 | $67.59 |
| 5/14/07 | Purchase | 1,840 | $67.79 |
| 7/6/07 | Purchase | 180 | $61.69 |
| 7/11/07 | Purchase | 240 | $62.08 |
| 9/12/07 | Sale | 2,080 | $44.84 |

Federal securities law class actions in which plaintiff has served or sought to serve as a representative party:

*City of Roseville et al v. Micron Technology. Inc. Et al 1:06-cv-00085 (District of Idaho)*

*(Not appointed)*

-3-

**GLANCY BINKOW & GOLDBERG LLP**
**SWORN CERTIFICATION OF PLAINTIFF CHARLES W. McCURLEY, JR.**
**MOODY'S CORPORATION SECURITIES LITIGATION**

I, Charles W. McCurley, Jr., certify that:

1.    I have reviewed the Complaint and authorized its filing.

2.    I did not purchase MOODY'S CORPORATION, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.    My transactions in MOODY'S CORPORATION during the Class Period set forth in the Complaint are as follows:

SEE ATTACHED EXHIBIT A

5.    I have not served as a representative party on behalf of a class under this title during the last three years.

6.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: _9/24/2007_               _____
                                       (Please Sign Your Name Above)
                                        Charles W. McCurley, Jr.

## EXHIBIT A

### Transactions of Charles W. McCurley, Jr. in Moody's Corporation

| PURCHASES | SHARES | PRICE PER SHARE |
|---|---|---|
| 06 20 2007 | 4000 | $65.1360 |
| 03 13 2007 | 2000 | 59.0000 |
| 03 13 2007 | 2000 | 61.0000 |
| 03 13 2007 | 2000 | 61.7500 |
| 03 12 2007 | 2000 | 63.5300 |
| 03 09 2007 | 1000 | 64.7500 |
| 03 09 2007 | 1000 | 64.7500 |

| SALES | SHARES | PRICE PER SHARE |
|---|---|---|
| 03 26 2007 | 4000 | $65.3100 |
| 09 04 2007 | 1000 | 46.6000 |
| 09 04 2007 | 100 | 46.6000 |
| 09 04 2007 | 200 | 46.6000 |
| 09 04 2007 | 700 | 46.6000 |
| 09 04 2007 | 1000 | 46.5000 |
| 09 04 2007 | 1000 | 46.5000 |
| 09 04 2007 | 200 | 46.5000 |
| 09 04 2007 | 800 | 46.5000 |
| 08 31 2007 | 1000 | 45.9000 |
| 08 31 2007 | 1000 | 46.1500 |
| 08 31 2007 | 1000 | 46.2000 |
| 08 31 2007 | 1000 | 46.1200 |
| 08 31 2007 | 1000 | 46.0700 |

# EXHIBIT C

## TEAMSTERS LOCAL 282 GROUP SUMMARY OF DAMAGES – MOODY'S CORPORATION - (CLASS PERIOD: 10/25/06 to 7/10/07)

| | |
|---|---|
| Teamsters Local 282 Pension Trust Fund | $76,718.80 |
| Charles W. McCurley, Jr. | $156,240 |
| Total Group Losses | $232,958.80 |

## Teamsters Local 282 Pension Trust Fund -- Loss Chart -- Moody's Corporation Securities (10/25/06 to 7/10/07)

Pre-class holdings -- 950 shares

| Date | Buy | Sell | Other | Other type | Price | Shares | Exp. | Income | Cum/Exp. |
|---|---|---|---|---|---|---|---|---|---|
| 11/7/2006 | | 950 | | | $66.21 | | | | |
| 2/12/2007 | 650 | | | | $72.96 | | | | |
| 3/13/2007 | | 650 | | | $65.30 | | | | |
| 5/9/2007 | 1430 | | | | $67.59 | | | | |
| 5/14/2007 | 1840 | | | | $67.79 | | | | |
| 7/6/2007 | 180 | | | | $61.69 | | | | |
| 7/11/2007 | 240 | | | | $62.08 | | | | |
| 9/12/2007 | | 2080 | | | $44.84 | | | | |
| | | | | | | | | | |
| Shares Purchased | 4,340 | | Damages | Expenditures on shares purchased | | | | $294,814.70 | |
| Expenditures | $ 294,815 | | | - Proceeds from sales of shares purchased during class period | | | | $135,712.20 | |
| Sales of Shares Purchased During Class Period | | 2,730 | | - Value of shares purchased and held | | | | $82,383.70 | |
| Proceeds | $135,712.20 | | | | | | | $76,718.80 | |
| Shares Held | | 1,610 | | | | | | | |
| Value** | $ 82,384 | | | | | | | | |

**Pursuant to PSLRA, holdings were valued at $51.17, the average closing price of the shares during the period from the end of the class period through September 25, 2007.

## Charles W. McCurley, Jr. -- Loss Chart -- Moody's Corporation Securities (10/25/06 to 7/10/07)

Pre-class holdings -- 0 shares

| Date | Buy | Sell | Other | Other type | Price | Shares | Exp. | Income |
|---|---|---|---|---|---|---|---|---|
| 3/9/2007 | 1000 | | | | $ 64.75 | | | |
| 3/9/2007 | 1000 | | | | $ 64.75 | | | |
| 3/12/2007 | 2000 | | | | $ 63.53 | | | |
| 3/13/2007 | 2000 | | | | $ 61.75 | | | |
| 3/13/2007 | 2000 | | | | $ 61.00 | | | |
| 3/13/2007 | 2000 | | | | $ 59.00 | | | |
| 6/20/2007 | 4000 | | | | $ 65.14 | | | |
| 3/26/2007 | | 4000 | | | $ 65.31 | | | |
| 8/31/2007 | | 1000 | | | $ 46.07 | | | |
| 8/31/2007 | | 1000 | | | $ 46.12 | | | |
| 8/31/2007 | | 1000 | | | $ 46.20 | | | |
| 8/31/2007 | | 1000 | | | $ 46.15 | | | |
| 8/31/2007 | | 1000 | | | $ 45.90 | | | |
| 9/4/2007 | | 800 | | | $ 46.50 | | | |
| 9/4/2007 | | 200 | | | $ 46.50 | | | |
| 9/4/2007 | | 1000 | | | $ 46.50 | | | |
| 9/4/2007 | | 1000 | | | $ 46.50 | | | |
| 9/4/2007 | | 700 | | | $ 46.60 | | | |
| 9/4/2007 | | 200 | | | $ 46.60 | | | |
| 9/4/2007 | | 100 | | | $ 46.60 | | | |
| 9/4/2007 | | 1000 | | | $ 46.60 | | | |
| | | | Damages | | | | | |
| Shares Purchased | 14,000 | | | Expenditures on shares purchased | | | | $880,620 |
| Expenditures | $880,620 | | | - Proceeds from shares purchased and sold | | | | $724,380 |
| Shares Sold | 14,000 | | | - Value of shares purchased and held | | | | $0 |
| Proceeds | $724,380 | | | | | | | $156,240 |
| Shares Held | 0 | | | | | | | |
| Value** | $0 | | | | | | | |

# EXHIBIT D



**KIRBY McINERNEY LLP**

**At Kirby McInerney LLP**, we bring experience, intelligence, creativity and dedication to bear in defending our clients' interests against losses in cases of corporate malfeasance. Unfortunately, on the heels of the exposure of colossal corporate frauds – Enron, Worldcom and others – public and private investors, consumers, payors and employees today participate in an uncertain marketplace, and they need protection. We utilize cutting-edge strategies that bring high – and have even brought unprecedented – recoveries for our clients: governmental entities, Taft-Hartley funds, hedge funds, and other aggrieved institutions and individuals. We have achieved and are pursuing landmark results in the fields of securities fraud, corporate governance, consumer, antitrust, health care and ERISA litigation, representing our clients in class actions or, if appropriate, individual litigation.

We make our clients' interests our own, and are constantly looking for ways in which to help them manage the now amplified risks associated with their participation in the marketplace. As part of our focus on risk management, our *Institutional Monitoring Program* monitors our clients' investment history in order to ensure crucial, immediate awareness of possible fraud. When evidence of fraud surfaces, we partner with our clients to identify and execute a legal strategy that best defends their interests in light of their losses. Our *Institutional Monitoring Program* is cost and commitment free.

We offer our litigation services on a contingency basis, and are paid only if successful in recovering losses in the event of a fraud. This policy allows our clients to access legal rights and remedies that might otherwise be uneconomical. We carefully review the merits of all litigation proceedings, weighing our clients' losses against their chance for recovery, before moving forward with litigation.

We pride ourselves on our proven ability to protect our clients using the entire range of tools for recourse offered by the legal system, whether it be though settlement or, if needed, trial. Throughout the history of our firm we have recovered billions of dollars for our clients, and the average recoveries that we procure in each individual case are among the very best in the field:

> **In 2007, Institutional Shareholder Services, a top industry publication, lauded KM for procuring, on average, the third largest recoveries for shareholders of all plaintiffs' firms in the United States.**

**KIRBY McINERNEY LLP**

# CURRICULA VITAE

**Roger W. Kirby** is managing partner of the firm. He has written several articles on litigation, the Federal Rules of Civil Procedure and Federal Rules of Evidence that have been published by various reporters and journals, and has been on the board of editors of Class Action Reports. He has also lectured on aspects of securities litigation to various professional organizations in the United States and abroad.

Mr. Kirby has enjoyed considerable success as a trial attorney, and cases for which he has had primary responsibility have produced landmark decisions in the fields of securities law, corporate governance, and deceptive advertising.

Recent activities include:

- Representation of an objector to the settlement in *Reynolds v. Beneficial National Bank* in the United States Northern District Court for the District of Illinois. Mr. Kirby and KM successfully persuaded the U.S. Court of Appeals for the Seventh Circuit and ultimately the district court to overturn the settlement in question, and were then appointed co-lead counsel to the class. Mr. Kirby and KM were lauded by the presiding judge for their "intelligence and hard work," and for obtaining "an excellent result for the class."

- Representation, as lead counsel, of a class of investors in *Gerber v. Computer Associates International, Inc.*, a securities class action that resulted in a multimillion dollar recovery jury verdict that was upheld on appeal; and

- Representation, as lead counsel, of a certified class of purchasers of PRIDES securities in connection with the Cendant Corporation accounting fraud in *In re Cendant Corporation PRIDES Litigation*. Mr. Kirby was instrumental in securing an approximate $350 million settlement for the certified class – an unprecedented 100 percent recovery.

Mr. Kirby is admitted to the New York State Bar, the United States District Courts for the Southern, Northern and Eastern Districts of New York, the United States Courts of Appeals for the Second, Third, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits and the United States Supreme Court. He attended Stanford University & Columbia College (B.A., 1969) and Columbia University School of Law (J.D., 1972) where he was an International Fellow. He also attended The Hague Academy of International Law (Cert. D'Att.). Thereafter, he was law clerk to the late Honorable Hugh H. Bownes, United States District Court for New Hampshire, and the United States Court of Appeals for the First Circuit.

 **Alice McInerney** is a partner in our New York office specializing in antitrust and consumer matters, and who also handles securities class actions. Ms. McInerney joined the firm in 1995 and has over 30 years of experience as an attorney.

Prior to joining KM, Ms. McInerney was Chief of the Investor Protection Bureau and Deputy Chief of the Antitrust Bureau of the New York Attorney General's office. While there, she chaired the Enforcement Section of the North American Securities Administrators Association and also chaired the Multi-State Task Force on Investigations for the National Association of Attorneys General.

Some of Ms. McInerney's relevant work includes:

- Representation, as lead and co-lead counsel, of consumer classes in antitrust cases against Microsoft. These litigations resulted in settlements totaling nearly a billion dollars for consumers in Florida, New York, Tennessee, West Virginia and Minnesota;

- Representation of a class of retailers in *In re Visa Check/Master Money Antitrust Litigation*, an antitrust case which resulted in a settlement of over $3 billion for the class;

- Representation of public entities in connection with ongoing Medicaid fraud and false claims act litigations arising from health expenditures of these state and local governmental entities; and

- Representation of California homeowners in litigation arising from mortgage repayment irregularities. Litigation resulted in settlements that afforded millions of California homeowners clear title to their property. The cases resulted in the notable decision *Bartold v. Glendale Federal Bank*.

Ms. McInerney is admitted to the New York State Bar, all United States District Courts for the State of New York, the United States Court of Appeals for the Second Circuit and the United States Supreme Court. She graduated from Smith College (B.A. 1970) and Hofstra School of Law (J.D. 1976).



**Randall K. Berger** is a partner in our New York office specializing in antitrust, whistleblower and unclaimed property litigation. Mr. Berger joined the firm in 1994 and leads the firm's whistleblower practice. In whistleblower cases, fraud against Federal and State governments is exposed by persons having unique knowledge of the circumstances surrounding the fraud. These cases are generally litigated under seal.

Mr. Berger is a certified arbitrator for the National Association of Securities Dealers. The arbitration panels where Mr. Berger serves are used to resolve disputes between NASD member firms and customers, and to resolve intra-industry conflicts.

Some of Mr. Berger's relevant work includes:

- Representation, as co-lead counsel, of investors in Ponzi scheme instruments issued by the now-bankrupt Bennett Funding Group in a class action which resulted in a recovery of $169.5 million for the class;

- Representation of State Treasurers in litigation against the Federal government to recover unclaimed U.S. savings bond proceeds;

- Representation of companies that offered IPO securities in antitrust litigation against the 27 largest investment banks in the United States. Plaintiffs allege that the banks conspired to price fix underwriting fees in the mid-sized IPO market.

Mr. Berger is admitted to the New York State Bar, the United States District Courts for the Southern, Eastern and Northern Districts of New York and the District of Colorado. He has been a member of the New York City Bar Association since 1995. He graduated from Iowa State University (B.S., 1985) and from the University of Chicago (J.D., 1992).

Prior to attending law school and joining KM, Mr. Berger utilized his undergraduate (engineering) degree working for four years with the management information consulting division of Arthur Anderson & Co.



**Joanne Cicala** is a partner in our Texas office who specializes in health care fraud and consumer litigation. Ms. Cicala has been with the firm since 1997 and serves as Special Assistant Attorney General to the States of Michigan and Iowa, and counsel to the City of New York and forty two New York County governments in connection with ongoing Medicaid fraud litigations and other matters arising out of the health expenditures of these state and local governmental entities. Ms. Cicala also represents and advises numerous public employee health benefit funds and Taft Hartley funds on an array of issues related to their health care expenditures and relationships with Pharmacy Benefit Managers.

Ms. Cicala is a member of the National Association of Public Pension Fund Attorneys and the County Attorneys Association of the State of New York.

Some of Ms. Cicala's recent, relevant experience includes:

- Representation of the City of New York in federal antitrust proceedings against GlaxoSmithKline for defrauding the U.S. Patent and Trademark Office in order to unlawfully extend patents for certain drugs;

- Representation of an objector to the settlement in *Reynolds v. Beneficial National Bank* in the U.S. Northern District Court for the District of Illinois. Ms. Cicala and KM successfully persuaded the U.S. Court of Appeals for the Seventh Circuit and ultimately the district court to overturn the settlement in question, and were then appointed co-lead counsel to the class. Ms. Cicala and KM were lauded by the presiding judge for their "intelligence and hard work," and for obtaining "an excellent result for the class."

- Representation, as lead and co-lead counsel, of consumer classes in connection with antitrust proceedings against Microsoft. These litigations resulted in settlements totaling nearly a billion dollars for consumers in Florida, Tennessee, West Virginia and Minnesota; and

- Representation, as lead counsel, of a class of investors in *Gerber v. Computer Associates International, Inc.*, a securities class action which succeeded in trial and resulted in a multimillion dollar recovery for the class.

Ms. Cicala is admitted to practice in the states of New York, New Jersey and Texas. She is also admitted to the all U.S. District Courts in New York, the Western District of Texas and the United States Court of Appeals for the Second, Seventh and Eighth Circuits. She graduated from Georgetown University (B.S.F.S., 1987) and Fordham University Law School (J.D., 1994).

Prior to joining KM, Ms. Cicala was a litigator with Lane & Mittendorf LLP (now Windels Marx Lane & Mittendorf, LLP). Prior to attending law school, she worked for a US-AID funded organization in Washington, DC on legislative development projects in Central America. Ms Cicala also has extensive experience managing municipal welfare reform activities.

**Daniel Hume** is a partner in our New York office specializing in antitrust and securities litigation. Mr. Hume joined the firm in 1995 and currently leads our antitrust litigation practice. He has advised clients in connection with significant antitrust litigation and has helped to recover billions of dollars for corporate consumers, individual consumers, and institutional investors throughout the course of his career.

Mr. Hume has rendered compliance advice to broker-dealers and has contributed to The Compliance Reporter's securities question and answer column. He has also authored articles on securities and class action matters.

Some of Mr. Hume's relevant work includes:

- Representation, as a lead counsel, of consumer classes in connection with antitrust proceedings against Microsoft. These litigations resulted in settlements totaling nearly a billion dollars for consumers in Florida, New York, Tennessee, West Virginia and Minnesota, where the litigation proceeded to trial;

- Representation, as lead counsel, of a class of consumers in connection with *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions*. This case involves Unocal's manipulation of the standard-setting process for low-emissions reformulated gasoline in California, which increased retail prices of reformulated gasoline. This litigation is ongoing;

- Representation, as one of the firms with primary responsibility for the case, of a class of purchasers of computers containing Intel's microprocessor chips in *Coordination Proceedings Special Title, Intel x86 Microprocessor Cases*. This litigation is ongoing;

- Representation, as lead counsel, of the investor class in *In re AT&T Wireless Tracking Stock Securities Litigation*, a securities class action which resulted in a recovery of $150 million for the class; and

- Representation, as one of the firms with primary responsibility for the case, of a class of retailers in *In re Visa Check/MasterMoney Antitrust Litigation*, an antitrust case which resulted in a settlement of over $3 billion for the class.

Mr. Hume is admitted to the New York State Bar, the United States District Courts for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second Circuit and the United States Supreme Court. He graduated from the State University of New York at Albany *magna cum laude* (B.A., 1988) and from Columbia Law School, where he served as Notes Editor for the Columbia Journal of Environmental Law (J.D., 1991).

Prior to joining KM, Mr. Hume practiced at Tenzer Greenblatt (now Blank Rome Tenzer Greenblatt) and Herzog Calimari & Gleason where he specialized in securities and securities regulatory litigation.



**Peter S. Linden** is a partner in our New York office specializing in securities and commercial fraud litigation. Mr. Linden joined the firm in 1990 and focuses on providing advisory services to government pension funds and other institutional investors as well as to corporate and individual consumers. He has been appointed a Special Assistant Attorney General for the State of Michigan and is a member of the National Association of Public Pension Plan Attorneys.

Mr. Linden has obtained numerous outstanding recoveries for investors and consumers during his career. His advocacy has also resulted in many notable decisions, including *In re Matsushita Securities Litigation*, which granted partial summary judgment under § 14(d)(7) of the Securities Exchange Act and, more recently, *In re Ebay Inc. Shareholder's Litigation*, which found that corporate insiders' acceptance of IPO allocations through "spinning" states a claim for breach of a fiduciary duty and that investment banking advisors could be held liable for aiding and abetting such a breach. Mr. Linden has been quoted or featured in articles in *The New York Times* and *The American Lawyer*.

Some of Mr. Linden's relevant experience includes:

- Representation, as lead counsel, of two major insurance companies and a class of bondholders in *In re Laidlaw Bondholder Litigation*, a securities class action which resulted in a $42.275 million recovery for the class;

- Representation, as co-lead counsel, of an investor class and an institutional plaintiff in *In re BISYS Securities Litigation*, a class action arising out of alleged accounting improprieties and which resulted in a $65 million recovery for the class;

- Serving as Chairman of the Plaintiffs' Steering Committee in *In re MCI Non-Subscriber Litigation*, a consumer class action which resulted in an approximately $90 million recovery for the class;

- Representation of an objector to the settlement in *Reynolds v. Beneficial National Bank* in the United States Northern District Court for the District of Illinois. Mr. Linden and KM successfully persuaded the U.S. Court of Appeals for the Seventh Circuit and ultimately the district court to overturn the settlement in question, and were then appointed co-lead counsel to the class. Mr. Linden and KM were lauded by the presiding judge for their "intelligence and hard work," and for obtaining "an excellent result for the class."

- Current representation in class actions on behalf of investors includes *Dot Hill Systems Corporation* and, on behalf of retirement plan participants, in *In re JPMorgan Cash Balance Litigation*.

Mr. Linden is admitted to the New York State Bar, the United States Courts of Appeals for the Third, Sixth, Eighth, and Eleventh Circuits, and the United States District Courts for the Eastern and Southern Districts of New York, the Eastern District of Michigan and the District of Colorado. He graduated from the State University of New York at Stony Brook (B.A., 1980) and from Boston University School of Law (J.D., 1984). Prior to joining KM, Mr. Linden worked as an assistant district attorney in the Kings County District Attorney's Office from 1984 through October, 1990 where he served as a supervising attorney of the Office's Economic Crimes Bureau.

**Ira M. Press** is a partner in our New York office specializing in securities and consumer litigation. Mr. Press joined the firm in 1993, and currently leads the firm's *Institutional Monitoring Program*. In this capacity, he has provided advisory services to numerous government pension funds and other institutional investors. He has authored articles on securities law topics and has lectured to audiences of attorneys, experts and institutional investor fiduciaries.

Mr. Press' advocacy has resulted in several landmark appellate decisions including, *Rothman v. Gregor,* the first ever appellate reversal of a lower court's dismissal of a securities class action suit pursuant to the 1995 private securities litigation reform act, and more recently, *Pinker v. Roche Holdings*.

Some of Mr. Press' relevant experience includes:

- Representation, as lead counsel, of the investor class in *In re AT&T Wireless Tracking Stock Securities Litigation*, a securities class action which resulted in recovery of $150 million for the class;

- Representation, as co-lead counsel, of an investor class and an institutional lead plaintiff in *Rosen v. Textron Inc.*, a class action arising out of alleged accounting improprieties by a defense contractor;

- Representation of numerous institutional investors who have opted out of securities class actions to pursue individual claims; and

- Current representation, as lead and co-lead counsel, in securities class actions on behalf of investors including, *inter alia*, Ariba Inc., Goldman Sachs, Herley, iMergent Inc., Isolagen Inc., Janus Capital Group Inc., and Pharmos Corporation.

Mr. Press is admitted to the New York State Bar, the United States Court of Appeals for the Second, Third and Eleventh Circuits, and the United States District Courts for the Eastern, Northern and Southern Districts of New York. He graduated from Yeshiva University *magna cum laude* (B.A., 1986) and from New York University Law School (J.D., 1989).

Prior to joining KM, Mr. Press practiced at Warshaw Burstein Cohen Schlesinger & Kuh, LLP, where he specialized in commercial litigation.



**Mark Strauss** is a partner in our New York office specializing in securities class actions and class action cases involving defrauded investors and consumers. Mr. Strauss joined the firm in 1999. He has broad experience litigating auditor liability and Ponzi scheme cases. He also litigates claims on behalf of shareholders in mergers and acquisitions.

Some of Mr. Strauss' relevant work includes significant roles in the following litigations:

- Representation, as co-lead counsel, of a multinational bank as lead plaintiff in *In re: Adelphia Communications Corp. Securities & Deriv. Litig.*, a securities class action which resulted in a total recovery of $455 million for the class;

- Representation, as co-lead counsel, of a class of hedge fund investors in *Cromer Finance v. Berger, et al.*, a securities class action which resulted in a total recovery of US$65 million, and one of the largest ever recoveries against a non-auditor third party service provider;

- Representation, as lead counsel, of brokerage customers of Refco Capital Markets in *In re: Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation*, an action alleging a Ponzi scheme. This litigation is ongoing;

- Representation, as lead counsel, of a class of investors in a hedge fund, Lipper Convertibles, L.P., which fraudulently overstated its investment performance, in *In re: Serino v. Lipper, et al.* This litigation is ongoing; and

- Representation, as lead counsel, of a class of bond investors in Amazon.com in *Argent Classic Convertible Arbitrage Fund v. Amazon.com*, a securities class action which resulted in a total recovery of $20 million for the class;

Mr. Strauss is admitted to the New York State Bar, the United States District Courts for the Eastern and Southern Districts of New York, the State of California and the Northern, Southern and Central Districts of California. He graduated from Cornell University (B.A., 1987) and from Fordham University School of Law, where he was Associate Editor of the Law Review (J.D., 1993).

Prior to joining KM, Mr. Strauss practiced at Salans Hertzfeld Heilbronn Christy & Viener and Cahill Gordon & Reindel LLP where he specialized in commercial litigation and class action defense.

**Publications:**
**Are Class Actions Against Broker/Dealers Dead?**
*Securities Regulation and Law Report*, Vol. 36, No. 2, 01/12/2004, pp. 68-72.

Note, **Public Employees Freedom of Association—Should Connick's Free-Speech Based Public-Concern Rule Apply?**
*61 Fordham L. Rev. 473* (1992)

**KIRBY MCINERNEY LLP - 10**



**David Bishop** is of counsel to the firm and practices out of our New York office. Mr. Bishop joined the firm in 2006 following a Dstinguished career in local government. Mr. Bishop was elected to the Suffolk County Legislature in 1993 while still attending Fordham Law School. There he served in several leadership capacities, including Democratic Party Leader, Chairman of Public Safety and Chairman of Environment. His legislative record earned him recognition from the Nature Conservancy, the Child Care Council and the Long Island Federation of Labor.

As an attorney in private practice, Mr. Bishop has litigated numerous NASD arbitrations on behalf of claimants. In addition to his work in connection with securities matters, Mr. Bishop helps to coordinate the firm's client relations activities.

Mr. Bishop is admitted to the New York State Bar and the United States District Court for the Eastern District of New York. He is a member of the Public Investors Arbitration Bar Association and the Suffolk County Bar Association. He graduated from American University (B.A., 1987) and from Fordham University (J.D., 1993).

**Richard L. Stone** is of counsel to the firm and specializes in securities and consumer fraud litigation. Mr. Stone joined the firm in 1997. In addition to his robust legal practice, Mr. Stone currently teaches as an Adjunct Professor of Financial Services Law at Florida State University.

Some of Mr. Stone's relevant experience includes:

- Representation, as co-lead counsel, of a multinational bank as lead plaintiff in *In re Adelphia Communications Corp. Securities & Deriv. Litig.*, a securities class action which resulted in a total recovery of $455 million for the class;

- Representation, as co-lead counsel, of investors in Ponzi scheme instruments issued by the now-bankrupt Bennett Funding Group in a class action which resulted in a recovery of $169.5 million for the class;

- Representation, as lead counsel, of a class of investors in Amazon.com in *Argent Classic Convertible Arbitrage Fund v. Amazon.com*, a securities class action which resulted in a total recovery of $20 million for the class;

- Representation, as lead counsel, of two major insurance companies and a class of bondholders in *In re Laidlaw Bondholder Litigation*, a securities class action which resulted in a $42.275 million recovery for the class; and

- Representation, as co-lead counsel, of a class of institutional investors in Manhattan Investment Fund (a Bermuda hedge fund) in *Cromer Finance v. Berger et al.*, a securities class action which resulted in a total recovery of US$65 million for the class. The case involved complex jurisdictional and choice-of-law issues because of the offshore nature of the fund, and represents one of the largest ever recoveries against a non-auditor third party service provider in a securities class action.

Mr. Stone is admitted to the New York State Bar as well as United States District Courts for the Eastern and Southern Districts of New York. He graduated from Colgate University magna cum laude and Phi Beta Kappa (B.A., 1981), and from Columbia University School of Law (J.D., 1983), where he was a Harlan Fiske Stone Scholar and Editor of the Columbia Law Review.

Prior to joining KM, Mr. Stone was a Partner at Cadwalader, Wickersham & Taft in their Market Regulation and Financial Institutions Practice Groups. Immediately after law school, Mr. Stone clerked for the Honorable Charles P. Sifton, United States District Judge in the Eastern District of New York.

**Henry Telias** is of-counsel to the firm and practices out of our New York office, specializing in accountants' liability and securities litigation. Mr. Telias joined the firm in 1997.

In addition to his legal work, Mr. Telias is also the firm's chief forensic accountant. He received his CPA license from New York State in 1982. Prior to practicing as an attorney, he practiced exclusively as a certified public accountant from 1982 to 1989, including 3 years in the audit and tax departments of Deloitte Haskins & Sells' New York office.

Mr. Telias is a member of the American Institute of Certified Public Accountants, the Association of Certified Fraud Examiners, and the American Finance Association.

Some of Mr. Telias' relevant experience includes:

- Representation, as co-lead counsel, of a multinational bank as lead plaintiff in *In re Adelphia Communications Corp. Securities & Deriv. Litig.*, a securities class action which resulted in a total recovery of $455 million for the class;

- Representation, as lead counsel, of a certified class of purchasers of PRIDES securities in connection with the Cendant Corporation accounting fraud in *In re Cendant Corporation PRIDES Litigation*. This litigation resulted in an approximate $350 million settlement for the certified class – an unprecedented 100 percent recovery.

- Representation, as co-lead counsel, of a class of investors in *In re Waste Management, Inc. Securities Litigation,* a securities class action which resulted in a recovery of $220 million for the class;

- Representation, as co-lead counsel, of an investor class and an institutional plaintiff in I*n re BISYS Securities Litigation*, a class action arising out of alleged accounting improprieties and which resulted in a $65 million recovery for the class; and

- Representation, as co-lead counsel, of an international bond fund as lead plaintiff in *Muzinich & Co., Inc. v. Raytheon Corp.*, a securities class action which resulted in a recovery of $39 million for the class;

Mr. Telias is admitted to the New York State Bar and the United States District Court for the Southern District of New York. He graduated from Brooklyn College cum laude (B.S., 1980) and from Hofstra University School of Law (J.D., 1989).



**James P. Carroll, Jr.** is an associate based in our Texas office specializing in antitrust, securities and consumer fraud litigation. Mr. Carroll joined the firm in 1995.

Recent cases in which Mr. Carroll has been involved include:

- Representation, as lead counsel, of the States of Michigan and Iowa as well as the City of New York and 42 New York counties in connection with individual Medicaid fraud actions in federal court. This litigation is ongoing;

- Representation as co-lead counsel of a class of consumers in connection with *Gordon v. Microsoft Inc.*, a Minnesota State civil antitrust case which settled for $175 million after nearly two months of trial; and

- Representation, as one of the firms with primary responsibility for the case, of a class of retailers in *In re Visa Check/MasterMoney Antitrust Litigation*, an antitrust case which resulted in a settlement of over $3 billion for the class.

Mr. Carroll is admitted to the New York State Bar, the Texas State Bar, the Colorado State Bar, the United States District Court for Colorado, the United States District Courts for the Eastern and Southern Districts of New York, the United States Tax Court and the United States Courts of Appeals for the Ninth and Tenth Circuits. He graduated from Duke University (B.A., 1988) and University of Denver (J.D.,1994).

Prior to joining KM, Mr. Carroll served as General Counsel & Director of U.S. Operations for Emerging Technologies, ET AB, a venture capital firm based in Stockholm, Sweden, and for Twobyfour Software AB, an application management software company where he served as General Counsel, Head of Business Development & Director of U.S. Operations.



**Aaron Hovan** is an associate in our New York office who specializes in health care fraud litigation. Mr. Hovan joined the firm in 2003 and serves as Special Assistant Attorney General to the States of Michigan and Iowa, and counsel to the City of New York and forty two New York County governments in connection with ongoing Medicaid fraud and false claims act litigations and other matters arising out of the health related expenditures of these state and local governmental entities.

Mr. Hovan also represents and advises numerous public employee health benefit funds and Taft Hartley funds on an array of issues related to their health care expenditures and relationships with Pharmacy Benefit Managers.

Recent cases in which Mr. Hovan has been involved include:

- Representation, as lead counsel, of the States of Michigan and Iowa as well as the City of New York and 42 New York counties in connection with individual Medicaid fraud actions in federal court. This litigation is ongoing; and

- Advising County Health Benefit Plans and Taft Hartley Funds on the services rendered by those with whom they contract for health care services, including pharmacy benefit managers.

Mr. Hovan is admitted to the New York State Bar and the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York. He graduated from Colgate University *cum laude* (B.A., 1996) and Columbia University School of Law (J.D., 2002).

Before attending law school, Mr. Hovan worked for the Petroleum Finance Company as an upstream oil & gas industry analyst. Prior to joining KM, Mr. Hovan practiced at Baker Botts, LLP.



**David E. Kovel** is an associate based in our New York office specializing in antitrust, securities and corporate governance matters. Mr. Kovel joined the firm in 2004.

Recent cases in which Mr. Kovel has been involved include:

- Representation, as lead counsel, of the States of Michigan and Iowa as well as the City of New York and 42 New York counties in connection with individual Medicaid fraud actions in federal court. This litigation is ongoing; and

- Representation, as lead counsel, of a class of consumers in connection with *In re Reformulated Gasoline (RFG) Antirust and Patent Litigation and Related Actions*. This case involves Unocal's manipulation of the standard-setting process for low-emissions reformulated gasoline in California, which increased retail prices of reformulated gasoline. This litigation is ongoing.

Mr. Kovel is admitted to the New York State Bar, the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York, the First Circuit and the Connecticut State Bar. He graduated from Yale University (B.A., 1993), Columbia University School of Law (J.D., 2002) and Columbia University School of Business Administration (M.B.A., 2003).

Mr. Kovel traded commodities for several years before attending law school. Prior to joining KM, Mr. Kovel practiced at Simpson Thacher & Bartlett, LLP.



**Pamela E. Kulsrud** is an associate based in our New York office specializing in securities class actions, derivative litigation and settlements of class actions. Ms. Kulsrud has worked with the firm since 1994 and has nearly 20 years of securities and complex class action experience.  In the area of securities fraud, she has litigated in excess of 50 cases for the firm, and has served as lead counsel in cases which have recovered, in aggregate, more than $500 million dollars for class members.

Recent cases in which Ms. Kulsrud has been involved include:

- Representation, as co-lead counsel, of an international bond fund as lead plaintiff in *Muzinich & Co., Inc. v. Raytheon Corp.,* a securities class action which resulted in a recovery of $39 million for the class;

- Representation, as co-lead counsel, of a class of investors in *In re Columbia/HCA Securities Litigation,* a securities class action which resulted in  a recovery of $52 million for the class;

- Representation, as co-lead counsel, of a class of investors in *In re Waste Management, Inc. Securities Litigation*, a securities class action which resulted in  a recovery of $220 million for the class; and

- Representation, as co-lead counsel, of a class of investors in *In re MTC Technologies Inc., Litigation*, a securities class action which resulted in a recovery of $72 million for the class.

Since she has turned her attention to the settlement aspect of the practice, Ms. Kulsrud has overseen the approval of approximately $1.1 billion in class action settlements.

Ms. Kulsrud is admitted to the New York and New Jersey State Bars, the United States District Courts for the Southern and Eastern Districts of New York, and the United States District Court for the District of New Jersey.  She graduated from Dartmouth College (A.B., 1983) and from Brooklyn Law School (J.D., 1987).

Prior to joining KM, Ms. Kulsrud practiced at Wilson Elser Moskowitz Edelman & Dicker, where she specialized in securities, complex and defense litigation, and Bernstein Litowitz Berger & Grossmann, LLP where she specialized in securities class action litigation.



**Sarah G. Lopez** is an associate in our New York office specializing in securities litigation. Ms. Lopez joined the firm in 2006.

Prior to joining KM, Ms. Lopez practiced at Wilson, Elser, Moskowitz, Edelman & Dicker, LLP where her practice primarily focused professional liability defense with a specialty in defending accountants and experience in defending directors and officers in shareholder derivative suits. Ms. Lopez's specialty in accountants liability encompassed defending accounting firms against claims of negligence and fraud in connection with attest services they provided to both profit and not-for profit entities as well as non-attest consulting services and tax preparations services they provided to commercial entities as well as individuals.

During her time at Wilson Elser, Ms. Lopez also advised clients in connection with responding to subpoena requests issued in various investigations by government agencies such as the U.S. Attorney, SEC and NYS Attorney General. Ms. Lopez also has experience with ERISA matters and has experience representing Plaintiffs asserting commercial claims for breach of contract and various business torts. Finally, Ms. Lopez has extensive experience litigating matters at every phase of an action from commencement through the appellate process, in both New York State and Federal Court as well as before various arbitration tribunals.

Ms. Lopez is admitted to the New York State Bar, the United States District Courts for the Southern and Eastern Districts of New York, and the New Jersey State Bar. She graduated from Colgate University (B.A., 1998) and from St. John's University (J.D., 2003).



**Beverly Tse** is an associate based in our New York office specializing in antitrust and securities litigation. Ms. Tse joined the firm in 2004.

Recent cases in which Ms. Tse has been involved include:

- Representation, as lead counsel, of a class of consumers in connection with *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions.* This case involves Unocal's manipulation of the standard-setting process for low-emissions reformulated gasoline in California, which increased retail prices of reformulated gasoline. This litigation is ongoing;

- Representation, as one of the firms with primary responsibility for the case, of a class of purchasers of computers containing Intel's microprocessor chips in *Coordination Proceedings Special Title, Intel x86 Microprocessor Cases*. This litigation is ongoing;

- Representation, as lead counsel, of the investor class in *In re AT&T Wireless Tracking Stock Securities Litigation*, a securities class action which resulted in a recovery of $150 million for the class;

- Representation of an objector to the settlement in *Reynolds v. Beneficial National Bank* in the United States Northern District Court for the District of Illinois. Ms. Tse and KM were lauded by the presiding judge for their "intelligence and hard work," and for obtaining "an excellent result for the class."

Ms. Tse is admitted to the California State Bar and the United States District Courts for the Northern and Central Districts of California. She graduated from California State University of Los Angeles *magna cum laude* (B.S., 2000) and from California Western School of Law (J.D., 2004).



**Edward M. Varga, III** is an associate based in our New York office. Mr. Varga joined the firm in 2006. He graduated from Cornell University (B.S., 2000) and from New York University Law School (J.D., 2006). He is awaiting admission to the bar of the State of New York.

 **J. Bradley Vatrt** is an associate based in our New York office.  Mr. Vatrt joined the firm in 2004 and specializes in healthcare and securities fraud litigation.

Recent cases in which Mr. Vatrt has been involved include:

- Representation, as lead counsel, of a multinational bank as lead plaintiff in *In re Adelphia Communications Corp. Securities & Deriv. Litig.*, a securities class action which resulted in a total recovery of $455 million for the class;

- Representation, as lead counsel, of the States of Michigan and Iowa as well as the City of New York and 42 New York counties in connection with individual Medicaid fraud actions in federal court. This litigation is ongoing;

- Representation, as lead counsel, of a class of limited partners of hedge fund Lipper Convertibles, L.P. in *In re Serino v. Lipper et al.*, a securities class action filed against Lipper, certain of its officers and PriceWaterhouseCoopers, its auditor, in connection with alleged accounting fraud. This litigation is ongoing;

- Representation, as lead counsel, of a class of purchasers of debt securities issued by Owens Corning in *In re Owens Corning, et. Al.*, a securities class action filed against Owens Corning Inc., certain of its officers and directors and the underwriters of the relevant debt securities in connection with alleged securities fraud. This litigation is ongoing; and

- Representation, as co-lead counsel, of an international bond fund as lead plaintiff in *Muzinich & Co., Inc. v. Raytheon Corp.*, a securities class action which resulted in a recovery of $39 million for the class.

Mr. Vatrt is admitted to the New York State Bar, and is awaiting admission to the United States District Court for the Southern District of New York. He graduated from Villanova University (B.A, 1996) and from Fordham University School of Law (J.D., 2003).

Prior to attending law school and joining KM, Mr. Vatrt worked in licensing and business consulting at JBS Marketing from 1996-2000.

**KIRBY McINERNEY LLP - 21**



**Andrew Watt** is an associate based in our New York office specializing in ERISA class action litigation. Mr. Watt joined the firm in 2005.

Recent cases in which Mr. Watt has been involved include:

• Representation, as co-lead counsel, of a class of participants in JP Morgan Chase's retirement plan in *In re JPMorgan Cash Balance Litigation*. This ERISA class action litigation relates to JPMorgan Chase's conversion of their retirement plan from final average structures to cash balance structures – a change which reduced the rate of benefit accruals and disadvantaged older plan participants. This litigation is ongoing;

• Representation, as lead counsel, of a putative class of unitholders of Teppco Partners, L.P. and derivatively on behalf of Teppco Partners, L.P. in *Brinckerhoff v. Texas Eastern Products Pipeline Co., LLC*. This class action pertains to alleged breaches of fiduciary duty perpetrated by certain officers, directors and affiliated entities of Teppco Partners, L.P. This litigation is ongoing; and

• Representation, as co-lead counsel, of a class of purchasers of certain anti-piracy protected audio CDs manufactured and distributed by Sony BMG Music Entertainment in *In re Sony BMG CD Technologies Litigation*. This consumer class action case includes charges of common law fraud, negligent misrepresentation, trespass to chattels, and breach of contract against Sony BMG Music Entertainment. This litigation settled in January 2006.

Mr. Watt is admitted to the New York State Bar and the United States District Courts for the Southern and Eastern Districts of New York. He graduated from Columbia College (B.A., 1994), Yale University (M.A., 1999), and Columbia University School of Law (J.D., 2002), where he was a Harlan Fiske Stone Scholar.

Prior to joining KM, Mr. Watt practiced at Roberts & Holland, LLP.

## Client & Adversary Recognition

*"The case has been in front of the Supreme Court of the United States once, and in front of the Ninth Circuit no fewer than three times. Throughout, [KM] has . . . brought a considerable degree of success . . . and thwarted attempts by other counsel who sought to settle . . . and destroy a potential billion dollars of class rights."*

**Plaintiff / client, Epstein v. MCA, Inc.**

*"[The KM firm] proved to be a highly able and articulate advocate. Single-handedly, [KM] was able to demonstrate not only that [KM's] client had a good case but that many of the suspicions and objections held by the Nigerian Government were ill-founded."*

**English adversary in The Nigerian Cement Scandal**

*"[KM] represented us diligently and successfully. Throughout [KM's] representation of our firm, [KM's] commitment and attention to client concerns were unimpeachable."*

**European institutional defendant /client**
**involved in a multi-million dollar NASD arbitration**

*"Against long odds, [KM] was able to obtain a jury verdict against one of the larger, more prestigious New York law firms."*

**Plaintiff / client,**
**Vladimir v. U.S. Banknote Corporation**

*"[KM] represented our investors with probity, skill, and diligence. There is too much money involved in these situations to leave selection of class counsel to strangers or even to other institutions whose interests may not coincide."*

**Plaintiff / institutional client,**
**In re Cendant Corporation PRIDES Litigation**

## Notables

The firm has repeatedly demonstrated its expertise in the field of class litigation and its expertise has been repeatedly recognized.  For example:

•    *In re Bisys Securities Litigation,* C.A. No. 04-CV-3840 (S.D.N.Y. 2007).  Co-lead counsel, $66 million settlement.

•    *In re AT&T Corp. Securities Litigation*, C.A. No. 00-CV-8754 (S.D.N.Y. 2006).  Sole counsel, $150 million settlement.

•    *In re Adelphia Communications, Inc. Securities Litigation*, No. 04 CV 05759 (S.D.N.Y. 2006).  Co-lead counsel,  $455 million settlement.

> "[T]hat the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."

•    *Carnegie v. Household International Inc., et al.,* 98 C 2178 (EEB)(N.D.Ill. 2006).  Co-lead counsel, $39 million settlement:

> "Since counsel took over the representation of this case . . ., they have pursued this case, conducting discovery, hiring experts, preparing for trial, filing motions where necessary, opposing many motions, and representing the class with intelligence and hard work. They have obtained an excellent result for the class."

•    *Argent Convertible Classic Arbitrage Fund, L.P. v. Amazon.com, Inc. et al.,* CV No. 01-0640L (W.D. Wash. Oct. 20, 2005).  Lead counsel for class of convertible euro-demoninated bond purchase.  $20 million settlement.

•    *Muzinich & Co., Inc. et al. v. Raytheon Company et al. ,* No. C-01-0284-S-BLW  (D. Idaho 2005).   Co lead counsel.  $39 million settlement.

•    *Gordon v. Microsoft Corporation*, Civil No. 00-5994 (Minn. Dist. Ct., Henn. Co. 2004).  Co-lead counsel; $175 million settlement following two months of trial.

- *In re Visa Check/MasterMoney Antitrust Litigation*, 96-CV-5238 (E.D.N.Y. 2003) $3 billion monetary settlement; injunctive relief.

- *In re Florida Microsoft Antitrust Litig.*, Case No. 99-27340 CA 11 (Fl. Cir. Ct. 11th Cir., Miami/Dade Co. 2003). Co-lead counsel. $200 million settlement of antitrust claims.

- *In re Churchill Securities, Inc.* (SIPA Proceeding), Case No. 99 B 5346A (Bankr. S.D.N.Y. 2003: Sole Counsel; recovered over $9 million for 500+ victims of pyramid scheme perpetrated by defunct brokerage firm.

- *In re Laidlaw Bondholder Securities Litigation,* 00 cv 2518-17 (D. S.C. 2002). Lead counsel; $42.8 million settlement.

- *Cromer Finance v. Berger et al.* (*In re Manhattan Fund Securities Litigatio*n), 00 cv 2284 (S.D.N.Y. 2002). Co-lead counsel; $32 million settlement.

- *In re Boeing Securities Litigation,* 97 cv 715 (W.D. Wash. 2001). $92.5 million settlement.

- *In re MCI Non-Subscriber Telephone Rates Litigation,* MDL No. 1275 (S.D. Ill. 2001). Chairman of steering committee; $88 million settlement.

- *In re General Instrument Corp. Securities Litigation*, 01 cv 1351 (E.D. Pa. 2001). Co- lead counsel; $48 million settlement.

- *In re Bergen Brunswig/Bergen Capital Trust Securities Litigation,* 99 cv 1305 and 99 cv 1462 (C.D. Cal. 2001). Co-lead counsel; $42 million settlement.

- *Steiner v. Aurora Foods,* 00 cv 602 (N.D. Cal. 2000). Co-lead counsel; $36 million settlement.

- *Gerber v. Computer Associates International, Inc.*, No. 91 C 3610 (E.D.N.Y. 2000). Multi-million dollar jury verdict in securities class action.

- *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000). Principal counsel of record in appeal that resulted in first ever appellate reversal of the dismissal of a securities fraud class action under the Securities Reform Act of 1995.

- *Bartold v. Glendale Federal Bank,* (2000) 81 Cal.App.4th 816. Ruling on behalf of hundreds of thousands of California homeowners establishing banks' duties regarding title reconveyance; substantial damages still to be calculated in this and related cases against other banks for failures to have discharged these duties.

- *In re Cendant Corporation PRIDES Litigation,* 51 F. Supp. 2d 537, 542 (D. N.J. 1999). Lead counsel, $340 million settlement. The court said:

  "[R]esolution of this matter was greatly accelerated by the creative dynamism of counsel." * * * "We have seen the gifted execution of responsibilities by a lead counsel."

- *In re Waste Management, Inc. Securities Litigation*, No. 97C 7709 (N.D. Ill. 1999). Co-lead counsel, $220 million settlement.

  "...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases... in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here... I would say this has been the best representation that I have seen."

- *In re Bennett Funding Group Securities Litigation*, No. 96 Civ. 2583 (1999). Co-lead counsel; $140 million in settlements to date ($125 million recovered from Generali U.S. Branch, insurer of Ponzi scheme instruments issued by Bennett Funding Group; $14 million settlement with Mahoney Cohen, Bennett's auditor). Case continuing against other defendants.

- *In re MedPartners Securities Litigation*, CV-98-06364 (Ala. June 1999). Co-lead counsel; $56 million settlement.

- *In re MTC Electronic Technologies Shareholder Litigation,* No. CV-93-0876 (E.D.N.Y. October 20, 1998). Co-lead counsel; settlement in excess of $70 million.

- *Skouras v. Creditanstalt International Advisers, Inc., et al.,* NASD Arb., No. 96-05847 (1998). Following an approximately one month hearing, successfully defeated multi-million dollar claim against major European institution.

- *In re Woolworth Corp. Securities Class Action Litigation,* 94 Civ. 2217 (RO) (S.D.N.Y. Sept. 29, 1997). Co-lead counsel; $20 million settlement.

- *In re Archer Daniels Midland Inc. Securities Litigation,* C.A. No. 95-2877 (C. D. Ill. April 11, 1997).  Co-lead counsel; $30 million settlement.

- *Vladimir v. U.S. Banknote Corp.,* No. 94 Civ. 0255 (S.D.N.Y. 1997).  Multi-million dollar jury verdict in § 10(b) action.

- *In re Archer Daniels Midland Inc. Securities Litigation,* C.A. No. 95-2877 (C. D. Ill. April 11, 1997).  Co-lead counsel; $30 million settlement.

- *Vladimir v. U.S. Banknote Corp.,* No. 94 Civ. 0255 (S.D.N.Y. 1997).  Multi-million dollar jury verdict in § 10(b) action.

- *Epstein et al. v. MCA, Inc., et al*., No. 92-55675, 50 F.3d 644 (9th Cir. 1995) *rev'd and remanded on other grounds, Matsushita Electric Industrial Co., Ltd. et al. v. Epstein et al.,* No. 94-1809, 116  S. Ct. 873 (February 27, 1996). Sole counsel.  Appeal resulted in landmark decision concerning liability of tender offeror under section 14(d)(7) of the Williams Act, SEC rule 14d-10 and preclusive effect of a release in a state court proceeding.  In its decision granting partial summary judgment to plaintiffs, the court of appeals for the Ninth Circuit stated:

    "The record shows that the performance of the Epstein plaintiffs  and their counsel in pursuing this litigation has been exemplary."

- *In re Abbott Laboratories Shareholder Litigation,* No. 92-C-3869 MEA, Fed. Sec. L. Rep. ¶ 98,973  (N.D. Ill. 1995). Co-lead counsel; $32.5 million settlement:

    "The record here amply demonstrates the superior quality of plaintiffs' counsel's preparation, work product, and general ability before the court."

- *In re Morrison Knudsen Securities Litigation,* No. CV 94-334-S-EJL (D. Id. 1995). Co-lead counsel; approximately $68 million settlement.

- *In re T2 Medical Inc. Securities Litigation,* No. 1:94-CV-744-RLV (N.D. Ga. 1995). Co-lead counsel; approximately $50 million settlement.

- *Gelb v. AT&T*, 90 Civ. 7212 (LMM) (S.D.N.Y. 1994). Landmark decision regarding filed rate doctrine leading to injunctive relief.

- *In re International Technology Corporation Securities Litigation*, CV 88-40-WPG, (C.D. Cal. 1993). Co-lead counsel; $13 million settlement.

- *Colaprico v. Sun Microsystems,* No. C-90-20710 (SW) (N.D. Cal. 1993).  Co-lead counsel; $5 million settlement.

- *Steinfink v. Pitney Bowes, Inc.*, No. B90-340 (JAC) (D. Conn. 1993).  Lead counsel; $4 million settlement.

- *In re Jackpot Securities Enterprises, Inc. Securities Litigation*, CV-S-89-05-LDG (RJJ) (D. Nev. 1993).  Lead counsel; $3 million settlement.

- *In re Nordstrom Inc. Securities Litigation,* No. C90-295C (W.D. Wa. 1991).  Co-lead counsel; $7.5 million settlement.

- *United Artists Litigation*, No. CA 980 (Sup. Ct., L.A., Cal.).  Trial counsel; $35 million settlement.

- *In re A.L. Williams Corp. Shareholders Litigation,*  Consolidated, C.A. No. 10881 (Delaware. Ch. 1990).  Lead counsel; benefits in excess of $11 million.

- *In re Triangle Inds., Inc., Shareholders' Litigation*, C.A. No. 10466 (Delaware. Ch. 1990).  Co-lead counsel; recovery in excess of $70 million.

- *Schneider v. Lazard Freres*, (N.Y. Sup. 1990).  Co-lead counsel.  Landmark decision concerning liability of investment bankers in corporate buyouts; $55 million settlement.

- *Rothenberg v. A.L. Williams,* C.A. No. 10060 (Delaware. Ch. 1989).  Sole counsel; benefits of at least $25 million to the class.

- *Kantor v. Zondervan Corporation*, C.A. No. 88 C5425 (W.D. Mich. S.D. 1989).  Sole counsel; recovery of $3.75 million.

- *King v. Advanced Systems, Inc.*, C.A. No. 84 C10917 (N.D. Ill. E.D. 1988).  Lead counsel; recovery of $3.9 million (representing 90% of damages).

- *Straetz v. Cordis*, 85-343 Civ. (SMA) (S.D. Fla. 1988).  Lead counsel:

  > "I want to commend counsel and each one of you for the diligence with which you've pursued the case and for the results that have been produced on both sides.  I think that you have displayed the absolute optimum in the method and manner by which you have represented your respective clients, and you are indeed a credit to the legal profession, and I'm very proud to have had the opportunity to have you appear before the Court in this matter."

**KIRBY McINERNEY LLP - 28**

- *In re Flexi-Van Corporation, Inc. Shareholders Litigation,* C.A. No. 9672 (Delaware. Ch. 1988). Co-lead counsel; $18.4 million settlement.

- *Entezed, Inc. v. Republic of Nigeria,* I.C.C. Arb. (London 1987). Multi-million dollar award for client.

- *In re Carnation Company Securities Litigation,* No. CV84-6913 (FW) (C.D. Cal. 1987). Co-lead counsel; $13 million settlement.

- *In re Data Switch Securities Litigation,* B84 585 (RCZ) (D. Conn. 1985). Co-lead counsel; $7.5 million settlement.

- *Stern v. Steans,* 80 Civ 3903 (GLG). The court characterized the result for the class obtained during trial to jury as "unusually successful" and "incredible" (Jun 1, 1984).

- *In re Datapoint Securities Litigation*, SA 82 CA 338 (W.D. Tex.). Lead Counsel for a Sub-Class; $22.5 million aggregate settlement.

- *Malchman, et al. v. Davis, et al*., 77 Civ. 5151 (S.D.N.Y., June 8, 1984) (TPG):

  "It is difficult to overstate the far-reaching results of this litigation and the settlement. Few class actions have ever succeeded in altering commercial relationships of such magnitude. Few class action settlements have even approached the results achieved herein.... In the present case, the attorneys representing the class have acted with outstanding vigor and dedication . . . Although the lawyers in this litigation have appeared considerably more in the state courts than in the federal court, they have appeared in the federal court sufficiently for me to attest as to the high professional character of their work. Every issue which has come to this court has been presented by both sides with a thoroughness and zeal which is outstanding .... In sum, plaintiffs and their attorneys undertook a very large and difficult litigation in both the state and federal courts, where the stakes were enormous. This litigation was hard fought over a period of four years. Plaintiffs achieved a settlement which altered commercial relationships involving literally hundreds of millions of dollars."

* * *

Exhibit E

## GLANCY BINKOW & GOLDBERG LLP
### ATTORNEYS AT LAW

NEW YORK OFFICE

1801 AVENUE OF THE STARS, SUITE 311
LOS ANGELES, CALIFORNIA 90067

SAN FRANCICSO OFFICE

1501 BROADWAY SUITE 1900
NEW YORK, NY 10036
TELEPHONE (917) 510-0009
FACSIMILE (646) 366-0895

———

TELEPHONE (310) 201-9150
FACSIMILE (310) 201-9160
info@glancylaw.com

455 MARKET ST., SUITE 1810
SAN FRANCISCO, CA 94105
TELEPHONE (415) 972-8160
FACSIMILE (415) 972-8166

## FIRM RESUME

Glancy Binkow & Goldberg LLP has represented investors and consumers in federal and state courts throughout the United States for sixteen years. Based in Los Angeles, California and with offices in New York, New York and San Francisco, California, Glancy Binkow & Goldberg has developed expertise prosecuting securities fraud, antitrust and complex commercial litigation. As Lead Counsel or as a member of Plaintiffs' Counsel Executive Committees, Glancy Binkow & Goldberg has recovered in excess of $1 billion for parties wronged by corporate fraud and malfeasance. The firm's efforts on behalf of individual investors have been the subject of articles in such publications as The Wall Street Journal, The New York Times and The Los Angeles Times.

Appointed as Lead or Co-Lead Counsel by federal judges throughout the United States, Glancy Binkow & Goldberg has achieved significant recoveries for class members, including:

In re Heritage Bond Litigation, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, Glancy Binkow & Goldberg recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

In re ECI Telecom Ltd. Securities Litigation, USDC Eastern District of Virginia, Case No. 01-913-A, in which Glancy Binkow & Goldberg served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

Yaldo v. Airtouch Communications, State of Michigan, Wayne County, Case No. 99-909694-CP, in which Glancy Binkow & Goldberg served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

In re Infonet Services Corporation Securities Litigation, USDC Central District of California, Case No. CV 01-10456 NM, in which as Co-Lead Counsel, Glancy Binkow & Goldberg achieved a settlement of $18 million.

In re Musicmaker.com Securities Litigation, USDC Central District of California, Case No. 00-02018, a securities fraud class action in which Glancy Binkow & Goldberg was sole Lead Counsel for the Class and recovered in excess of $13 million.

In re ESC Medical Systems, Ltd. Securities Litigation, USDC Southern District of New York, Case No. 98 Civ. 7530, a securities fraud class action in which Glancy Binkow & Goldberg served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

In re Lason, Inc. Securities Litigation, USDC Eastern District of Michigan, Case No. 99 76079, in which Glancy Binkow & Goldberg was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

In re Inso Corp. Securities Litigation, USDC District of Massachusetts, Case No. 99 10193, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

In re National TechTeam Securities Litigation USDC Eastern District of Michigan, Case No. 97-74587, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

In re Ramp Networks, Inc. Securities Litigation, USDC Northern District of California, Case No. C-00-3645 JCS, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of nearly $7 million.

Glancy Binkow & Goldberg filed the initial landmark antitrust lawsuit against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in In re Nasdaq Market-Makers Antitrust Litigation, USDC Southern District of New York, Case No. 94 C 3996 (RWS), MDL Docket No. 1023, which recovered $900 million for investors in numerous heavily traded Nasdaq issues.

In addition, Glancy Binkow & Goldberg serves as Class Counsel in In re Real Estate Associates Limited Partnership Litigation, USDC Central District of California, Case No. 98-7035 DDP, in which plaintiffs' Counsel achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

The firm currently serves as Lead or Co-Lead Counsel in numerous securities fraud and consumer fraud actions throughout the United States, including, among others:

Shah v. Morgan Stanley Co.,
USDC Southern District of New York, Case No. 03 Civ. 8761 (RJH)

Lapin v. Goldman Sachs,
USDC Southern District of New York, Case No. 03-0850-KJD

In re Gilat Satellite Networks, Ltd. Securities Litigation,
USDC Eastern District of New York, Case No. 02-1510 CPS

In re Lumenis, Ltd. Securities Litigation,
USDC Southern District of New York, Case No.02-CV-1989 DAB

Taft v. Ackermans (KPNQwest Securities Litigation),
USDC Southern District of New York, Case No. 02-CV-07951

In re Amdocs Ltd. Securities Litigation,
USDC Eastern District of Missouri, Case No. 02CV950 HEA

In re Heritage Bond Litigation,
USDC Central District of California, Case No. 02-ML-1475-DT

Payne v. IT Group, Inc.,
USDC Western District of Pennsylvania, Case No. 02-1927

Oscar Private Equity Investments v. Holland (Allegiance Telecom Securities Litigation),
USDC Northern District of Texas, Case No. 3:-CV-2761-H

Winer Family Trust v. Queen (Pennexx Securities Litigation),
USDC Eastern District of Pennsylvania, Case No. 2:03-cv-04318 JP

In re ADC Telecommunications Inc. Securities Litigation,
USDC District of Minnesota, Case No. 03-1194 (JNE/JGL)

Ree v. Procom Technologies, Inc.,
USDC Southern District of New York, Case No. 02CV7613

Capri v. Comerica, Inc.,
USDC Eastern District of Michigan, Case No. 02CV60211 MOB

Porter v. Conseco, Inc.,
USDC Southern District of Indiana, Case No. 02-1332 SEB

In re Livent, Inc. Noteholders Litigation,
USDC Southern District of New York, Case No. 99 Civ 9425

Tatz v. Nanophase Technologies Corp.,
USDC Northern District of Illinois, Case No. 01C8440

Plumbing Solutions Inc. v. Plug Power, Inc.,
USDC Eastern District of New York, Case No. CV 00 5553 (ERK) (RML)

In re Simon Transportation Services, Inc. Securities Litigation,
USDC District of Utah, Case No. 2:98 CV 0863 K

The firm has also recently acted as Class Counsel in obtaining substantial benefits for shareholders in a number of actions, including:

In re F & M Distributors Securities Litigation,
Eastern District of Michigan, Case No. 95 CV 71778 DT (Executive Committee Member) ($20.25 million settlement)

James F. Schofield v. McNeil Partners, L.P. Securities Litigation,
California Superior Court, County of Los Angeles, Case No. BC 133799

Resources High Equity Securities Litigation,
California Superior Court, County of Los Angeles, Case No. BC 080254

The firm has served and currently serves as Class Counsel in a number of antitrust class actions, including:

In re Nasdaq Market-Makers Antitrust Litigation,
USDC Southern District of New York, Case No. 94 C 3996 (RWS), MDL Docket No. 1023

In re Brand Name Prescription Drug Antitrust Litigation,
USDC Northern District of Illinois, Eastern Division, Case No. 94 C 897

Glancy Binkow & Goldberg LLP has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields or which have promoted shareholder rights in prosecuting these actions. Glancy Binkow & Goldberg successfully argued the appeals in Silber v. Mabon I, 957 F.2d 697 (9th Cir. 1992) and Silber v. Mabon II, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000), Glancy Binkow & Goldberg won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint. After this successful appeal, Glancy Binkow & Goldberg then recovered millions of dollars for defrauded investors of the GT Interactive Corporation. The firm also argued Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2002), as amended, 320 F.3d 905

(9th Cir. 2003) and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action brought to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked. The revived action is currently proceeding in the California state court system.

The firm is also involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange. Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Binkow & Goldberg LLP currently consists of the following attorneys:

## THE FIRM'S PARTNERS

**LIONEL Z. GLANCY**, a graduate of the University of Michigan Law School, is the founding partner of the firm. After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at Patterson Belknap Webb & Tyler LLP concentrating in securities litigation. Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective. Mr. Glancy has established a distinguished career in the field of securities litigation over the last fifteen years, appearing as lead counsel on behalf of aggrieved investors in securities class action cases throughout the country. He has appeared and argued before dozens of district courts and several appellate courts, and has recovered billions of dollars in settlement proceeds for large classes of shareholders. Well known in securities law, he has lectured on its developments and practice at CLE seminars and law schools.

**PETER A. BINKOW**, a partner in Glancy Binkow & Goldberg, was born in Detroit, Michigan on August 16, 1965. Mr. Binkow earned his degree in English Literature from the University of Michigan in1988 and attended law school at the University of Southern California (J.D., 1994). Mr. Binkow joined the Law Offices of Lionel Z. Glancy upon graduation and became a partner in 2002.

Mr. Binkow has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States. He served as Lead or Co-Lead Counsel in many class action cases, including In re Heritage Bond Litigation ($28 million recovery), In re National Techteam Securities Litigation ($11 million recovery), In re Credit Acceptance Corporation Securities Litigation ($2.5 million recovery), In re Lason Inc. Securities Litigation ($12.68 million recovery), In re ESC Medical Systems, Ltd. Securities Litigation ($17 million recovery) In re GT Interactive Securities Litigation ($3 million recovery) and many others. Mr. Binkow has prepared and/or argued appeals before the Ninth Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow is admitted to practice before the state of California, the United States District Courts for the Central, Northern and Southern Districts of California, the United States District Court for the Eastern District of Michigan and the Ninth Circuit Court of Appeals. He is a member of the Los Angeles County Bar Association and the American Bar Association.

**MICHAEL GOLDBERG**, a partner in Glancy Binkow & Goldberg, specializes in federal securities, federal and state antitrust, and consumer fraud class action lawsuits. He has successfully litigated numerous cases which resulted in multi-million dollar recoveries for investors, consumers and businesses.

Mr. Goldberg was born in New York on April 27, 1966. He earned his B.A. degree in 1989 from Pitzer College - The Claremont Colleges, and his J.D. degree in 1996 from Thomas M. Cooley Law School. After graduation from law school, Mr. Goldberg joined the Law Offices of Lionel Z. Glancy and became a partner of Glancy Binkow & Goldberg in 2003. He was admitted to both the California and Florida bars in 1997 and is admitted to practice in numerous courts.

**SUSAN G. KUPFER**, the partner resident in the San Francisco office of Glancy Binkow & Goldberg, joined the firm in 2003. She is a native of New York City and received her A.B. degree from Mount Holyoke College in 1969 and her J.D. from Boston University School of Law in 1973. She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, she has been a professor of law. She has taught at Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law and Northeastern University School of Law. Since 1991, she has been a lecturer on law at University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws. Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal Ethics and Jurisprudence. Her publications include articles on federal civil rights litigation, legal ethics and jurisprudence. She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

She previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco and was the executive director of the Massachusetts Commission on Judicial Conduct. She

returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio Pease Tabacco Burt & Pucillo before joining Glancy Binkow & Goldberg. Her practice is concentrated in antitrust, securities and consumer complex litigation. She has been a member of the lead counsel team that achieved significant settlements in the following cases: In re Sorbates Antitrust Litigation ($96.5 million settlement), In re Pillar Point Partners Antitrust Litigation ($50 million settlement), In re Critical Path Securities Litigation ($17.5 million settlement), In re New Era of Networks II Securities Litigation ($5 million settlement).

She is a member of the Massachusetts and California State Bars and the United States District Courts for the Northern, Central and Southern districts of California, the District of Massachusetts, the First and Ninth Circuits Courts of Appeal and the U.S. Supreme Court.

## OF COUNSEL

**ROBIN BRONZAFT HOWALD**, a native of Brooklyn, New York, returned home in 2001 to open the firm's New York City office. Ms. Howald graduated *magna cum laude* from Barnard College in 1980, with a B.A. in psychology. In 1983, she received her J.D. from Stanford Law School, where she served as an Articles Editor for the Stanford Law Review. In addition to her current focus upon securities fraud and consumer class action matters, during her 20-year career Ms. Howald has handled cases in many different practice areas, including commercial disputes, professional malpractice, wrongful termination, bankruptcy, patent and construction matters. As outside counsel for the City of Torrance, California, she also handled a number of civil rights and land use matters, as well as a ground-breaking environmental action concerning Mobil Oil's Torrance refinery. Ms. Howald has experience in pre-trial and trial procedure and has successfully prosecuted post-trial motions and appeals.

Mrs. Howald is a member of the bar of both California (1983) and New York (1995), and is admitted to practice in all federal judicial districts in California, the Southern and Eastern Districts of New York, and the United States Supreme Court. She co-authored "Potential Tort Liability in Business Takeovers" (California Lawyer, September 1986), was a speaker and contributing author at the Eighth Annual Current Environmental and Natural Resources Issues Seminar at the University of Kentucky College of Law (April 1991), and served as a Judge Pro Tem for the Los Angeles County Small Claims Court (1996-1997). Married in 1985, Mrs. Howald and her husband have two sons. An avid runner, Mrs. Howald has completed six marathons.

**NEAL A. DUBLINSKY** was born in Flushing, New York on January 15, 1963. He earned his undergraduate degree from Yeshiva University in 1984, graduating *summa cum laude*, (highest-ranking graduate of his class) and was the recipient of the Dean Isaac Bacon Award for Excellence in the Humanities. Mr. Dublinsky earned his J.D. from New York University School of Law in 1987 where he participated in the Consumer Protection Clinical Program under renowned Professor Anthony G. Amsterdam. Mr. Dublinsky was admitted to the state bar of California in 1988.

Mr. Dublinsky played a strong part in the Firm's successful resolution of the aforementioned matters of In re ESC Medical Systems, Ltd. Securities Litigation, USDC Southern District of New York, Case No. 98 Civ. 7530 and In re Lason, Inc. Securities Litigation, USDC Eastern District of Michigan, Case No. 99 76079. The published opinions in which Mr. Dublinsky has played a primary role include: City of Sterling Heights Police and Fire Retirement System v. Abbey Nat., PLC, --- F.Supp.2d ----, 2006 WL 846261 (S.D.N.Y., Mar 31, 2006) (NO. 05 CIV. 2141 (DC)); Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2002), as amended, 320 F.3d 905 (9th Cir. 2003); Falkowski v. Imation Corp., 132 Cal.App.4th 499, 33 Cal.Rptr.3d 724 (Cal.App. 2005), reh. den. (Sep 27, 2005), rev. den. (Nov 30, 2005), and; Mirpuri v. ACT Mfg., Inc., 212 F.3d 624 (1st Cir. 2000). In addition, he played a primary role in Caprin v. Simon Transportation Services, Inc., 99 Fed.Appx. 150 (not selected for publication), 2004 WL 326995 (10th Cir. 2004). He also was an important participant in Rothman v. Gregor, 220 F.3d 81 (2nd Cir. 2000) and Shah v. Meeker, 435 F.3d 244 (2nd Cir. 2006).

**KEVIN F. RUF** was born in Wilmington, Delaware on December 7, 1961. Mr. Ruf graduated from the University of California at Berkeley in 1984 with a B.A. in Economics and earned his J.D. from the University of Michigan in 1987. Mr. Ruf was admitted to the State Bar of California in 1988. Mr. Ruf was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation. He was of counsel to the Los Angeles firm Corbin & Fitzgerald from 1993 until 2001 where he specialized in white collar criminal defense work, including matters related to National Medical Enterprises, Cynergy Film Productions and the Estate of Doris Duke. Mr. Ruf has extensive trial experience, including jury trials, and considers his courtroom skills to be his strongest asset as a litigator. In his spare time, Mr. Ruf is an actor and comic. He is a full member of the world-famous Groundlings Theatre and has appeared in a number of television shows and films, including "Seinfeld," "Friends," "Spin City," and "Curb Your Enthusiasm."

**ROBERT A. ZABB** attended Yale University and Columbia Law School, and received his B.A. in 1975 and his J.D. in 1979. Mr. Zabb is admitted to practice in California, New York and Massachusetts, in state and federal courts in those jurisdictions. His practice has consisted of general business litigation with a specialization in federal securities litigation on the plaintiff and defense sides. He has practiced actively in the United States District Courts for the Southern and Eastern Districts of New York, which are important centers for securities litigation. Mr. Zabb's accomplishments are reflected in numerous reported case decisions, particularly in the cases known as SEC v. Thrasher (Southern District of New York) and In re MTC Securities Litigation (Eastern District of New York). Mr. Zabb has had the privilege of arguing a case before the U.S. Supreme Court. This was a securities case delineating the permissible scope of a private right of action, and is known as Employers Insurance of Wausau v. Musick, Peeler and Garrett.

**SYLVIE KULKIN KERN** has been a commercial litigator for twenty years. She began her legal career as a law clerk to Justice John Holmdahl of the California Court of Appeal, First District, and then practiced law in San Francisco at Severson, Werson, Berke & Melchior (1985-1988); Brobeck Phleger & Harrison (1988-1993); and Morrison & Foerster LLP (1995-2004), where she was of

counsel on the firm's securities litigation team. She joined Glancy Binkow & Goldberg LLP in 2005. In addition to her work in the securities field and her current focus on antitrust litigation, Ms. Kern has handled numerous complex commercial cases in state and federal court in the transportation, insurance, banking, real estate, and telecommunications industries, at both the law and motion and appellate stages. Born and raised in Nice, France, Ms. Kern moved to Los Angeles with her family in 1962. She graduated from the University of California at Los Angeles, *magna cum laude* and Phi Beta Kappa, in 1973, with dual degrees in French and Political Science. She obtained her master's degree from the Johns Hopkins School of Advanced International Studies in 1975, and a law degree from Hastings College of the Law, where she served on the Hastings International and Comparative Law Review, in 1983. Prior to attending law school, Ms. Kern served as a Foreign Service officer with the United States Agency for International Development, managing foreign aid programs in El Salvador and Haiti. She speaks French, Spanish and Italian, and has lived or traveled in over thirty countries.

**FREDERICK W. GERKENS, III**, an of counsel to Glancy Binkow & Goldberg LLP, graduated from Fordham University Law School (*cum laude*, 1997) with an LL.M. in Corporate, Banking, and Finance law. Mr. Gerkens received his J.D. degree from New York Law School (*cum laude,* 1995) and an M.B.A. from Temple University (1978). Mr. Gerkens received his undergraduate degree from Temple University (B.A. Psychology, *cum laude*) in 1975. Mr. Gerkens also is a Certified Public Accountant (New York, 1980).

Since graduating law school, Mr. Gerkens was employed at the United States Securities and Exchange Commission, Division of Market Regulation, and thereafter practiced principally in securities class actions, complex commercial litigation, and employment law and was a partner at another prominent class action litigation firm.

Prior to law school, Mr. Gerkens was employed at a major Wall Street investment firm as director of financial reporting and manager of regulatory reporting (1985-1992). Prior to that, Mr. Gerkens was an auditor employed by recognized public accounting firms, with mostly financial institution clientele (1978-1985).

Mr. Gerkens is a member of the American Bar Association (Litigation Section), the Association of the Bar of the City of New York and the American Institute of Certified Public Accountants.

Mr. Gerkens played a prominent role in prosecuting several securities class actions to successful conclusion, resulting in settlements to the respective shareholder classes, including *In re BankOne Shareholders Litig.*, No. 00-CV-0880 (N.D. Ill.); *In re UNUMProvident Sec. Litig.*, No. 99-CV-301 (D. Me.); *In re Allied Products Sec. Litig.*, No. 99-CV-3597 (N.D. Ill.); *In re Laidlaw Stockholders Litig.*, No. 3:00-CV-0855-17 (D.S.C.); *In re Alliance Pharm. Corp. Sec. Litig.*, No. 01-CV-1674 (S.D.N.Y.); *In re Warnaco Group, Inc. Sec. Litig. (II)*, No. 01-CV-3346 (S.D.N.Y.); *In re Rediff Inc. Sec. Litig.*, No. 01-CV-3020 (S.D.N.Y.); *In re Abercrombie & Fitch Co. Sec. Litig.*, M21-83 (S.D.N.Y.); *In re Global Crossing, Inc. Sec. Litig.*, No. 02-CV-0910 (S.D.N.Y.); *In re Amazon.com, Inc. Sec. Litig.*, No. C-01-0358-L (W.D. Wash.); *In re Harnischfeger, Inc. Sec. Litig.*, Nos. 98-C-

0524, 99-C-0598 (E.D. Wis.); *In re American Bank Note Holographics, Inc. Sec. Litig.*, No. 99-C-0598 (S.D.N.Y.); and *In re Avista Corp. Sec. Litig.*, No. CV-02-0328 (E.D. Wash.).

Mr. Gerkens is admitted to practice in New York (1995), the United States Supreme Court, the United States Courts of Appeals for the Second, Fourth, Fifth and Sixth Circuits, and the United States District Courts for the Southern and Eastern Districts of New York and the Eastern District of Wisconsin.

**MICHAEL B. ACKERMAN** was born in Brooklyn, New York on June 30, 1962. He received his Bachelor of Arts from Columbia University in 1984 and attended Fordham University Law School (J.D. 1987). Mr. Ackerman was admitted to the New York bar in 1989 and the California bar in 1990. Mr. Ackerman is a member of the American Bar Association, the Los Angeles County Bar Association and the Association of the Bar of the City of New York.

**BRADLEY J. HILLIS** graduated from the University of Washington School of Law (J.D., 1988), where he was a member of Moot Court Honor Board. He received a B.A. from The Colorado College and M.A. in history from the University of Washington. Mr. Hillis is a member of the bars of New York, Massachusetts and Washington State, the U.S. District Courts for the Western District of Washington and Massachusetts, and the U.S. Courts of Appeal for the First and Ninth Circuits. He is the author of "Electronic Court Filing and the Internet," (The Journal of Appellate Practice and Process, volume 2:2, Winter 2000). He has previously worked as a deputy prosecuting attorney for the King County Prosecutor's Office, in Seattle, Washington, and was a member of the Advisory Board of Findlaw.com.

**ILANA KOHN** was born in Encino, California, on October 7, 1967. She earned her undergraduate degree from Mills College in 1993, with honors, and her J.D. from the University of San Francisco School of Law in 1999, with honors. Ms. Kohn was admitted to the State Bar of California in 1999, and is admitted to practice before the Northern, Central and Eastern Districts of California. Ms. Kohn specializes in class actions on behalf of defrauded investors and consumers. Prior to her class action work, Ms. Kohn was an associate in the San Francisco office of Schnader Harrison Segal and Lewis, where she specialized in commercial litigation. Since joining the firm in 2003, Ms. Kohn has been involved in the prosecution of the <u>Initial Public Offering Securities Litigation</u> pending in the United States District Court for the Southern District of New York, a coordinated proceeding of over 300 class action lawsuits based on market manipulation in initial public offerings during the high technology boom of the late 90s.

**JALA AMSELLEM** has been engaged in the private practice of civil ligation for over ten years. She has handled a broad variety of cases in the areas of corporate commercial, family law, personal injury and entertainment litigation. Jala is also a former legal writing professor who taught legal skills for twelve years. In her last academic position she was the Associate Director of the legal writing program at The George Washington School of Law. Recently, Jala founded The Bar Coach, a company dedicated to assisting bar takers pass the California Bar Exam.

Jala received her undergraduate degree from New York University in 1982 and her J.D. from Touro Law School in 1985. At Touro, Jala was the Senior Editor of the law review. Jala is admitted to the bars of California, New York, New Jersey, Michigan and the District of Columbia.

## ASSOCIATES

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million. He has prosecuted securities, derivative, ERISA, and consumer cases throughout the country in both State and Federal court as well as represented defrauded investors at NASD arbitrations.

While an associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in Small v. Fritz Co., 30 Cal. 4th 167 (April 7, 2003) in which the California Supreme Court created new law in the state of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers. The decision was widely covered by national media including The National Law Journal, Los Angeles Times, New York Times, and the New York Law Journal, among others and was heralded as a significant victory for shareholders.

Other published decisions include: In re 2TheMart.com Securities Litigation, 114 F.Supp 2d 955 (C.D.Cal. 2002); In re Irvine Sensors Securities Litigation, 2003 U.S. Dist. LEXIS 18397 (C.D.Cal. 2003); Brown v. Computerized Thermal Imaging Inc., 2002 WL 31109563 (D.Or. 2002).

Mr. Godino received his undergraduate degree from Susquehanna University with a bachelor of science degree in Business Management. He received his J.D. from Whittier Law School in 1995.

Mr. Godino is admitted to practice before the state of California, the United States District Courts for the Central, Northern and Southern Districts of California, the District of Colorado, and the Ninth Circuit Court of Appeals.

**DALE MacDIARMID** is a native of Los Angeles, California. He holds a B.A. in Journalism (with Distinction) from the University of Hawaii, and a J.D. from Southwestern University School of Law, where he was member of the Board of Governors of the Interscholastic Trial Advocacy Honors Program. He is admitted to practice in California and before the United States District Courts for the Southern, Central and Northern Districts of California. Dale is a member of Kappa Tau Alpha, the national journalism honor society, and before joining Glancy Binkow & Goldberg he was a writer and editor for newspapers and magazines in Honolulu and Los Angeles.

**KARA M. WOLKE** graduated summa cum laude with a B.S.B.A. in Economics from The Ohio State University in 2001. Kara earned her J.D. (with honors) from Ohio State in May, 2005, where she was active in Moot Court and received the Dean's Award for Excellence for each of her three years. In 2005, she was a finalist in a national writing competition co-sponsored by the American Bar Association and the Grammy® Foundation. (7 Vand. J. Ent. L. & Prac. 411). Kara joined Glancy Binkow & Goldberg in the fall of 2005 and was admitted to the State Bar of California in January, 2006.

**ANDY SOHRN** joined Glancy Binkow & Goldberg LLP in 2006. He was admitted to the California Bar in January 2006 after receiving his J.D. from the University of California Los Angeles School of Law in May 2005. While attending law school, Andy was the Managing Editor of the Pacific Basin Law Journal, participated in Moot Court and was a Teaching Assistant for the Lawyering Skills program. He also holds a B.A. in Economics and Mathematics from Yale University (class of 2002).

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                                                Case Number:

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| | |
|---|---|
| NAME (Type or print) | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>           s/ | |
| FIRM | |
| STREET ADDRESS | |
| CITY/STATE/ZIP | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE  NUMBER |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES | NO |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES | NO |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL                    APPOINTED COUNSEL

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                                        Case Number:

## AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| NAME (Type or print) |
| --- |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>          s/ |
| FIRM |
| STREET ADDRESS |
| CITY/STATE/ZIP |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
| --- | --- |
|  |  |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES | NO |
| --- | --- | --- |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES | NO |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES | NO |

| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. |
| --- |
| RETAINED COUNSEL            APPOINTED COUNSEL |

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                                     Case Number:

## AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| |
|---|
| NAME (Type or print) |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) <br>      s/ |
| FIRM |
| STREET ADDRESS |
| CITY/STATE/ZIP |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE  NUMBER |
|---|---|
| | |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES | NO |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES | NO |

| |
|---|
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. <br><br> RETAINED COUNSEL        APPOINTED COUNSEL |

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
### ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                           Case Number:

## AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

| | |
|---|---|
| NAME (Type or print) | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) <br>       s/ | |
| FIRM | |
| STREET ADDRESS | |
| CITY/STATE/ZIP | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE  NUMBER |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES | NO |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES | NO |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY?   YES | | NO |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL                 APPOINTED COUNSEL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RAPHAEL NACH, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiff,

    -against-

LINDA S. HUBER,

                Defendant.

Civil Action No.: 07 C 4071

STIPULATION AND [PROPOSED]
ORDER REGARDING APPOINTMENT OF
LEAD PLAINTIFF

WHEREAS, the above captioned class action complaint was filed with this Court on July 19, 2007 against defendant Linda S. Huber, alleging violations of federal securities laws;

WHEREAS, on July 28, 2007, less than 20 days after filing the complaint, counsel for plaintiff Raphael Nach published notice in a nationally circulated business publication advising members of the purported class of, *inter alia*, (1) the pendency of the action, (2) the claims asserted therein, (3) the purported class period, and (4) that, not later than 60 days after the date on which the notice was published, any member of the purported class had the right to move the Court to serve as lead plaintiff of the Class;

WHEREAS, on September 26, 2007, the 60th day following publication of the above-referenced notice, Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr. (collectively the "Teamsters Local 282 Group"), claiming aggregate losses of $232,958.80 from class period investments in the securities at issue in this action, made a motion seeking appointment as Lead Plaintiff and approval of their selection of the law firms Glancy Binkow & Goldberg LLP ("Glancy") and Kirby McInerney, LLP ("Kirby") as Co-Lead Counsel;

WHEREAS, also on September 26, 2007, Lewis Wetstein, M.D., claiming class period investment losses of $11,017.00, made a motion seeking appointment as Lead Plaintiff and approval of his selection of the law firm Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin") as Lead Counsel;

WHEREAS, no other motions for Lead Plaintiff appointment in the above-captioned action were filed within the 60-day period following publication of notice;

WHEREAS, Teamsters Local 282 Group and Lewis Wetstein, M.D. agree to jointly litigate this action as Co-Lead Plaintiffs and for their choice of counsel, the law firms of Glancy, Kirby and Schiffrin, to serve as Co-Lead Counsel;

WHEREAS, Teamsters Local 282 Group and Lewis Wetstein, M.D. collectively have the largest financial interest in this action, and together preliminarily satisfy the typicality and adequacy requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I);

IT IS HEREBY STIPULATED and AGREED, by and between the attorneys for the undersigned parties to this action and subject to the Court's approval, as follows:

1.     Teamsters Local 282 Group and Lewis Wetstein, M.D. are hereby appointed Co-Lead Plaintiffs for the Class and their choice of counsel, the law firms Glancy Binkow & Goldberg LLP,  Kirby McInerney, LLP and Schiffrin Barroway Topaz & Kessler, LLP are approved as Co-Lead Counsel.

///

///

Respectfully submitted,

DATED: 10/1/07

**POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**

Patrick V. Dahlstrom
Leigh Handelman Smollar
1 North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Proposed Local Counsel*

DATED:_____

**KIRBY McINERNEY LLP**

_____

Ira M. Press
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:    (212) 371-6600

*Counsel for Counsel for Teamsters Local 282
Group, and Proposed Co-Lead Counsel*

DATED: 10/1/07

**GLANCY BINKOW & GOLDBERG LLP**

Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone:    (310) 201-9150

*Counsel for Counsel for Teamsters Local 282
Group, and Proposed Co-Lead Counsel*

Respectfully submitted,

DATED:_____     **POMERANTZ HAUDEK BLOCK**
                            **GROSSMAN & GROSS LLP**

_____

Patrick V. Dahlstrom
Leigh Handelman Smollar
1 North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Proposed Local Counsel*

DATED:_____     **KIRBY McINERNEY LLP**

_____

Ira M. Press
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:    (212) 371-6600

*Counsel for Counsel for Teamsters Local 282*
*Group, and Proposed Co-Lead Counsel*

DATED:_____     **GLANCY BINKOW & GOLDBERG LLP**

_____

Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone:    (310) 201-9150

*Counsel for Counsel for Teamsters Local 282*
*Group, and Proposed Co-Lead Counsel*

DATED:_____

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**

Sam Dawhler    by LLS

Stuart L. Berman
Sean M Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone:    (610) 667-7056
Facsimile:    (610) 667-7706

*Counsel for Lewis Wetstein, M.D.,*
*and Proposed Co-Lead Counsel*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAPHAEL NACH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>LINDA S. HUBER,<br><br>Defendant | Civil Action No.: 07 C 4071<br><br>[PROPOSED] ORDER REGARDING APPOINTMENT OF LEAD PLAINTIFF |

## [PROPOSED] ORDER

PURSUANT TO STIPULATION, AND GOOD CAUSE APPEARING:

1.    Teamsters Local 282 Group and Lewis Wetstein, M.D. are hereby appointed Co-

Lead Plaintiffs in the above-captioned action.

2.    The law firms Glancy Binkow & Goldberg LLP, Kirby McInerney, LLP and

Schiffrin Barroway Topaz & Kessler, LLP are approved as Co-Lead Counsel.

3.    The law firm Pomerantz Haudek Block Grossman & Gross LLP is approved as

Plaintiffs' Local Counsel.

IT IS SO ORDERED:

DATED:_____          _____
                                The Honorable Ruben Castillo
                                United States District Judge



# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of

RAPHAEL NACH

v

LINDA S. HUBER

CLERK
U.S. DISTRICT COURT
Case Number: 07 C 4071

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Lewis Wetstein, M.D.

# F I L E D

SEP 2 7 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| NAME (Type or print) |
|---|
| TAMMY D. CUMMINGS |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
|---|
| s/ Tammy D. Cummings /mdm |

| FIRM |
|---|
| SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP |

| STREET ADDRESS |
|---|
| 280 King of Prussia Road |

| CITY/STATE/ZIP |
|---|
| Radnor, PA 19087 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| | 610-667-7706 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ✓ | NO ☐ |
|---|---|---|
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ✓ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ✓ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☐ |

| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. |
|---|
| RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐ |

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of

RAPHAEL NACH

v

LINDA S. HUBER

Case Number: 07 C 4071

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Lewis Wetstein, M.D.

**F I L E D**

SEP 2 7 2007

Sep 27 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| NAME (Type or print) |
| --- |
| SEAN M. HANDLER |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
| --- |
| s/ *Sean M. Handler* |

| FIRM |
| --- |
| SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP |

| STREET ADDRESS |
| --- |
| 280 King of Prussia Road |

| CITY/STATE/ZIP |
| --- |
| Radnor, PA 19087 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
| --- | --- |
|  | 610-667-7706 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ✓ | NO ☐ |
| --- | --- | --- |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ✓ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ✓ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☐ |

| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. |
| --- |
| RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐ |

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of

Case Number: 07 C 4071

RAPHAEL NACH
v
LINDA S. HUBER

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Lewis Wetstein, M.D.

# F I L E D

SEP 2 7 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NAME (Type or print) STUART L. BERMAN | |
| SIGNATURE (Use electronic signature if the appearance form is filed electronically) s/ Stuart L. Berman | |
| FIRM SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP | |
| STREET ADDRESS 280 King of Prussia Road | |
| CITY/STATE/ZIP Radnor, PA 19087 | |
| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER 610-667-7706 |

| | | |
|---|---|---|
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ✓ | NO ☐ |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☐ | NO ✓ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ✓ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☐ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Raphael Nach, et al.

                        Plaintiff,

v.                                              Case No.: 1:07–cv–04071
                                                Honorable Ruben Castillo

Linda Huber

                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, October 2, 2007:

     MINUTE entry before Judge Ruben Castillo :Motion hearing held on 10/2/2007. Motion of Teamsters Local 282 Group to appoint lead Plaintiff and approve lead Plaintiff's selection of lead counsel [11] and motion of Lewis Wetstein, M.D. to be appointed lead Plaintiff and for approval of lead Plaintiff's selection of lead counsel and liaison counsel [8] are entered and continued to 10/11/2007 at 9:45 AM.Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

**U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
**ATTORNEY APPEARANCE FORM**

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| | |
|---|---|
| In the Matter of | Case Number: 07 C 4071 |

Raphael Nach

v.

Linda S. Huber

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Teamsters Local 282 Pension Fund
and
Charles W. McCurley, Jr.

**ALR**

**FILED**

**SEPTEMBER 26, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| NAME (Type or print) |
|---|
| Leigh H. Smollar |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
|---|
| s/  Leigh H. Smollar |

| FIRM |
|---|
| Pomerantz Haudek Block Grossman & Gross LLP |

| STREET ADDRESS |
|---|
| One North La Salle Street, Suite 2225 |

| CITY/STATE/ZIP |
|---|
| Chicago, Illinois 60602 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE  NUMBER |
|---|---|
| 6237247 | 312-377-1181 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
|---|---|---|
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ☑ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ |

| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. |
|---|
| RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐ |

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| | |
|---|---|
| In the Matter of | Case Number: 07 C 4071 |

Raphael Nach

v.

Linda S. Huber

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Teamsters Local 282 Pension Fund
and
Charles W. McCurley, Jr.

**ALR**

**FILED**

**SEPTEMBER 26, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| NAME (Type or print) |
|---|
| Joshua B. Silverman |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
|---|
| s/ Joshua B. Silverman |

| FIRM |
|---|
| Pomerantz Haudek Block Grossman & Gross LLP |

| STREET ADDRESS |
|---|
| One North La Salle Street, Suite 2225 |

| CITY/STATE/ZIP |
|---|
| Chicago, Illinois 60602 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
|---|---|
| 6238108 | 312-377-1181 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
|---|---|---|
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ☑ |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ |

| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. |
|---|
| RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐ |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAPHAEL NACH, Individually And On Behalf
of All Others Similarly Situated,

                Plaintiff,

    against

LINDA HUBER,

                Defendant.

Civil Action No: 07 C 4071
Judge Ruben Castillo

## PLAINTIFFS' INITIAL STATUS REPORT

Pursuant to the Court's Order of October 2, 2007 (Docket #21), Proposed Lead Plaintiffs,

Teamsters Local 282 Group and Lewis Wetstein, M.D. file this Initial Joint Status Report. A

status hearing has been set for October 11, 2007 at 9:45 a.m.

### A.    Nature of the Case

This is a securities class action case alleging violations of Section 10(b) and 20(a) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-

5, 17 C.F.R. §240.10b-5.  The Court has jurisdiction over this Action pursuant to Section 27 of

the Exchange Act, 15 U.S.C. §§78aa; and 28 U.S.C. §§1331 and 1337. The Plaintiffs will seek

to prove that defendant violated Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5

promulgated thereunder with the requisite *scienter*, by issuing a series of material

misrepresentations to the market regarding Moody's excessively high credit ratings to bonds

backed by risky subprime mortgages, between October 25, 2006 and July 10, 2007, thereby

artificially inflating the price of Moody's securities.  The plaintiffs seek the following relief:

        (1)    Determining that this Action is a proper class action, designating Lead

Plaintiffs and certifying class representatives under Rule 23 of the Federal
Rules of Civil Procedure, and plaintiffs' selection of lead counsel;

(2)     Awarding compensatory damages in favor of plaintiffs and the other Class
members against defendant, for all damages sustained as a result of
defendants' wrongdoing, in an amount to be proven at trial, including
interest thereon;

(3)     Awarding plaintiffs and the Class their reasonable costs and expenses
incurred in this Action, including counsel fees and expert fees; and

(4)     Such other relief as the Court may deem just and proper.

On July 19, 2007, plaintiff in the initial action, Raphael Nach ("Nach"), sued defendant,
Linda Huber ("Huber"), the Chief Financial Officer of Moody's Corporation. Counsel in the
initial action has attempted service upon Huber by mailing her a Request to Waive Service
pursuant to Fed. R. Civ. P. 4(d). The time for Huber to respond to the Request to Waive Service
has not expired, and a responsive pleading has not been filed.

**B.     Preparation of Draft Scheduling Order**

Pursuant to Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act (the
"PSLRA"), on July 28, 2007, counsel for plaintiff Nach caused proper notice to be published in
a widely circulated business publication, advising purchasers of Moody's securities that they had
until September 26, 2007 to file a motion to be appointed as Lead Plaintiff.[1] On September 26,
2007, Teamsters Local 282 Pension Trust Fund and Charles W. McCurley ("Teamsters Local
282 Group") and Lewis Wetstein, M.D., both properly filed motions for appointment of lead
plaintiff. No other motions for lead plaintiff have been filed. The Teamsters Local 282 Group

---

[1] The PSLRA provides that motions for appointment of lead plaintiff must be filed within 60 days following
publication of the statutory notice. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

and Lewis Wetstein, M.D. have agreed to jointly litigate this Action, and filed a Stipulation on October 1, 2007, requesting the Court to appoint Teamsters Local 282 Group and Lewis Wetstein, M.D. as Co-Lead Plaintiffs for the Class and to approve their selection of Glancy Binkow & Goldberg LLP, Kirby McInerney, LLP and Schiffrin Barroway Topaz & Kessler, LLP as Co-Lead Counsel, and the law firm of Pomerantz Haudek Block Grossman & Gross LLP as Local Counsel. On October 2, 2007, the Court entered and continued the request to enter the Stipulation until October 11, 2007.

Plaintiffs request that the Court issue a Scheduling Order directing Lead Plaintiffs to file a Amended Complaint 60 days after the entry of the Order appointing Lead Plaintiffs. Plaintiffs anticipate that defendant will file a motion to dismiss the Amended Complaint. As defendant Huber has not yet responded to the Request to Waive Service, and as plaintiffs anticipate that Huber will seek to move to dismiss the Amended Complaint, plaintiffs cannot at this time agree upon any dates for a scheduling order beyond the filing of an Amended Complaint.

**C.    Trial Status**

A jury trial has been requested. At this time, the parties cannot anticipate a date for trial or the length of such trial.

**D.    Consent to Proceed Before a Magistrate Judge**

The plaintiffs do not consent to a trial before a Magistrate Judge.

**E.    Settlement Status**

No settlement discussions have commenced to date.

Dated: October 4, 2007

POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP

By:_____/sLeigh Handelman_____
       Leigh Handelman Smollar

Patrick V. Dahlstrom
Leigh Handelman Smollar
Joshua B. Silverman
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Tel: (312) 377-1181
Fax: (312) 377-1184

Proposed Local Counsel

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

Ira M. Press
KIRBY McINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
Tel: (212) 371 6600

Stuart L. Berman
Sean M. Handler
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

Proposed Co-Lead Counsel

4

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Raphael Nach, et al.

<div align="center">Plaintiff,</div>

v.

Case No.: 1:07–cv–04071

Honorable Ruben Castillo

Linda Huber

<div align="center">Defendant.</div>

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, October 11, 2007:

MINUTE entry before Judge Ruben Castillo :Status hearing held on 10/11/2007 and continued to 12/6/2007 at 9:45 am. Motion of Lewis Wetstein, M.D. to be appointed lead Plaintiff and for approval of lead Plaintiff's selection of lead counsel and liaison counsel [8] and motion of Teamsters Local 282 Group to appoint lead Plaintiff and approve lead Plaintiff's selection of lead counsel [11] are entered and continued to 12/6/2007 at 9:45 a.m.Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

(Revised 02/01/01)

## United States District Court   Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title: | Raphael Nach           **Plantiff(s)** |
| | VS. |
| | Linda S. Huber      MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT **Defendant(s)** |

**RECEIVED**
OCT 4 2007
OCT - 4 2007

| | | |
|---|---|---|
| Case Number: | 1:07-cv-04071 | Judge: Ruben Castillo |

I,    Ira M. Press                  hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Teamsters Local 282 Pension Trust Fund             by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
|---|---|
| Supreme Court of the State of New York | 03/28/90 |
| United States Court of Appeals for the Second Circuit | 04/06/00 |
| United States Court of Appeals for the Third Circuit | 03/23/01 |
| United States District Court for the Southern District of New York | 06/09/92 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | N/A | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?**    Yes   ✓      No   ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

**censured, suspended, disbarred, or otherwise disciplined by any court?**   Yes ☐   No ☑

**or is the applicant currently the subject of an investigation of the applicant's professional conduct?**   Yes ☐   No ☑

**transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?**   Yes ☐   No ☑

**denied admission to the bar of any court?**   Yes ☐   No ☑

**held in contempt of court?**   Yes ☐   No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

10/03/07
_____
Date

_Ira Press_
_____
Signature of Applicant

| Applicant's Name | Last Name<br>Press | | First Name<br>Ira | Middle Name/Initial<br>M. |
|---|---|---|---|---|
| Applicant's Law Firm | Kirby McInerney & Squire, LLP | | | |
| Applicant's Address | Street Address (include suite or room number)<br>830 Third Avenue | | | State Bar Number<br>IP 5313 |
| | City<br>New York | State<br>New York | ZIP Code<br>10022 | Work Phone Number<br>(212) 371-6600 |

(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**PAID**
RECEIPT # 1114986
OCT - 4 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### ORDER

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: 10/10/07

_____
United States District Judge

(Revised 02/01/01)



## United States District Court  Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | RAPHAEL NACH, Individually and On Behalf Of All Others Similarly Situated, | Plantiff(s) |
| | VS. | |
| | LINDA S. HUBER, | Defendant(s) |

RECEIVED
OCT - 9 2007
OCT 9 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| Case Number: 1:07CV4071 | Judge: Ruben Castillo |

I,  Stuart L. Berman                                                          hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Lewis Wetstein, M.D., Plaintiff                                   by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
| --- | --- |
| Supreme Court of Pennsylvania, Supreme Court of New Jersey | 12/12/91,  12/19/91 |
| USDC EDPA | 9/21/94 |
| US District Courts DCO, EDAR, WDAR | 2000 |
| US District Court EDWI | 2001 |
| US District Court DNE | 2005 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if
necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?   Yes ✓    No ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

censured, suspended, disbarred, or otherwise disciplined by any court?   Yes ☐   No ☑

or is the applicant currently the subject of an investigation of the
applicant's professional conduct?   Yes ☐   No ☑

transferred to inactive status, voluntarily withdrawn, or resigned from the
bar of any court?   Yes ☐   No ☑

denied admission to the bar of any court?   Yes ☐   No ☑

held in contempt of court?   Yes ☐   No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

10/05/07

Date                                    Signature of Applicant

| Applicant's Name | Last Name  Berman | | First Name  Stuart | Middle Name/Initial  L. |
|---|---|---|---|---|
| Applicant's Law Firm | Schiffrin Barroway Topaz & Kessler, LLP | | | |
| Applicant's Address | Street Address (include suite or room number)  280 King of Prussia Road | | | State Bar Number  32870 (PA) |
| | City  Radnor | State  PA | ZIP Code  19087 | Work Phone Number  610-667-7706 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00  The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

(Fee Stamp)

**PAID**
RECEIPT # 1605221
OCT - 9 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## ORDER

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED:  10/11/07

United States District Judge

(Revised 02/01/01)



## United States District Court  Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | Raphael Nach | **RECEIVED** Plantiff(s) |
| --- | --- | --- |
| | | VS.  OCT 1 1 2007 |
| | Linda S. Huber | **MICHAEL W. DOBBINS**  Defendant(s) **CLERK, U.S. DISTRICT COURT** |
| Case Number: 1:07-CV-04071 | Judge: Ruben Castillo | |

I,  Michael M. Goldberg _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Teamsters Local 28 Pension Trust Fund _____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
| --- | --- |
| United States District Court for the Central Division | 06/03/97 |
| | |
| | |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if
necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?  Yes ✔   No ☐**

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

**censured, suspended, disbarred, or otherwise disciplined by any court?**    Yes ☐    No ☑

**or is the applicant currently the subject of an investigation of the applicant's professional conduct?**    Yes ☐    No ☑

**transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?**    Yes ☐    No ☑

**denied admission to the bar of any court?**    Yes ☐    No ☑

**held in contempt of court?**    Yes ☐    No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

10/05/07
_____
Date

_____
Signature of Applicant

| Applicant's Name | Last Name | | First Name | | Middle Name/Initial |
|---|---|---|---|---|---|
| | Goldberg | | Michael | | M |

| Applicant's Law Firm | Glancy Binkow & Goldberg LLP |
|---|---|

| Applicant's Address | Street Address (include suite or room number) | State Bar Number |
|---|---|---|
| | 1801 Avenue of the Stars, Suite 311 | #188669 |

| City | State | ZIP Code | Work Phone Number |
|---|---|---|---|
| Los Angeles | CA | 90067 | 310-201-9150 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

(Fee Stamp)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

PAID
RECEIPT # 115043
OCT 11 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**ORDER**

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: 10/15/07
_____
United States District Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **RAPHAEL NACH, Individually, and On Behalf of All Others Similarly Situated,**<br><br>          **Plaintiff,**<br><br>    -against-<br><br>**LINDA S. HUBER,**<br><br>          **Defendant.** | **Case No. 07 C 4071**<br>**Judge Ruben Castillo** |

## NOTICE OF PRESENTMENT OF STIPULATION AND [PROPOSED] ORDER OF A SCHEDULE FOR FILING AN AMENDED COMPLAINT AND A RESPONSE THERETO

**TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD:**

     **PLEASE TAKE NOTICE THAT**, Plaintiffs Teamsters Local 282 Pension Trust Fund, Charles W. McCurley, Jr., and Lewis Wetstein, M.D., will appear before this Court, Honorable Ruben Castillo, 219 South Dearborn Street, Room 2146, Chicago, Illinois, on December 6, 2007, at 9:45 in the forenoon, or as soon thereafter as the parties may be heard, and then and there present for the Court's consideration the parties' Stipulation and [Proposed] Order of a Schedule for Filing an Amended Complaint and a Response Thereto, filed herewith, which has been signed by counsel for Defendant Linda S. Huber and counsel for the Plaintiffs, hereto.

Dated: November 21, 2007

          /s/ Patrick V. Dahlstrom
            Patrick V. Dahlstrom
          **POMERANTZ HAUDEK BLOCK**
           **GROSSMAN & GROSS LLP**
          One North La Salle Street, Suite 2225
          Chicago, IL 60602-3908
          Tel:    (312) 377-1181

          *Local Counsel for Plaintiffs*

Ira M. Press
**KIRBY McINERNEY LLP**
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

*Counsel for Plaintiff Teamsters Local 282
Pension Trust Fund*

Lionel Z. Glancy
Michael Goldberg
**GLANCY BINKOW & GOLDBERG LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel:    (310) 201-9150

*Counsel for Plaintiff Charles W. McCurley*

Stuart L. Berman
Sean M. Handler
**SCHIFFRIN BARROWAY TOPAZ
   & KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel:    (610) 667-7056

*Counsel for Plaintiff Lewis Wetstein, M.D.*

To:    Richard J. Klapper
       Sharon L. Nelles
       **SULLIVAN & CROMWELL LLP**
       125 Broad Street
       New York, New York 1004
       Tel:    (212) 558-4000

       *Counsel for Defendant Linda S. Huber*

## CERTIFICATE OF SERVICE

I, Patrick V. Dahlstrom, do hereby certify that on November 21, 2007, I caused copies of the following documents to be served upon the counsel and/or parties listed below:

1. **NOTICE OF PRESENTMENT OF STIPULATION AND [PROPOSED] ORDER OF A SCHEDULE FOR FILING AN AMENDED COMPLAINT AND A RESPONSE THERETO**

*Via CM/ECF:*

Joel Lee Lipman
**O'ROURKE, KATTEN & MOODY**
161 North Clark Street
Suite 2230
Chicago, Illinois 60601

*Counsel for Plaintiff Raphael Nach*

Ira M. Press
**KIRBY McINERNEY LLP**
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

*Counsel for Plaintiff Teamsters Local 282
Pension Trust Fund*

Lionel Z. Glancy
Michael Goldberg
**GLANCY BINKOW & GOLDBERG LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel:    (310) 201-9150

*Counsel for Plaintiff Charles W. McCurley*

Stuart L. Berman
Sean M. Handler
**SCHIFFRIN BARROWAY TOPAZ
    & KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel:    (610) 667-7056

*Counsel for Plaintiff Lewis Wetstein, M.D.*

*Via Federal Express:*

    Richard J. Klapper
    Sharon L. Nelles
    **SULLIVAN & CROMWELL LLP**
    125 Broad Street
    New York, New York 1004
    Tel:    (212) 558-4000

    *Counsel for Defendant Linda S. Huber*


                                  /s/ Patrick V. Dahlstrom
                                    Patrick V. Dahlstrom

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| RAPHAEL NACH, Individually, and On Behalf of All Others Similarly Situated, <br><br>Plaintiff, <br><br>v. <br><br>LINDA S. HUBER, <br><br>Defendant. | : <br> : <br> : <br> :   Case No. 07-CV-4071-RC <br> : <br> :   **STIPULATION AND** <br> :   **[PROPOSED] ORDER OF A** <br> :   **SCHEDULE FOR FILING** <br> :   **AN AMENDED COMPLAINT** <br> :   **AND A RESPONSE** <br>    **THERETO** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WHEREAS, Plaintiff Raphael Nach filed a complaint ("the Nach complaint") in the above-captioned action in the United States District Court for the Northern District of Illinois against Defendant Linda S. Huber on July 19, 2007;

WHEREAS, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3) (the "PSLRA"), Teamsters Local 282 Pension Trust Fund and Charles W. McCurley, Jr. (collectively, the "Teamsters Local 282 Group"), timely filed a motion on September 26, 2007 seeking appointment as Lead Plaintiff and approval of their selection of the law firms Glancy Binkow & Goldberg LLP ("Glancy") and Kirby McInerney, LLP ("Kirby") as Co-Lead Counsel;

WHEREAS, Lewis Wetstein, M.D. ("Wetstein") timely filed a motion on September 26, 2007 seeking appointment as Lead Plaintiff and approval of his selection of the law firm Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin") as Lead Counsel;

WHEREAS, Defendant, through her counsel, waived service of summons pursuant to Rule 4 of the Federal Rules of Civil Procedure by executing a Waiver of Service of Summons on October 4, 2007;

WHEREAS, Teamsters Local 282 Group and Wetstein (collectively, "Plaintiffs") filed a Stipulation on October 1, 2007 requesting appointment of the Teamsters Local 282 Group and Wetstein as Co-Lead Plaintiffs and approval of Plaintiffs' selection of Glancy, Kirby and Schiffrin as Co-Lead Counsel;

WHEREAS, at a status hearing on October 2, 2007, the Court continued the Teamsters Local 282 Group and Wetstein motions to a hearing on October 11, 2007;

WHEREAS, at the status hearing on October 11, 2007, the Court continued the Teamsters Local 282 Group and Wetstein motions to a hearing scheduled for December 6, 2007, at 9:45 a.m.;

WHEREAS, the Teamsters Local 282 Group and Wetstein motions are pending before the Court and no other motion for appointment as Lead Plaintiff in the above-captioned action was filed within the statutory period provided by the PSLRA;

WHEREAS, Defendant does not take any position concerning the appointment of Plaintiffs as Lead Plaintiffs or Co-Lead Plaintiffs;

WHEREAS, Defendant must answer or otherwise respond to the Nach complaint no later than November 26, 2007;

WHEREAS, Plaintiffs intend to file an amended complaint and anticipate that Defendant will move to dismiss the amended complaint;

WHEREAS, to avoid Defendant responding to a complaint that will be superseded by an amended complaint, the parties have conferred and agreed, subject to the Court's approval, to a schedule for the filing of an amended complaint and Defendant's response thereto.

PLAINTIFFS TEAMSTERS LOCAL 282 GROUP AND LEWIS WETSTEIN, M.D., AND DEFENDANT LINDA S. HUBER, BY AND THROUGH THEIR COUNSEL OF RECORD, HEREBY STIPULATE AS FOLLOWS:

1. Defendant shall not answer or respond to the Nach complaint.

2. Lead Plaintiffs shall file an amended class action complaint no later than sixty (60) days after the Court appoints Lead Plaintiffs and approves Lead Counsel.

3. Defendant shall answer or otherwise respond to Lead Plaintiffs' amended complaint no later than sixty (60) days after it is filed.

4. If Defendant files a motion to dismiss in response to Lead Plaintiffs' amended complaint, Lead Plaintiffs shall respond within forty-five (45) days after Defendant's motion is filed.

5. If Defendant files a motion to dismiss, Defendant's reply in support of the motion shall be filed within (30) days after Lead Plaintiffs file their response.

DATED: *November 21, 2007*

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**

Patrick V. Dahlstrom
Leigh Handelman Smollar
1 North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Proposed Local Counsel*

DATED: _____      **KIRBY McINERNEY LLP**

_____

Ira M. Press
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:   (212) 371-6600

*Counsel for Teamsters Local Teamsters*
*Local 282 Pension Trust Fund, and*
*Proposed Co-Lead Counsel*

DATED: _____      **GLANCY BINKOW & GOLDBERG LLP**

_____

Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone:   (310) 201-9150

*Counsel for Charles W. McCurley,*
*and Proposed Co-Lead Counsel*

DATED: 11/8/07      **SCHIFFRIN BARROWAY TOPAZ &**
**KESSLER, LLP**

_____

Stuart L. Berman
Sean M Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone:   (610) 667-7056
Facsimile:   (610) 667-7706

*Counsel for Lewis Wetstein, M.D.,*
*and Proposed Co-Lead Counsel*

DATED: _____

**KIRBY McINERNEY LLP**

_____

Ira M. Press
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:    (212) 371-6600

*Counsel for Teamsters Local Teamsters*
*Local 282 Pension Trust Fund, and*
*Proposed Co-Lead Counsel*

DATED: 11/21/07

**GLANCY BINKOW & GOLDBERG LLP**

_____

Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone:    (310) 201-9150

*Counsel for Charles W. McCurley,*
*and Proposed Co-Lead Counsel*

DATED: _____

**SCHIFFRIN BARROWAY TOPAZ &**
**KESSLER, LLP**

_____

Stuart L. Berman
Sean M Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone:    (610) 667-7056
Facsimile:    (610) 667-7706

*Counsel for Lewis Wetstein, M.D.,*
*and Proposed Co-Lead Counsel*

DATED: _11/21/07_

**KIRBY McINERNEY LLP**

_____
Ira M. Press
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 371-6600

_Counsel for Teamsters Local Teamsters
Local 282 Pension Trust Fund, and
Proposed Co-Lead Counsel_

DATED: _____

**GLANCY BINKOW & GOLDBERG LLP**

_____
Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

_Counsel for Charles W. McCurley,
and Proposed Co-Lead Counsel_

DATED: _____

**SCHIFFRIN BARROWAYTOPAZ &
KESSLER, LLP**

_____
Stuart L. Berman
Sean M Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7056
Facsimile: (610) 667-7706

_Counsel for Lewis Wetstein, M.D.,
and Proposed Co-Lead Counsel_

DATED: 11/2/07

**SULLIVAN & CROMWELL LLP**

Richard H. Klapper
Sharon L. Nelles
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for Defendant Linda S. Huber*

SO ORDERED:

DATED: _____

_____
Honorable Ruben Castillo
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Raphael Nach, et al.

                                        Plaintiff,

v.                                                      Case No.: 1:07−cv−04071
                                                        Honorable Ruben Castillo

Linda Huber

                                        Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, December 3, 2007:

        MINUTE entry before Judge Ruben Castillo :Status hearing reset to 12/12/2007 at 9:30 AM. Status hearing set for 12/6/2007 is vacated. Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

In the Matter of                                           Case Number: 07-cv-4071

RAPHAEL NACH, Individually and on Behalf of all Others
Similarly Situated,                              Plaintiff,
vs.
LINDA S. HUBER

                                        Defendant.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendant

| NAME (Type or print) |
| David H. Kistenbroker |

| SIGNATURE (Use electronic signature if the appearance form is filed electronically) |
| s/ David H. Kistenbroker |

| FIRM |
| Katten Muchin Rosenman LLP |

| STREET ADDRESS |
| 525 W. Monroe Street |

| CITY/STATE/ZIP |
| Chicago, Illinois 60661 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS) | TELEPHONE NUMBER |
| ARDC#: 3127302 | 312-902-5200 |

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |

| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |

| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☑ | NO ☐ |

| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ |

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

---

In the Matter of                                      Case Number: 07-cv-4071

RAPHAEL NACH, Individually and on Behalf of all Others
Similarly Situated,                              Plaintiff,
v.
LINDA S. HUBER

                                             Defendant.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendant

---

| NAME (Type or print)<br>Paula S. Kim |
|---|
| SIGNATURE (Use electronic signature if the appearance form is filed electronically)<br>s/ Paula S. Kim |
| FIRM<br>Katten Muchin Rosenman LLP |
| STREET ADDRESS<br>525 W. Monroe Street |
| CITY/STATE/ZIP<br>Chicago, Illinois 60661 |

| ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)<br>ARDC#: 6286594 | TELEPHONE NUMBER<br>312-902-5200 |
|---|---|

| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? | YES ☐ | NO ☑ |
|---|---|---|
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? | YES ☑ | NO ☐ |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? | YES ☐ | NO ☑ |

| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? | YES ☐ | NO ☑ |
|---|---|---|

IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS.

RETAINED COUNSEL ☐          APPOINTED COUNSEL ☐

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
## ATTORNEY APPEARANCE FORM

KC F I L E D
DEC 0 4 2007
DEC 04 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NOTE: In order to appear before this Court an attorney must either be a member in good standing of this Court's general bar or be granted leave to appear *pro hac vice* as provided for by Local Rules 83.12 through 83.14.

| In the Matter of | Case Number: 07-cv-4071 |
|---|---|

RAPHAEL NACH, Individually and on Behalf of all Others
Similarly Situated,                     Plaintiff,
v.
LINDA S. HUBER

                                                Defendant.

AN APPEARANCE IS HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY FOR:

Defendant

| | |
|---|---|
| **NAME** (Type or print) <br> Theresa L. Davis | |
| **SIGNATURE** (Use electronic signature if the appearance form is filed electronically) <br> s/ | |
| **FIRM** <br> Katten Muchin Rosenman LLP | |
| **STREET ADDRESS** <br> 525 W. Monroe Street | |
| **CITY/STATE/ZIP** <br> Chicago, Illinois 60661 | |
| **ID NUMBER (SEE ITEM 3 IN INSTRUCTIONS)** <br> ARDC#: 06224757 | **TELEPHONE NUMBER** <br> 312-902-5200 |
| ARE YOU ACTING AS LEAD COUNSEL IN THIS CASE? YES ☐ NO ✔ | |
| ARE YOU ACTING AS LOCAL COUNSEL IN THIS CASE? YES ✔ NO ☐ | |
| ARE YOU A MEMBER OF THIS COURT'S TRIAL BAR? YES ☐ NO ✔ | |
| IF THIS CASE REACHES TRIAL, WILL YOU ACT AS THE TRIAL ATTORNEY? YES ☐ NO ✔ | |
| IF THIS IS A CRIMINAL CASE, CHECK THE BOX BELOW THAT DESCRIBES YOUR STATUS. <br> RETAINED COUNSEL ☐     APPOINTED COUNSEL ☐ | |

CH

(Revised 02/01/01)

## United States District Court   Northern District of Illinois

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | RAPHAEL NACH, Individually and on Behalf of all Others Similarly, Situated | | Plantiff(s) |
| | VS. | | |
| | LINDA S. HUBER | | Defendant(s) |

RECEIVED

DEC 0 4 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| Case Number: 07-cv-4071 | Judge: Hon. Ruben Castillo | ■ |

I, Sharon L. Nelles ■ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Defendant ■ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
| --- | --- |
| See Attached ■ | |
| | |
| | |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
| --- | --- | --- |
| 06-cv-04674 | Blau, et al v. Harrison, et al | 5/23/2005 |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?**   Yes ✓   No ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

censured, suspended, disbarred, or otherwise disciplined by any court?  Yes ☐  No ☑

or is the applicant currently the subject of an investigation of the applicant's professional conduct?  Yes ☐  No ☑

transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?  Yes ☐  No ☑

denied admission to the bar of any court?  Yes ☐  No ☑

held in contempt of court?  Yes ☐  No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

*December 3, 2007*                      *Sharon L. Nelles*

Date                                         Signature of Applicant

| Applicant's Name | Last Name<br>Nelles | | First Name<br>Sharon | Middle Name/Initial<br>L. |
|---|---|---|---|---|
| Applicant's Law Firm | Sullivan & Cromwell LLP | | | |
| Applicant's Address | Street Address (include suite or room number)<br>125 Broad Street | | | State Bar Number<br>2613073 |
| | City<br>New York | State<br>NY | ZIP Code<br>10004 | Work Phone Number<br>212-558-4000 |

(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**ORDER**

(Fee Stamp)

PAID
RECEIPT # 103123204

DEC 0 4 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: _12/07/07_

United States District Judge

**Attachment to Application of Sharon L. Nelles:**

**United States District Court**     **Northern District of Illinois**

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title:   RAPHAEL NACH, Individually and on Behalf of all Others Similarly Situated,<br><br>                         VS.<br><br>             LINDA S. HUBER, | Plaintiff(s)<br><br><br><br>Defendant(s) |
| Case Number: 07-cv-4071 | Judge: Hon. Ruben Castillo |

| Title of Court | Date Admitted |
|---|---|
| U.S. District Court for the Eastern District of New York | 11/19/2007 |
| U.S. Court of Appeals for the Second Circuit | 03/15/2005 |
| U.S. Court of Appeals for the Third Circuit | 2001 |
| U.S. Court of Appeals for the Sixth Circuit | 2000 |
| U.S. District Court for the Southern District of New York | 1996 |
| State of Massachusetts | 1996 |
| U.S. District Court for the District of New Hampshire | 1995 |
| State of New York | 04/02/1994 |

CH

(Revised 02/01/01)

# United States District Court  Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | RAPHAEL NACH, Individually and on Behalf of Others Similarly Situated. | RECEIVED | Plantiff(s) |
|---|---|---|---|
| | | VS. | |
| | LINDA S. HUBER, | DEC 0 4 2007 | Defendant(s) |
| | | CLERK, U.S. DISTRICT COURT | |
| Case Number:  07-cv-4071 | | Judge:  Hon. Ruben Castillo | |

I,  Stephen Ehrenberg  hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Defendant  by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
|---|---|
| See Attached | |
| | |
| | |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | NA | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?**   Yes  ☑   No  ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| censored, suspended, disbarred, or otherwise disciplined by any court? | Yes ☐ | No ☑ |

| or is the applicant currently the subject of an investigation of the applicant's professional conduct? | Yes ☐ | No ☑ |

| transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court? | Yes ☐ | No ☑ |

| denied admission to the bar of any court? | Yes ☐ | No ☑ |

| held in contempt of court? | Yes ☐ | No ☑ |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

11/29/07
Date

_____
Signature of Applicant

| Applicant's Name | Last Name<br>Ehrenberg | | First Name<br>Stephen | Middle Name/Initial |
| Applicant's Law Firm | Sullivan & Cromwell LLP | | | |
| Applicant's Address | Street Address (include suite or room number)<br>125 Broad Street | | | State Bar Number<br>4161816 |
| | City<br>New York | State<br>NY | ZIP Code<br>10004 | Work Phone Number<br>212-558-4000 |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

(Fee Stamp)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**PAID**
RECEIPT # 10312904
DEC 0 4 2007

### ORDER

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DATED: 12/07/07

_____
United States District Judge

**Attachment to Application of Stephen Ehrenberg:**

**United States District Court**    **Northern District of Illinois**

**APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE**

| | |
|---|---|
| Case Title:    RAPHAEL NACH, Individually and on Behalf of all Others Similarly Situated, <br><br>                                   VS. <br>         LINDA S. HUBER, | Plaintiff(s) <br><br><br> Defendant(s) |
| Case Number: 07-cv-4071           Judge: Hon. Ruben Castillo | |

| Title of Court | Date Admitted |
|---|---|
| U.S. District Court for the Eastern District of New York | 02/25/2005 |
| United States Court of Appeals for the Second Circuit | 01/06/2005 |
| U.S. District Court for the Southern District of New York | 08/26/2003 |
| State of New York | 08/07/2003 |



(Revised 02/01/01)

# United States District Court   Northern District of Illinois

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | RAPHAEL NACH, Individually and on Behalf of all Others Similarly Situated, | Plantiff(s) |
| | VS. | |
| | LINDA S. HUBER, | Defendant(s) |

RECEIVED

DEC 0 4 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| Case Number: 07-cv-4071 | Judge: Hon. Ruben Castillo |

I, Richard H. Klapper                                                                                   hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Defendant                                                                        by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
| --- | --- |
| See Attached | |
| | |
| | |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
| --- | --- | --- |
| | NA ■ | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?     Yes ✓          No ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

censured, suspended, disbarred, or otherwise disciplined by any court?    Yes ☐    No ☑

or is the applicant currently the subject of an investigation of the applicant's professional conduct?    Yes ☐    No ☑

transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?    Yes ☐    No ☑

denied admission to the bar of any court?    Yes ☐    No ☑

held in contempt of court?    Yes ☐    No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

_11/30/07_
Date

_Signature of Applicant_

| Applicant's Name | Last Name<br>Klapper | First Name<br>Richard | Middle Name/Initial<br>H. |
|---|---|---|---|
| Applicant's Law Firm | Sullivan & Cromwell LLP | | |
| Applicant's Address | Street Address (include suite or room number)<br>125 Broad Street | | State Bar Number<br>1735612 |
| | City<br>New York | State<br>NY | ZIP Code<br>10004 | Work Phone Number<br>212-558-4000 |

(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

(Fee Stamp)

PAID
CEIPT # 10729064
DEC 0 4 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## ORDER

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: _12/17/07_

_United States District Judge_

**Attachment to Application of Richard H. Klapper:**

**United States District Court**     **Northern District of Illinois**

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title:    RAPHAEL NACH, Individually and on Behalf of all Others Similarly Situated, | Plaintiff(s) |
| VS. | |
| LINDA S. HUBER, | Defendant(s) |
| Case Number: 07-cv-4071      Judge: Hon. Ruben Castillo | |

| Title of Court | Date Admitted |
|---|---|
| U.S. Court of Appeals for the First Circuit | 2002 |
| U.S. Court of Appeals for the Third Circuit | 2001 |
| U.S. District Court for the Western District of New York | 1991 |
| U.S. Court of Appeals for the Federal Circuit | 1998 |
| U.S. Supreme Court | 1986 |
| United States Court of Appeals for the Sixth Circuit | 1985 |
| United States Court of Appeals for the Second Circuit | 1984 |
| U.S. District Court for the Southern District of New York | 1981 |
| U.S. District Court for the Eastern District of New York | 1981 |
| State of New York | 07/02/1981 |

CH

(Revised 02/01/01)

## United States District Court   Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | Raphael Nach | | Plaintiff(s) |
| | | RECEIVED | |
| | | VS. | DEC - 6 2007 |
| | Linda S. Huber | | MICHAEL W. DOBBINS Defendant(s) |
| | | | CLERK, U.S. DISTRICT COURT |

| Case Number: | 1:07-cv-04071 | Judge: | Ruben Castillo |

I, Dale J. MacDiarmid                                                        hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Raphael Nach                                                        by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
| --- | --- |
| USDC Northern District of California | 12/01/04 |
| USDC Central District of California | 12/02/03 |
| | |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?   Yes  ☑   No  ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

censured, suspended, disbarred, or otherwise disciplined by any court?   Yes ☐   No ☑

or is the applicant currently the subject of an investigation of the
applicant's professional conduct?   Yes ☐   No ☑

transferred to inactive status, voluntarily withdrawn, or resigned from the
bar of any court?   Yes ☐   No ☑

denied admission to the bar of any court?   Yes ☐   No ☑

held in contempt of court?   Yes ☐   No ☑

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

12/05/07
_____
Date

_____
Signature of Applicant

| Applicant's Name | Last Name  MacDiarmid | | First Name  Dale | Middle Name/Initial  J |
|---|---|---|---|---|
| Applicant's Law Firm | Glancy Binkow & Goldberg LLP | | | |
| Applicant's Address | Street Address (include suite or room number)  1801 Avenue of the Stars, Suite 311 | | | State Bar Number  228667 |
| | City  Los Angeles | State  CA | ZIP Code  90067 | Work Phone Number  310-201-9160 |

(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

(Fee Stamp)

**PAID**
RECEIPT # 1625195
DEC – 6 2007
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**ORDER**

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: _12/10/07_____   _____
United States District Judge

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4071 | **DATE** | 12/12/2007 |
| **CASE TITLE** | Raphael Nach vs. Linda S. Huber | | |

**DOCKET ENTRY TEXT**

Teamsters Local 282 Group's motion to appoint lead plaintiff and approve lead plaintiff's selection of lead counsel [11] and Lewis Wetstein, M.D.'s motion to be appointed lead plaintiff and for approval of lead plaintiff's selection of lead counsel and liaison counsel [8] are granted. Teamsters Local 282 Group and Lewis Wetstein, M.D. are hereby appointed Co-Lead Plaintiffs in the above captioned action. The law firms Glancy Binkow & Goldberg LLP, Kirby McInerney, LLP and Schiffrin Barroway Topaz & Kessler, LLP are approved as Co-Lead Counsel. The law firm of Pomerantz Haudek Block Grossman & Gross LLP is approved as Plaintiffs' Local Counsel.

Docketing to mail notices.

| | Courtroom Deputy Initials: | RO |
|---|---|---|



Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4071 | **DATE** | 12/12/2007 |
| **CASE TITLE** | Raphael Nach vs. Linda S. Huber | | |

**DOCKET ENTRY TEXT**

Status hearing held on 12/12/2007. Enter Stipulation and Order of a Schedule for Filing an Amended Complaint and a Response Thereto. Lead Plaintiffs to file an amended class action complaint by February 12, 2008. Defendant's response to the amended class action complaint will be due on or before April 14, 2008. If defendant files a motion to dismiss, Plaintiff's response will be due on or before 5/30/2008. Defendant's reply will be due on or before 6/30/2008. The Court will rule by mail.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

00:05



| | Courtroom Deputy Initials: | RO |
|---|---|---|



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RAPHAEL NACH, Individually,
and On Behalf of All Others
Similarly Situated,

            Plaintiff,

        v.

LINDA S. HUBER,

            Defendant.

Case No. 07-CV-4071-RC

**STIPULATION AND
[PROPOSED] ORDER OF A
SCHEDULE FOR FILING
AN AMENDED COMPLAINT
AND A RESPONSE
THERETO**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WHEREAS, Plaintiff Raphael Nach filed a complaint ("the Nach complaint") in the

above-captioned action in the United States District Court for the Northern District of Illinois

against Defendant Linda S. Huber on July 19, 2007;

WHEREAS, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C.

§ 78u-4(a)(3) (the "PSLRA"), Teamsters Local 282 Pension Trust Fund and Charles W.

McCurley, Jr. (collectively, the "Teamsters Local 282 Group"), timely filed a motion on

September 26, 2007 seeking appointment as Lead Plaintiff and approval of their selection of the

law firms Glancy Binkow & Goldberg LLP ("Glancy") and Kirby McInerney, LLP ("Kirby") as

Co-Lead Counsel;

WHEREAS, Lewis Wetstein, M.D. ("Wetstein") timely filed a motion on September 26,

2007 seeking appointment as Lead Plaintiff and approval of his selection of the law firm

Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin") as Lead Counsel;

WHEREAS, Defendant, through her counsel, waived service of summons pursuant to Rule 4 of the Federal Rules of Civil Procedure by executing a Waiver of Service of Summons on October 4, 2007;

WHEREAS, Teamsters Local 282 Group and Wetstein (collectively, "Plaintiffs") filed a Stipulation on October 1, 2007 requesting appointment of the Teamsters Local 282 Group and Wetstein as Co-Lead Plaintiffs and approval of Plaintiffs' selection of Glancy, Kirby and Schiffrin as Co-Lead Counsel;

WHEREAS, at a status hearing on October 2, 2007, the Court continued the Teamsters Local 282 Group and Wetstein motions to a hearing on October 11, 2007;

WHEREAS, at the status hearing on October 11, 2007, the Court continued the Teamsters Local 282 Group and Wetstein motions to a hearing scheduled for December 6, 2007, at 9:45 a.m.;

WHEREAS, the Teamsters Local 282 Group and Wetstein motions are pending before the Court and no other motion for appointment as Lead Plaintiff in the above-captioned action was filed within the statutory period provided by the PSLRA;

WHEREAS, Defendant does not take any position concerning the appointment of Plaintiffs as Lead Plaintiffs or Co-Lead Plaintiffs;

WHEREAS, Defendant must answer or otherwise respond to the Nach complaint no later than November 26, 2007;

WHEREAS, Plaintiffs intend to file an amended complaint and anticipate that Defendant will move to dismiss the amended complaint;

WHEREAS, to avoid Defendant responding to a complaint that will be superseded by an

amended complaint, the parties have conferred and agreed, subject to the Court's approval, to a

schedule for the filing of an amended complaint and Defendant's response thereto.

PLAINTIFFS TEAMSTERS LOCAL 282 GROUP AND LEWIS WETSTEIN, M.D.,
AND DEFENDANT LINDA S. HUBER, BY AND THROUGH THEIR COUNSEL OF
RECORD, HEREBY STIPULATE AS FOLLOWS:

1. Defendant shall not answer or respond to the Nach complaint.

2. Lead Plaintiffs shall file an amended class action complaint no later than sixty
   (60) days after the Court appoints Lead Plaintiffs and approves Lead Counsel.

3. Defendant shall answer or otherwise respond to Lead Plaintiffs' amended
   complaint no later than sixty (60) days after it is filed.

4. If Defendant files a motion to dismiss in response to Lead Plaintiffs' amended
   complaint, Lead Plaintiffs shall respond within forty-five (45) days after
   Defendant's motion is filed.

5. If Defendant files a motion to dismiss, Defendant's reply in support of the motion
   shall be filed within (30) days after Lead Plaintiffs file their response.

DATED: _November 21, 2007_

POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP

Patrick V. Dahlstrom
Leigh Handelman Smollar
1 North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Proposed Local Counsel*

DATED: _____          **KIRBY McINERNEY LLP**

                                  _____
                                  Ira M. Press
                                  830 Third Avenue, 10th Floor
                                  New York, New York 10022
                                  Telephone:    (212) 371-6600

                                  *Counsel for Teamsters Local Teamsters*
                                  *Local 282 Pension Trust Fund, and*
                                  *Proposed Co-Lead Counsel*

DATED: _____          **GLANCY BINKOW & GOLDBERG LLP**

                                  _____
                                  Lionel Z. Glancy
                                  Michael M. Goldberg
                                  1801 Avenue of the Stars
                                  Suite 311
                                  Los Angeles, CA 90067
                                  Telephone:    (310) 201-9150

                                  *Counsel for Charles W. McCurley,*
                                  *and Proposed Co-Lead Counsel*

DATED: _11/8/07_                  **SCHIFFRIN BARROWAYTOPAZ &**
                                  **KESSLER, LLP**

                                  _____
                                  Stuart L. Berman
                                  Sean M Handler
                                  280 King of Prussia Road
                                  Radnor, PA 19087
                                  Telephone:    (610) 667-7056
                                  Facsimile:    (610) 667-7706

                                  *Counsel for Lewis Wetstein, M.D.,*
                                  *and Proposed Co-Lead Counsel*

DATED: _____          **KIRBY McINERNEY LLP**

                                _____
                                Ira M. Press
                                830 Third Avenue, 10th Floor
                                New York, New York 10022
                                Telephone:    (212) 371-6600

                                *Counsel for Teamsters Local Teamsters*
                                *Local 282 Pension Trust Fund, and*
                                *Proposed Co-Lead Counsel*

DATED: 11/21/07                 **GLANCY BINKOW & GOLDBERG LLP**

                                _____
                                Lionel Z. Glancy
                                Michael M. Goldberg
                                1801 Avenue of the Stars
                                Suite 311
                                Los Angeles, CA 90067
                                Telephone:    (310) 201-9150

                                *Counsel for Charles W. McCurley,*
                                *and Proposed Co-Lead Counsel*

DATED: _____          **SCHIFFRIN BARROWAY TOPAZ &**
                                **KESSLER, LLP**

                                _____
                                Stuart L. Berman
                                Sean M Handler
                                280 King of Prussia Road
                                Radnor, PA 19087
                                Telephone:    (610) 667-7056
                                Facsimile:    (610) 667-7706

                                *Counsel for Lewis Wetstein, M.D.,*
                                *and Proposed Co-Lead Counsel*

DATED: __11/21/07__

**KIRBY McINERNEY LLP**

Ira M. Press
830 Third Avenue, 10th Floor
New York, New York 10022
Telephone:    (212) 371-6600

*Counsel for Teamsters Local Teamsters
Local 282 Pension Trust Fund, and
Proposed Co-Lead Counsel*

DATED: _____

**GLANCY BINKOW & GOLDBERG LLP**

Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone:    (310) 201-9150

*Counsel for Charles W. McCurley,
and Proposed Co-Lead Counsel*

DATED: _____

**SCHIFFRIN BARROWAYTOPAZ &
KESSLER, LLP**

Stuart L. Berman
Sean M Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone:    (610) 667-7056
Facsimile:    (610) 667-7706

*Counsel for Lewis Wetstein, M.D.,
and Proposed Co-Lead Counsel*

DATED: 11/2/07

**SULLIVAN & CROMWELL LLP**

Richard H. Klapper
Sharon L. Nelles
125 Broad Street
New York, New York 10004
Telephone:   (212) 558-4000
Facsimile:   (212) 558-3588

*Counsel for Defendant Linda S. Huber*

SO ORDERED:

DATED: 12/12/07

Honorable Ruben Castillo
United States District Judge

(Revised 02/01/01)

# United States District Court   Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| Case Title: | RAPHAEL NACH | | Plantiff(s) |
|---|---|---|---|
| | | VS. | |
| | LINDA S. HUBER | | Defendant(s) |

**RECEIVED**
DEC 1 1 2007
MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

| Case Number: 1:07-cv-04071 | Judge: Ruben Castillo |
|---|---|

I, Daniel Hume hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

Teamsters Local 282 Pension Trust Fund by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| Supreme Court of the State of New York | 06/02/92 |
| United States Court of Appeals for the Third Circuit | 12/13/99 |
| United States District Court for the Southern District of New York | 03/02/93 |
| United States District Court for the Western District of New York | 03/22/05 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | N/A | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if
necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?   Yes ☑   No ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

censured, suspended, disbarred, or otherwise disciplined by any court?    Yes ☐    No ☑

or is the applicant currently the subject of an investigation of the applicant's professional conduct?    Yes ☐    No ☑

transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court?    Yes ☐    No ☑

denied admission to the bar of any court?    Yes ☐    No ☑

held in contempt of court?    Yes ☐    No ☑

NOTE: If the answer to any of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

12/11/07

Date                           Signature of Applicant

| Applicant's Name | Last Name<br>HUME | | First Name<br>DANIEL | Middle Name/Initial<br>n/a |
|---|---|---|---|---|
| Applicant's Law Firm | KIRBY McINERNEY, LLP | | | |
| Applicant's Address | Street Address (include suite or room number)<br>830 Third Avenue, 10th Floor | | | State Bar Number<br>DH 1358 |
| | City<br>New York | State<br>NY | ZIP Code<br>10022 | Work Phone Number<br>(212) 371-6600 |

(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)

NOTE: Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00. The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

**ORDER**

(For Stamp)

**PAID**
RECEIPT # 10813633
DEC 11 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: 12/13/07

United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

RAPHAEL NACH, individually and on behalf of all
others similarly situated,
                            Plaintiff,

                    -against-

LINDA HUBER,

                    Defendant.

Civil Action No.: 07 C 4071

**PLAINTIFFS' NOTICE OF MOTION TO TRANSFER
PURSUANT TO 28 U.S.C. §1404(a)**

PLEASE TAKE NOTICE that Teamsters Local 282 Pension Trust Fund, Charles W. McCurley, Jr., and Lewis Wetstein (collectively, "Lead Plaintiffs") hereby move this Court, Honorable Ruben Castillo, presiding, 219 South Dearborn Street, Room 2146, Chicago, Illinois, under 28 U.S.C. §1404(a) for an order transferring the above-captioned action to the Southern District of New York.

This motion is made on the ground that good cause exists for the granting of the Order sought. This motion is based on this notice, the accompanying memorandum of points and authorities, and the Court's complete files and records in the above-captioned actions, as well as such further argument as the Court may allow at the hearing on this motion.

Dated: December 26, 2007

                            Respectfully submitted,

                            _____/s/ Leigh Handelman Smollar_____
                            Leigh Handelman Smollar

Patrick V. Dahlstrom
POMERANTZ   HAUDEK   BLOCK
GROSSMAN & GROSS, LLP
1 North LaSalle Street
Chicago, IL 60602-3908
Tel:  (312) 377-1181
Fax: (312) 377-1184

*Liaison counsel for Lead Plaintiffs*

Ira M. Press
Dan Hume
David Bishop
KIRBY McINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
Tel:  (212) 371-6600
Fax: (212) 751-2540

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel:  (310) 201-9150
Fax: (310) 201-9160

Stuart L. Berman
Michael K. Yarnoff
SCHIFFRIN   BARROWAY   TOPAZ   &
KESSLER LLP
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056

*Co-lead counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.9, I, Leigh Handelman Smollar, do hereby certify that on

December 26, 2007, I filed electronically with the Clerk of Court using the ECF System,

Lead Plaintiffs', Teamsters Local 282 Pension Trust Fund, Charles W. McCurley, Jr., and

Lewis Wetstein's, Motion to Transfer Pursuant to 28 U.S.C. §1404(a), along with Lead

Plaintiffs' Memorandum of Law in Support of their Motion to Transfer, which have been

sent automatically via the ECF system to the registered parties referenced below.

Joel Lee Lipman
**O'ROURKE, KATTEN & MOODY**
161 North Clark Street
Suite 2230
Chicago, Illinois 60601

*Counsel for Plaintiff Raphael Nach*

Ira M. Press
**KIRBY McINERNEY LLP**
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600
*Counsel for Plaintiff Teamsters Local 282*
*Pension Trust Fund*

Lionel Z. Glancy
Michael Goldberg
**GLANCY BINKOW & GOLDBERG LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel: (310) 201-9150
*Counsel for Plaintiff Charles W. McCurley*

Stuart L. Berman
Sean M. Handler
**SCHIFFRIN BARROWAY TOPAZ**
**& KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel: (610) 667-7056

Counsel for Plaintiff Lewis Wetstein, M.D.

David H. Kistenbroker
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe Street
Chicago, Illinois 60661

Counsel for Defendant, Linda S. Huber

/s/ Leigh Handelman Smollar
Leigh Handelman Smollar

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAPHAEL NACH, individually and on behalf of all others similarly situated,<br>　　　　　　　　Plaintiff,<br><br>　　　　-against-<br><br>LINDA HUBER,<br><br>　　　　　　　Defendant. | Civil Action No.: 07 C 4071 |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. 1404(a)**

**PRELIMINARY STATEMENT**

Teamsters Local 282 Pension Trust Fund ("Local 282"), Charles W. McCurley, Jr. and Lewis Wetstein (collectively "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion to transfer the above-captioned action to the Southern District of New York.

This suit is filed as a putative class action under the federal securities laws on behalf of investors in Moody's Corporation ("Moody's") securities. Another putative class action asserting the same claims, on behalf of the exact same putative class, was filed by lead plaintiff Local 282 in the Southern District of New York. Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C § 78u-4 *et seq.*, it is expected that this action will be consolidated with the New York action. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).

All of the relevant considerations favor the Southern District of New York as the situs of this matter. The suit arises out of alleged misrepresentations in SEC filings and other public statements of Moody's, a New York-based company, concerning Moody's ratings of mortgage-

backed securities ("MBS") and collateralized debt obligations ("CDOs"), many of which were issued by New York-based entities.  Thus, essentially all of the conduct at issue in this action occurred in New York, and consequently, virtually all material evidence and witnesses are located there as well. To our knowledge, none are located in this District.

Moreover, while the locations of the Lead Plaintiffs are not a major consideration in a nationwide class action, Lead Plaintiff Local 282 is located in New York but none of the parties are located in Illinois.  Procedurally, it is important to note that Lead Plaintiffs did not choose this venue.  That choice was made by original plaintiff Raphael Nach.  However, pursuant to the PSLRA, Nach, who did not file a motion for appointment as lead plaintiff, no longer controls the prosecution of this action.  Pursuant to the PSLRA and this Court's order of December 12, 2007, prosecution is now controlled by Lead Plaintiffs, who believe that all relevant factors and considerations point to the Southern District of New York as the proper venue for this action.  Now that Lead Plaintiffs have been appointed, and accordingly, have standing *vis a vis* this action, they bring this motion.

## I.    STANDARDS

28 U.S.C. § 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under well-settled Seventh Circuit standards, "a transfer under § 1404(a) is appropriate if:  (1) venue is proper in the transferor court, (2) venue and jurisdiction are proper in the transferee court, and (3) the transfer will serve the convenience of the parties and witnesses and the interest of justice".  *Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002) (Castillo, J.), *Anchor Wall Prods., Inc. v. R&D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 873 (N.D. Ill. 1999) (Castillo, J.), *In re Archer Daniels Midland, Inc. Sec. Litig.*,

No. 95-C-3979, 1995 WL 645673, at *2 (N.D. Ill. Nov. 1, 1995) (Castillo, J.), *Andrade v. Chase Home Fin., LLC*, No. 04-C-8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005), *Morris v. Am. Bioscience, Inc.*, No. 03-C-7525, 2004 WL 2496496, at *1 (N.D. Ill. Nov. 3, 2004).

The first two of the above-mentioned factors – the appropriateness of venue in the transferor and transferee courts – are straightforward questions that rarely occasion dispute. The third – whether "transfer will serve the convenience of the parties and witnesses and the interest of justice" – bifurcates analysis into (1) consideration of "private" interest factors (i.e., "convenience of the parties and witnesses") and (2) consideration of "public" interest factors (i.e., the "interest of justice"). *Andrade*, 2005 WL 3436400 at *2, *Anchor Wall*, 55 F. Supp. 2d. at 873, *Allied Van Lines*, 200 F. Supp. 2d at 946.

Private-interest factors are: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties. *Andrade*, 2005 WL 3436400 at *2, *Allied Van Lines*, 200 F. Supp. 2d at 946, *Anchor Wall*, 55 F. Supp. 2d at 873-874. Public-interest factors include: the speed at which the case will proceed to trial; the court's familiarity with the applicable law; the desirability of resolving controversies in each locale; and the relation of each community to the occurrence at issue. *Allied Van Lines*, 200 F. Supp. 2d at 946, *Andrade*, 2005 WL 3436400 at *2, *Anchor Wall*, 55 F. Supp. 2d at 873-874.

Both plaintiffs and defendants may invoke the provisions of 28 U.S.C. § 1404. *Dulaney v. U.S.*, 472 F. Supp. 2d 1085, 1086 (S.D. Ill. 2006) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986)). The moving party bears the burden of establishing that the

2

transferee court is the more convenient forum. *Coffey,* 796 F.2d at 219-20. Weighing the factors for and against transfer is committed to the discretion of the trial court. *Id.* at 219.

## II.     PRIVATE AND PUBLIC INTERESTS HERE STRONGLY FAVOR TRANSFER

This action alleges violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") by a senior officer of Moody's Corporation ("Moody's") on behalf of a purported class of persons who purchased Moody's securities between October 25, 2006 and July 10, 2007.

A substantially similar action was subsequently filed in the Southern District of New York – *Teamsters Local 282 Pension Trust Fund v. Moody's Corp. et al.,* No. 1:07-cv-08375-SWK (the "New York Action"). The New York Action alleges the same violations of the same federal securities laws on behalf of the same purported class against Defendant Huber (the defendant here) and against Moody's as well. The New York Action, in fact, was filed by the institutional investor (the Teamsters Local 282 Pension Trust Fund) that this Court recently appointed as Lead Plaintiff.

Given that Moody's is headquartered in New York, that the alleged conduct and misconduct occurred entirely (or essentially so) in New York, and that most sources of proof (e.g., internal Moody's documents and documents from Moody's Wall Street customers) and witnesses (Moody's employees as well as the employees of Moody's Wall Street customers) are located in New York, Lead Plaintiffs believe that the Southern District of New York is, overwhelmingly, the logically- and practically-preferred venue.

Despite the foregoing, the PSLRA required Lead Plaintiffs to appear here to move for their appointment as Lead Plaintiffs. The PSLRA channels the initial organization of federal securities class action proceedings into the "first filed" action. *See* 15 U.S.C. § 78u-4(a)(3)(A) and 15 U.S.C. § 78u-4(a)(3)(B)(i) (directing that plaintiffs in the "first filed" action publish notice and

that purported class members may then move "in response to the notice" for appointment as lead plaintiffs). Because this action was filed prior to the New York Action, lead plaintiff-related proceedings were required to occur here.[1] Those proceedings have been completed. The Court has appointed Lead Plaintiffs to lead this action, and Lead Plaintiffs only now have the authority to seek to transfer these proceedings to another venue.

Lead Plaintiffs believe that the interests of justice and the parties are best served by transfer to the Southern District of New York for further proceedings and for consolidation with the New York Action.

### A. "Private Interests" Uniformly Support Transfer

The "private interests" to be weighed by the Court on a motion to transfer are (*see* p. 2, *supra*): (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties.

**Plaintiff's Choice of Forum**. As discussed above, the Northern District of Illinois was not Lead Plaintiffs' choice of forum and was 'forced' upon them by the fact that the first-filed action (filed by another plaintiff) was filed there. Now that Lead Plaintiffs have been appointed to lead this action, Lead Plaintiffs have the necessary authority to seek transfer to their choice of forum – the Southern District of New York – and the original plaintiff no longer has the authority to control prosecution of this matter. As discussed below, Lead Plaintiffs' choice of forum harmonizes precisely with the forum suggested by broader consideration of private and public interests.

---

[1]   Relatedly, no lead plaintiff applications were filed in the New York Action.

"[G]enerally, the plaintiff's choice of forum carries substantial weight". *Andrade*, 2005 WL 3436400, at *3. Indeed, the primary exception to this general rule – "the weight granted to the plaintiff's choice of forum is significantly diminished when the events giving rise to the cause of action took place outside the plaintiff's choice of forum", *Commercial Union Ins. Co. v. Auto Europe, L.L.C.*, No. 01-C-6961, 2002 WL 47026, at *2 (N.D. Ill. Jan.10, 2002); *Wolford v. Am. Home Prods. Corp.*, 948 F. Supp. 47, 49 (N.D. Ill. 1996) – only underscores the fundamental merits of Lead Plaintiffs' choice to seek transfer. After all, Lead Plaintiffs are seeking to transfer these proceedings precisely to the forum where the events giving rise to the cause of action took place.

**Situs of Material Events**. The central question at issue here is whether the suit has a "material relationship to the district". *Morris*, 2004 WL 2496496, at *2; *In re Archer Daniels Midland*, 1995 WL 645673, at *3.

It is simply indisputable that no judicial district has a more material relationship to the events predicating this suit than does the Southern District of New York. Not only is Moody's headquartered in the Southern District of New York, but the alleged misrepresentations and misleading documents were generated and issued in New York, and most (if not all) of the underlying business practices (i.e., the analysis and determination of credit ratings to mortgage-backed securities) were conducted in New York (for customers located in New York). Precedent uniformly suggests under such circumstances that these proceedings be transferred to the Southern

District of New York.[2] Lead Plaintiffs merely seek to transfer these proceedings to their most logical forum.

**Ease of Access to Sources of Proof and Convenience of Witnesses**. The Southern District of New York is not only the most logical forum but also the most practical. Given that the allegedly misleading documents and statements were generated in and issued from the Southern District of New York, and that the underlying business practice of analyzing and determining MBS credit ratings was conducted in New York, it is highly likely that most relevant documentary evidence exists there as well. It is certain that most relevant Moody's employees – potential witnesses in these proceedings – are similarly located in or adjacent to the Southern District of New York. These factors obviously weigh for transfer. *In re Archer Daniels Midland*, 1995 WL 645673, at *4.

However, given the flexibility provided by photocopying and electronic document discovery, and given the ability of companies to control employee witnesses, courts often discount these factors. *Morris*, 2004 WL 2496496, at *3-4, *Andrade*, 2005 WL 3436400, at *7-8. What remains irreducible are non-party witnesses: "[t]he convenience of the plaintiff's non-party witnesses is often viewed as the most important factor in the transfer analysis". *Anchor Wall*, 55 F. Supp. 2d

---

[2]     *See, e.g., Morris*, 2004 WL at 2496496, *2-3 (transferring class action to district in which defendant was headquartered and in which the alleged misconduct occurred); *In re Archer Daniels Midland*, 1995 WL 645673, at *3-4 (same); *Dulaney*, 472 F. Supp. 2d at 1086-1087 (transferring medical malpractice proceedings at plaintiff's request to the judicial district containing the hospital in which the medical operation was conducted) (citing cases); *Anchor Wall*, 55 F. Supp. 2d at 874 (transferring patent infringement proceedings to judicial district containing defendant's principal place of business, where the alleged infringing products were designed, manufactured, stored, and sold); *Allied Van*, 200 F. Supp. 2d at 947 (transferring breach of contract proceedings to judicial district containing defendants' principal place of business, where much of the contract negotiations as well as the contract signing took place).

at 874; *accord, Morris*, 2004 WL 2496496, at *3-4.  Although proceedings here are at an early stage – all the more so given the PSLRA's barring of discovery until resolution of a motion to dismiss – plaintiffs anticipate that most non-party fact witnesses will likewise work and reside in or adjacent to the Southern District of New York.  Specifically, the issuers/underwriters of MBS for whom Moody's provided credit ratings, and whose relationship with Moody's is at the heart of these proceedings, are overwhelmingly located in or adjacent to the Southern District of New York.  The availability and convenience of non-party witnesses are nowhere better optimized than in the Southern District of New York.

**Convenience to Parties**.  Given that Moody's is headquartered in and has its principal place of business in New York and that its relevant employees (including potential witnesses in these proceedings) work in New York, it would seem that no district would be more convenient, from a defendant's perspective, than the Southern District of New York.  *See, e.g., Anchor Wall*, 55 F. Supp. 2d at 875 ("practicality and convenience are best served when [it] is prosecuted where the alleged [misconduct] occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other data") (citations omitted).  For precisely such reason, most class action proceedings are litigated in the judicial district in which defendants' headquarters are located.  *See, e.g., Morris*, 2004 WL 2496496 at *2-3 (transferring class action to district in which defendant was headquartered and in which the alleged misconduct occurred); *In re Archer Daniels Midland*, 1995 WL 645673 at *3-4 (same)

**B.**     **The "Interests of Justice" Support Transfer**

As discussed above, consideration of "public interests" or the "interests of justice" generally examine the speed at which the case will proceed to trial in each forum; the courts' familiarity with the applicable law; the desirability of resolving controversies in each locale; and the relation of each community to the occurrence at issue (*see* p. 2, *supra*). The fundamental principle underlying all such considerations is to promote "efficient functioning of the courts". *Andrade*, 2005 WL 3436400 at *9; *Morris*, 2004 WL 2496496 at *4 ("The court must hold traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses as primary") (citation omitted); *Anchor Wall*, 55 F. Supp. 2d at 875; *Allied Van*, 200 F. Supp. 2d at 947.

**Speed at which the Case Will Proceed**. In assessing this factor, courts look to statistics[3] and to common sense. *See, e.g., Andrade*, 2005 WL 3436400 at *9 ("common sense suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such witnesses are within the court's subpoena power"). Here, common sense suggests litigation would proceed more quickly in New York where, as discussed above, the majority of likely third-party witnesses may be found.

**Familiarity with Applicable Law**. This factor becomes significant only when claims rest on state-specific statutes whose interpretation may be more familiar to courts in such states than to courts in other states. *See, e.g., Dulaney*, 472 F. Supp. 2d at 1087 ("The fact that this case will require the application of Missouri law likewise weighs in favor of transfer of the case to the Eastern District of Missouri"); *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 971-972 (N.D. Ill. 2003) (refusing transfer to Colorado where case was controlled by substantive Illinois law).

---

[3]     Specifically, for civil cases, comparing venues by the median number of months from case filing to disposition and/or from case filing to trial.     *Andrade*, 2005 WL 3436400 at *9; *Morris*, 2004 WL 2496496 at *4.

Here, both fora are equally well-acquainted with the federal securities laws applicable to this case, so this factor is neutral. *Morris*, 2004 WL 2496496 at *4 ("This cases hinges on a question of federal securities law which both this court and the Central District of California are equally competent to decide"); accord, *Anchor Wall*, 55 F. Supp. 2d at 875, *Andrade*, 2005 WL 3436400 at *9 ("In a case that hinges on federal law, precedent teaches that the respective courts' familiarity with applicable law is a neutral factor"). This action arises entirely from federal law. Accordingly, neither this Court nor the Southern District of New York has a greater familiarity with applicable law.

**Desirability of Resolving Controversies in Each Locale / Relation of Each Community to the Occurrence at Issue**. These factors essentially restate the analysis required by the "situs of material events" factor. As the *Morris* court, transferring class action proceedings from the Northern District of Illinois to the Central District of California, explained:

> [A]s to the factor regarding the relation of the community to the occurrence and the desirability of resolving controversies in their locale, as discussed above, the Central District of California is the situs of the material events... the allegedly fraudulent statements were generated in and emanated from the Central District of California. Thus, this Court finds that the Central District of California has a "stronger interest [in] and connection" with this case...

*Morris*, 2004 WL 2496496 at *5 (*citing Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 905 (N.D. Ill. 2001); *accord, Anchor Wall*, 55 F. Supp. 2d at 875 ("because the plaintiff's action has no significant connection to this forum, the interest of justice would be better served by transferring the action to the Central District where the situs of material events occurred"); *Andrade*, 2005 WL 3436400 at *9 (transferring proceedings so as to be "consistent with the 'guiding principle ... that

9

the administration of justice will be served more efficiently when the action is brought before a court

that is closer to the action'") (citation omitted).

## CONCLUSION

For all the foregoing reasons, for the convenience of parties and witnesses, and in the

interest of justice, Lead Plaintiffs respectfully request that the Court transfer these proceedings to

the Southern District of New York.

Dated: December 26, 2007

<div style="margin-left:40%">

Respectfully submitted,

_____ /s/ Leigh Handelman Smollar_____
Leigh Handelman Smollar
Patrick V. Dahlstrom
POMERANTZ   HAUDEK   BLOCK
GROSSMAN & GROSS, LLP
1 North LaSalle Street
Chicago, IL 60602-3908
Tel:  (312) 377-1181
Fax: (312) 377-1184

*Liaison counsel for Lead Plaintiffs*

Ira M. Press
Dan Hume
David Bishop
KIRBY McINERNEY LLP
830 Third Avenue, 10th Floor
New York, New York 10022
Tel:  (212) 371-6600
Fax: (212) 751-2540

Lionel Z. Glancy
Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel:  (310) 201-9150
Fax: (310) 201-9160

</div>

Stuart L. Berman
Michael K. Yarnoff
SCHIFFRIN BARROWAY TOPAZ &
KESSLER LLP
280 King of Prussia Road
Radnor, PA 19087
Tel.: (610) 667-7706
Fax: (610) 667-7056

*Co-lead counsel for Lead Plaintiffs*

(Revised 02/01/01)

# United States District Court   Northern District of Illinois
## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | | |
|---|---|---|
| Case Title: | RAPHAEL NACH, Individually and On Behalf Of All Others Similarly Situated | Plantiff(s) |
| | | RECEIVED |
| | VS. | |
| | LINDA S. HUBER, | OCT − 9 2007 Defendant(s) |
| | | MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT |
| Case Number: 1:07CV4071 | Judge: Ruben Castillo | |

I, __Sean M. Handler__ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

__Lewis Wetstein, M.D., Plaintiff__ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | DateAdmitted |
|---|---|
| Supreme Court of Pennsylvania | 01/10/01 |
| US District Court EDPA | 04/10/02 |
| US District Court DCO | 2003 |
| US District Court DNE, EDMI | 2005 |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

Has the applicant designated local counsel?   Yes  ☑   No  ☐

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| | | | |
|---|---|---|---|
| censured, suspended, disbarred, or otherwise disciplined by any court? | Yes ☐ | No | ☑ |
| or is the applicant currently the subject of an investigation of the applicant's professional conduct? | Yes ☐ | No | ☑ |
| transferred to inactive status, voluntarily withdrawn, or resigned from the bar of any court? | Yes ☐ | No | ☑ |
| denied admission to the bar of any court? | Yes ☐ | No | ☑ |
| held in contempt of court? | Yes ☐ | No | ☑ |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

10/04/07

Date

Signature of Applicant

| Applicant's Name | Last Name<br>Handler | | First Name<br>Sean | | Middle Name/Initial<br>M. |
|---|---|---|---|---|---|
| Applicant's Law Firm | Schiffrin Barroway Topaz & Kessler, LLP | | | | |
| Applicant's Address | Street Address (include suite or room number)<br>280 King of Prussia Road | | | | State Bar Number<br>86693 (PA) |
| | City<br>Radnor | State<br>PA | ZIP Code<br>19087 | Work Phone Number<br>610-667-7706 | |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

**NOTE:** Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of this Court. The fee for admission to the General Bar is $150.00 The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

PAID

RECEIPT # 10 5222

OCT - 9 2007

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**ORDER**

IT IS ORDERED that the applicant herein may appear in the above-entitled case.

DATED: 10/11/07

United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RAPHAEL NACH, Individually, and On Behalf of All Others Similarly Situated, | x : : : | |
| Plaintiff, | : : | Case No. 07-CV-4071-RC |
| v. | : : | STIPULATION AND [PROPOSED] ORDER FOR SCHEDULE ON MOTION |
| LINDA S. HUBER, | : : | TO TRANSFER VENUE |
| Defendant. | : : : : : | |
| | x | |

It is hereby stipulated and agreed to, by and among the parties to this action, through their undersigned counsel, that the following schedule be established for responsive briefing with respect to lead plaintiffs' motion, filed December 26, 2007, to transfer venue pursuant to 28 U.S.C. § 1404(a):

Defendant's response to the motion shall be filed on January 25, 2008.

Lead plaintiffs' reply shall be filed on January 30, 2008.

The matter shall be heard on February 6, 2008, at 9:00 a.m.

Dated: January 15, 2008

**POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**

By: /s/ Leigh Handelman Smoller
      Patrick V. Dahlstrom
      Leigh Handelman Smollar
1 North LaSalle Street, Suite 2225
Chicago, Illinois 60602
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184

*Local Counsel for Plaintiffs Pursuant to Local*

*Rule 83.15*

**KIRBY McINERNEY LLP**
Ira M. Press
830 Third Avenue, 10th floor
New York, New York 10022
Telephone: (212) 371-6600

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

**SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP**
Stuart L. Berman
Sean M. Handler
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7056
Facsimile: (610) 667-7706

*Plaintiffs' Co-Lead Counsel*

DATED: January 15 2008

**KATTEN MUCHIN ROSENMAN, LLP**

By: /s/ Theresa L. Davis
    David H. Kistenbroker
    Theresa L. Davis
    Paula S. Kim
520 West Monroe Street, Suite 1600
Chicago, Illinois 60661
Telephone:   (312) 902-5200
Facsimile:   (312) 902-1061

and

**SULLIVAN & CROMWELL LLP**
Richard H. Klapper
Sharon L. Nelles
125 Broad Street

New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendant*

SO ORDERED:

DATED:    _____    _____

Honorable Ruben Castillo
United States District Judge

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.9, I, Leigh Handelman Smollar, do hereby certify that on

January 15, 2008, I filed electronically with the Clerk of Court using the ECF System,

Lead Plaintiffs' and Defendant's Stipulation and Proposed Order for Briefing Schedule

on Lead Plaintiffs' Motion to Transfer Pursuant to 28 U.S.C. §1404(a), which has been

sent automatically via the ECF system to the registered parties referenced below.

Ira M. Press
**KIRBY McINERNEY LLP**
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

Lionel Z. Glancy
Michael Goldberg
**GLANCY BINKOW & GOLDBERG LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Tel: (310) 201-9150

Stuart L. Berman
Sean M. Handler
**SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel: (610) 667-7056

*Lead Counsel for Lead Plaintiffs Teamsters
Local 282 Pension Trust Fund,
Lewis Wetstein, M.D., Charles W. McCurley
and the Class*

Joel Lee Lipman
**O'ROURKE, KATTEN & MOODY**
161 North Clark Street
Suite 2230
Chicago, Illinois 60601

*Counsel for Plaintiff Raphael Nach*

David H. Kistenbroker
Theresa L. Davis
Paula S. Kim
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe Street
Chicago, Illinois 60661

*Counsel for Defendant, Linda S. Huber*


POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP


By:_____/sLeigh Handelman_____
        Leigh Handelman Smollar

One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Tel:  (312) 377-1181
Fax:  (312) 377-1184


*Local Counsel pursuant to Local Rule 83.15*

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.0
### Eastern Division

Raphael Nach, et al.

                    Plaintiff,

v.                                       Case No.: 1:07–cv–04071
                                       Honorable Ruben Castillo

Linda Huber

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, January 17, 2008:

      MINUTE entry before Judge Ruben Castillo :Defendant's response to Plaintiffs' motion to transfer pursuant to 28 USC 1404(a) [43] is due on or before 1/25/2008. Plaintiffs' reply will be due on or before 1/30/2008. The Court will rule on 2/5/2008 at 9:45 AM. Mailed notice(rao, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RAPHAEL NACH, Individually,
and On Behalf of All Others
Similarly Situated,

                Plaintiff,

        v.

LINDA S. HUBER,

                Defendant.

Case No. 07-CV-4071-RC

Judge Ruben Castillo

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEFENDANT LINDA S. HUBER'S RESPONSE
## TO LEAD PLAINTIFFS' MOTION TO TRANSFER

Defendant Linda S. Huber ("Huber") takes no position with respect to the motion to transfer this action to the Southern District of New York filed by lead plaintiffs Teamsters Local 282 Pension Trust Fund, Charles W. McCurley, Jr., and Lewis Wetstein.

Both this Court and the District Court for the Southern District of New York are well acquainted with the federal securities laws and capable of overseeing this action.

Huber is amenable to litigating this action in either venue.

Dated:  January 18, 2008           Respectfully submitted,

                                  /s/ Paula S. Kim
                                  David H. Kistenbroker
                                  Theresa L. Davis
                                  Paula S. Kim
                                  KATTEN MUCHIN ROSENMAN LLP
                                  525 West Monroe Street
                                  Suite 1600
                                  Chicago, IL 60661
                                  Telephone:  (312) 902-5200
                                  Facsimile:  (312) 902-1061

Richard H. Klapper
Sharon L. Nelles
Stephen Ehrenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendant Linda S. Huber*

50465513_1

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| RAPHAEL NACH, Individually,<br>and On Behalf of All Others<br>Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) | Case No. 07-cv-4071 |
| v. | ) ) | Judge Ruben Castillo |
| LINDA S. HUBER, | ) | |
| Defendant. | ) ) ) | |

## NOTICE OF FILING

TO:     See attached Certificate of Service list.

PLEASE TAKE NOTICE that on January 18, 2008, we filed **Defendant Linda S. Huber's Response to Lead Plaintiff's Motion to Transfer** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, a copy of which is attached hereto and hereby served upon you.

DATED: January 18, 2007

<div align="right">

/s/ Paula S. Kim_____
One of the Attorneys for Defendant
Linda S. Huber

</div>

David H. Kistenbroker
Theresa L. Davis
Paula S. Kim
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
(312) 902-5200

Richard H. Klapper
Sharon L. Nelles
Stephen Ehrenberg
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

## <u>CERTIFICATE OF SERVICE</u>

I, Paula S. Kim, an attorney, hereby certify that a true and correct copy of the foregoing **Notice of Filing** and **Defendant Linda S. Huber's Response to Lead Plaintiff's Motion to Transfer** was sent by electronic mail via the Court's CM/ECF system on January 18, 2008 to the following counsel of record:

Daniel Hume
**Kirby McInerney LLP**
830 Third Avenue
10th Floor
New York, NY 10022
dhume@kmslaw.com

Lori Ann Fanning
Marvin Alan Miller
**Miller Law LLC**
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
LFanning@MillerLawLLC.com
Mmiller@millerlawllc.com

Sean M. Handler
Stuart L. Berman
**Schiffrin Barroway Topaz & Kessler, LLP**
280 King of Prussia Road
Radnor, PA 19087
ecf_filings@sbtklaw.com

Joshua B. Silverman
Leigh Robbin Handelman
Patrick Vincent Dahlstrom
**Pomerantz Haudek Block Grossman & Gross LLP**
One North LaSalle Street, #2225
Chicago, IL 60602
jbsilverman@pomlaw.com
lsmollar@pomlaw.com
pdahlstrom@pomlaw.com

*Lead Counsel for Lead Plaintiffs Teamsters Local 282 Pensi n Trust Fund, Lewis Wetstein, M.D., Charles W. McCurley and the Class*

Joel Lee Lipman
**O'Rourke, Katten & Moody**
161 North Clark Street
Suite 2230

Chicago, IL 60601
jlipman@okmlaw.com
*Counsel for Plaintiff Raphael Nach*

*Counsel for Teamsters Local 282 Group*

The undersigned attorney also hereby certifies that a true and correct copy of the foregoing **Notice of Filing** and **Defendant Linda S. Huber's Response to Lead Plaintiff's Motion to Transfer** was delivered by other means, via United States Mail, postage-prepaid, on January 18, 2008 to the following counsel of record:

Ira M Press
**Kirby McInerney & Squire LLP**
830 Third Avenue
10th Floor
New York, NY 10022

Tammy D. Cummings
**Schiffrin Barroway Topaz & Kessler, LLP**
280 King of Prussia Road
Radnor, PA 19087

Michael M. Goldberg
**Glancy Binkow & Goldberg LLP**
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

*Lead Counsel for Lead Plaintiffs Teamsters Local 282 Pension Trust Fund, Lewis Wetstein, M.D., Charles W. McCurley and the Class*

Dale J. MacDiamid
**Glancy Binkow & Goldberg LLP**
1801 Avenue of the Stars
Los Angeles, IL 90067
*Counsel for Plaintiff Raphael Nach*

/s/ Paula S. Kim
One of the Attorneys for Defendant
Linda S. Huber

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4071 | **DATE** | 1/24/2008 |
| **CASE TITLE** | Raphael Nach vs. Linda Huber | | |

**DOCKET ENTRY TEXT**

Hearing set for 2/5/2008 is vacated. After careful review, Plaintiff's unopposed motion to transfer pursuant to 28 U.S.C. §1404(a) [43] is granted. The Court easily concludes that all relevant considerations favor a transfer to the Southern District of New York - the material situs of this lawsuit. The Clerk of Court is directed to transfer this lawsuit to the Southern District of New York.

Docketing to mail notices.

| | Courtroom Deputy Initials: | RO |
|---|---|---|



# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

**MICHAEL W.  DOBBINS**                                                      **OFFICE OF THE CLERK**
Clerk                                February 7, 2008                      Telephone: (312) 435-5670

John M. McMahon, Clerk
U.S. District Court
500 Pearl Street
New York, New York 10007-1312

                    RE: Raphael Nach, et al, Vs. Linda Huber
                    <u>U.S. District Court, N.D. IL, E. Div., Case No. 07-CV-4071</u>

Dear Mr. McMahon

Enclosed is the certified electronic record which is being transferred to your court pursuant to an order
entered on January 24, 2008,  by the  Honorable Ruben Castillo. Enclosed is a certified copy of the transfer
order and docket sheet .

As of  January 18, 2005 for civil and criminal cases, our court uses electronic case filing.  You may access our
electronic case file and print copies of electronically filed documents by following the procedures on the attached
Instruction Sheet.  You will need Adobe Acrobat reader loaded on your computer in order to view the documents.  If
you are an electronic court, you may upload the documents.  **All documents filed prior to electronic filing are
included in this transfer package.**   (January 18, 2005 for civil and criminal cases)

Please **<u>DO NOT MAKE THE ENCLOSED INSTRUCTION SHEET A PART OF THE OFFICIAL
RECORD</u>** as it contains your login and password to our system.  This login and password should not be shared with
anyone other than federal court personnel who would have a need to access our electronic case file system.

Please acknowledge receipt on the enclosed copy of this letter.

                              Sincerely yours,

                              Michael W. Dobbins, Clerk

                              Angela Revis, Deputy Clerk

Enc.

cc: Counsel of record

New Case No. _____          Date _____